## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and among Heckler & Koch, Inc. ("HK"), on the one hand, and German Sports Guns, GmbH ("GSG"), American Tactical Imports, Inc. ("ATI"), and Orion Arms Corp. ("Orion") (collectively called "Defendants") on the other hand.

WHEREAS, HK sells and distributes under the MP5 trademark certain firearms and related products and accessories;

WHEREAS, HK owns a federal trademark registration in the mark "MP5" (Reg. No. 1594109 (the "MP5 Trademark");

WHEREAS, HK claims to own in the United States a proprietary trade dress comprised of the designs of certain elements of its MP5 firearms (the "MP5 trade dress");

WHEREAS, GSG manufactures, and ATI and Orion sell and/or distribute under the GSG-5 designation in the United States certain firearms known as the GSG-5 firearms (the "GSG-5 Firearms") and related products and accessories;

WHEREAS, HK has filed a lawsuit (the "Lawsuit"), styled as Heckler & Koch, Inc. v. German Sports Guns, GmbH, et al, Cause No. 1:09-cv-0039-WTL-JMS, in the Southern District of Indiana, Indianapolis Division (the "Court"), in which HK contends, *inter alia*, that the activities in the United States of GSG, ATI and Orion infringe various intellectual property rights, including the MP5 Trademark and the MP5 Trade Dress (together, the "MP5 Rights"), allegedly owned by HK;

WHEREAS, GSG, ATI and Orion have filed in said Lawsuit *Defendants' Answer and Counterclaim* in which they seek a judgment declaring, *inter alia*, that their activities do not infringe, and have not infringed, any intellectual property rights of HK or otherwise violate any law, and that HK does not own the trademark, trade dress and other intellectual property rights it claims to own; and

WHEREAS, the parties hereto have engaged in settlement negotiations and have agreed to resolve amicably the dispute according to the terms set forth more fully below.

NOW THEREFORE, in consideration of the promises and conditions set forth herein, the sufficiency of which is hereby expressly acknowledged, the HK, GSG, ATI and Orion, jointly agree as follows:

1.     *Payment.* GSG and ATI shall pay to HK within ten (10) days of this Agreement the total of sum of Three Hundred Thousand Dollars and no cents ($300,000.00) (the "Payment"). GSG and ATI's obligations to pay the Payment shall be joint and several. No other payments shall be made by any of the Defendants to HK in connection with this Agreement or Lawsuit.

1

EXHIBIT A

2.    *Dismissal of Lawsuit.*  Within five (5) business days of receipt of the Payment, HK and Defendants shall file with the Court a stipulation of dismissal of the Lawsuit and all claims asserted therein with prejudice.  The stipulation shall include a statement that all parties shall bear their own fees and costs, including attorneys' fees.

3.    *GSG's Manufacture, Import and/or Sale of the GSG-5 Firearms.*  GSG agrees that, as of the Effective Date of this Agreement, it will: (1) no longer manufacture the GSG-5 Firearms anywhere in the world; and (2) no longer export to the United States the GSG-5 Firearms.  GSG further agrees to not advertise or sell to any party GSG-5 Firearms anywhere in the world after the earlier of: (1) the exhaustion of GSG's inventory of GSG-5 Firearms as of the existing date; or (2) March 17, 2010 (the "GSG Sell-Off Date").  ATI and Orion will provide HK with a written statement under oath of the existing United States inventory of GSG-5 Firearms that are subject to the sell-off within one (1) day of this Agreement.

4.    *ATI and Orion's Sale and Distribution of GSG-5 Firearms.*  ATI and Orion agree that neither will sell to another entity in the United States the GSG-5 Firearms after January 31, 2010 (the "ATI Sell-Off Date").  ATI and its customers, including Orion, may continue selling after the ATI Sell-Off Date replacement parts necessary for services related to servicing or repair of the GSG-5 Firearms.

5.    *GSG-522 Firearms.*  HK has reviewed the design of the GSG-522 attached hereto as Exhibit "A" (the "GSG-522 Firearm") and covenants not to sue GSG or any of its customers, distributors, dealers or importers for its sale in the United States or anywhere in the world, provided GSG otherwise complies with this Agreement.  This covenant extends to airsoft guns in the design of the GSG-522 Firearm.

6.    *Termination of GSG/Cybergun License.*  GSG agrees to revoke its existing license with Cybergun, S.A. for the use of the GSG-5 "trade dress" and "trademark" (the "Cybergun License").  GSG agrees to notify HK's counsel in writing (as designated herein) within thirty (30) days of the Effective Date of this Agreement that the Cybergun License has been terminated.

7.    *P-8.*  GSG will cease use of the designation P-8 as a brand or model name for airsoft guns sold to customers anywhere in the world on or before January 31, 2010.

8.    *Choice of law.*  This Agreement shall be construed under Indiana law.  The parties agree that the United States District Court for the Southern District of Indiana shall retain jurisdiction to enforce this Agreement.

9.    *No admission of liability.*  In entering into this Agreement, Defendants make no admission of liability for the claims made against them in the Lawsuit or otherwise acknowledge the existence of any rights claimed by HK.  Similarly, HK makes no admission of the validity of Defendants' contentions and/or claims in this proceeding against HK.

10.    *No Contest.* GSG, ATI and Orion, individually and collectively, agree to never oppose, seek to cancel, or otherwise contest the validity of the MP5 Trademark or the MP5 Trade Dress, or otherwise voluntarily assist third-parties to oppose, seek to cancel, or otherwise contest the validity of the MP5 Trademark or the MP5 Trade Dress, except that Defendants reserve the right to assert all defenses available to them in the event they are sued by HK, its licensees or anyone acting in concert with HK. This no contest provision is limited to HK's rights in the United States.

11.    *Design Patents.* GSG, ATI and Orion, individually and collectively, represent that none has applied for or obtained a design patent of any type for the GSG-5 Firearms, excluding a design patent in Germany which includes the M4 stock (the "German Patent"). HK reserves all rights regarding the German Patent, including the right to contest, oppose or seek to cancel it in any forum, proceeding or context.

12.    *Release by HK.* HK hereby releases, acquits and forever discharges GSG, ATI, Orion and their affiliates, parents, subsidiaries, agents, attorneys, insurers, distributors and customers (including, without limitation, Orion) and the shareholders, officers, directors, agents, representatives, servants, employees, customers, successors and assigns of all such entities (together the "Released Parties by HK"), from any and all actions, causes of action, claims, debts, liabilities, accounts, demands, damages, claims for indemnification or contribution, costs, expenses or fees whatsoever, whether known or unknown, certain or speculative, asserted or unasserted, on account of or in any way arising from past or present manufacture, importation, distribution, advertising, promotion, packaging, labeling and sale of the GSG-5 Firearms and airsoft gun products made in the design of the GSG-5 Firearms, and the components, accessories and replacement parts of such goods. In no event, however, shall this release extend to claims by HK: (1) against ATI for unpaid trade obligations related to the importation, distribution and/or sale of HK's products in the past, present or future; and (2) any claims against the Released Parties by HK for breach of this Agreement.

13.    *Release by Defendants.* Defendants, jointly and individually, hereby release, acquit and forever discharge HK and its affiliates, parents, subsidiaries, agents, distributors and customers (including, Heckler & Koch, GmbH and Heckler & Koch Defense, Inc.) and the shareholders, officers, directors, agents, representatives, servants, employees, customers, successors and assigns of all such entities (together the "Released Parties by Defendants"), from any and all actions, causes of action, claims, debts, liabilities, accounts, demands, damages, claims for indemnification or contribution, costs, expenses or fees whatsoever, whether known or unknown, certain or speculative, asserted or unasserted, on account of or in any way arising from past or present manufacture, importation, distribution, advertising, promotion, packaging, labeling and sale of the GSG-5 Firearms and airsoft gun products made in the design of the GSG-5 Firearms, and the components, accessories and replacement parts of such goods. In no event shall this release extend to claims by Defendants against the Released Parties by Defendants for breach of this Agreement.

3

14.     *Covenant Not to Sue ATI and Liquidated Damages.*   In the event HK becomes aware of any products being sold by ATI that HK believes infringes upon the claimed HK MP5 trade dress or the trade dress of the HK G3 ("Alleged Infringing Products"), HK shall give written notice ("Written Notice") to ATI.  HK and ATI shall meet within ten (10) working days of the submission of the Written Notice to discuss the matter in good faith.  ATI will have the option of either: (1)  ceasing sales of the Alleged Infringing Products; or (2)  identifying the supplier of the Alleged Infringing Products (the "Supplier").  If ATI elects either option, HK covenants not to sue ATI or any of ATI's customers or distributors for any intellectual property claim, remedy, damage or right it has or may have against ATI or any customers or distributors of ATI for the sale by any of them of the Alleged Infringing Products.  However, in the event that HK brings suit and obtains a judgment on the merits against the Supplier, ATI agrees to pay HK 3.5% of ATI's invoiced sales price of the Alleged Infringing Products from the date ATI received the Written Notice.  ATI agrees to cooperate with reasonable formal discovery requests by subpoena served on it in the course of any action against the Supplier, including but not limited to document requests and deposition notices.

15.     *Attribution.*  This Agreement is deemed to have been drafted jointly by all of the Parties.  Any uncertainty or ambiguity shall not be construed for or against any Party based on attribution of drafting to that Party.

16.     *Entire Agreement.*  Each party acknowledges that no person or any other entity has made any promise, representation or warranty whatsoever, expressed or implied or statutory, not contained herein, concerning the subject matter hereof, to induce the execution of this instrument, and each of the Parties hereby acknowledge that it has not executed this Agreement in reliance on any promise, representation, or warranty not contained herein.

17.     *No Oral Amendments.*  This Agreement may be amended only by a subsequent written agreement signed by each of the Parties affected hereby.

18.     *Representation.*    Each  Party  hereto  acknowledges  that  its  authorized representative has read this Agreement carefully, that it has been afforded sufficient time to understand the terms and effects of this Agreement, that it, in fact, fully understands all of the terms and effects of this Agreement, that it has been advised to consult legal counsel, and in fact has consulted legal counsel prior to signing this Agreement, and that it is voluntarily entering into and executing this Agreement.

19.     *Full Authority.*  Each Party represents and warrants that it has the power and authority to enter into this Agreement and to take the actions taken in or required under this Agreement, and that the execution, delivery and performance of this Agreement has been duly authorized by all necessary action.

20.     *Counterparts.*  This Agreement may be executed in counterparts, each of which shall be deemed an original, and all counterparts so executed shall constitute one agreement binding on all of the Parties, notwithstanding that all of the Parties may not be

signatory to the same counterpart. This Agreement may be delivered by facsimile or email, and such signatures shall be binding and deemed original for the purposes of implementing and enforcing this Agreement.

21.    *Binding Effect*.  The covenants, agreements, terms, provisions and conditions contained in this Agreement shall be binding upon and inure to the benefit of the Parties and their respective parents, subsidiaries, successors and assigns.

22.    *Non-Waiver*.  The waiver by any Party of any breach of any provision of this Agreement by any other Party shall not be deemed to be either a waiver of any subsequent or prior breach of any such provision or any other provision or a waiver of the provision itself.

23.    *Severability*.  If, after the execution of this Agreement, any provision herein is held to be illegal, invalid or unenforceable under present or future law, such provision shall be fully severable without effect on the remaining provisions, except to the extent necessary to make the remaining provisions legal, valid and enforceable, and unless such severance would cause this Agreement to fail of its essential purpose.  In lieu of the illegal, invalid or unenforceable provision, there shall be added a provision as similar in terms and effect as the illegal, invalid or unenforceable provision, as may be possible and which may be legal, valid and enforceable.

24.    *Confidentiality*.  ATI and GSG (and their sub-distributors and customers) only may announce the introduction of the GSG-522.  Otherwise, the terms of the Agreement shall remain confidential.  Each Party agrees that the terms of this Agreement shall be maintained confidential and shall not be disclosed except for purposes of enforcement of the Agreement or to comply with a court order or to comply with a Party's financial, tax or securities reporting obligations, except that the terms may be disclosed in confidence to such employees of the Parties and counsel as appropriate and so long as they agree to abide by this provision.  The foregoing shall not preclude any Party from stating in response to any inquiry solely that the Lawsuit has been settled or the fact that the terms of the settlement are confidential.

25.    *Notice*.  All notices required under this Agreement shall be in writing and delivered to the person(s) indicated below:

> To HK:
>
> G. Wayne Weber
> President
> Heckler & Koch, Inc.
> 19980 Highland Vista Drive
> Suite 190
> Ashburn, Virginia 20147
>
> With a copy to:

Darlene Seymour
Continental Enterprises
1292 E. 91st Street
Indianapolis, Indiana 46240

To GSG:

Michael Swoboda
German Sports Guns, GmbH
Oesterweg 21, 59469 Ense, Germany

With a copy to:

Larry Jones and Jason Sneed
Alston & Bird
101 South Tryon Street
Suite 4000
Charlotte, North Caroline 28280

To ATI:

Tony DiChario
American Tactical Imports, Inc.
100 Airpark Drive
Rochester, New York 14624

With a copy to:

Larry Jones and Jason Sneed
Alston & Bird
101 South Tryon Street
Suite 4000
Charlotte, North Caroline 28280

To Orion:

Michael Jones
Orion Arms Corp.
3300 Industrial Parkway
Jeffersonville, Indiana 47130

With a copy to:

Doug Bates
Stites & Harbison
323 E. Court Avenue
P.O. Box 946
Jeffersonville, Indiana 47131

Any notice shall be sent via certified mail or some other type of mail resulting in a signed receipt, and shall be deemed delivered upon receipt by the receiving party.

21.     *Effective Date.*  The Effective Date of this Agreement shall be  the date that this Agreement is fully executed.

[SIGNATURES ON NEXT PAGE]

7

IN WITNESS WHEREOF, the Parties indicate their acceptance, approval and agreement of the terms expressed herein by their signatures below:

HECKLER & KOCH, INC.

By: _____
Printed Name: G. Wayne Weber
Title:  President
Dated:  October 8, 2009

GERMAN SPORT GUNS GMBH

By: _____
Printed Name:  Michael Swoboda
Title:  President
Dated:  October 8, 2009


AMERICAN TACTICAL IMPORTS, INC.

By: _____
Printed Name:  Tony DiChario
Title:  President
Dated:  October 8, 2009


ORION ARMS CORP.


By: _____
Printed Name:  Michael Jones
Title:  President
Dated:  October 8, 2009

8

IN WITNESS WHEREOF, the Parties indicate their acceptance, approval and agreement of the terms expressed herein by their signatures below:

HECKLER & KOCH, INC.

By: _____
Printed Name: G. Wayne Weber
Title: President
Dated: October 8, 2009

GERMAN SPORT GUNS GMBH

By: _____
Printed Name: Michael Swoboda
Title: President
Dated: October 8, 2009

AMERICAN TACTICAL IMPORTS, INC.

By: _____
Printed Name: Tony DiChario
Title: President
Dated: October 8, 2009

ORION ARMS CORP

By: _____
Printed Name: Del S. Kim
Title: President
Dated: October 8, 2009

8

IN WITNESS WHEREOF, the Parties indicate their acceptance, approval and agreement of the terms expressed herein by their signatures below:

HECKLER & KOCH, INC.

By: _____
Printed Name: G. Wayne Weber
Title:  President
Dated:  October 8, 2009

GERMAN SPORT GUNS GMBH

By: _____
Printed Name:  Michael Swoboda
Title:  President
Dated:  October 8, 2009

AMERICAN TACTICAL IMPORTS, INC.

By: _____
Printed Name:  Tony DiChario
Title:  President
Dated:  October 8, 2009

ORION ARMS CORP.

By: _____
Printed Name:  Michael Jones
Title:  President
Dated:  October 8, 2009

IN WITNESS WHEREOF, the Parties indicate their acceptance, approval and agreement of the terms expressed herein by their signatures below:

HECKLER & KOCH, INC.

By: _____
Printed Name: G. Wayne Weber
Title: President
Dated: October 8, 2009

GERMAN SPORT GUNS GMBH

By: _____
Printed Name: Michael Swoboda
Title: President
Dated: October 8, 2009

AMERICAN TACTICAL IMPORTS, INC.

By: _____
Printed Name: Tony DiChario
Title: President
Dated: October 8, 2009

ORION ARMS CORP.

By: _C m̷ ̷ma_
Printed Name: Michael Jones
Title: President SEC TREAS
Dated: October 8, 2009

8

# Exhibit A









# Details of the new GSG-522 Design:



New designed rear-sight with grooves

New designed frame with new selector lever

New designed frame

Weaver rail on the upper receiver

New designed trigger guard

New designed magazine release button

New designed cocking lever and housing

New designed frontsight

New modelname and new designed magazine shaft