UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| HECKLER & KOCH, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CASE NO. 1:11-cv-1108-SEB-TAB |
| | ) | |
| GERMAN SPORT GUNS GMBH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTIONS TO SERVE SUBPOENAS AND FOR PROTECTIVE ORDER**

**I.     Introduction**

In this chapter of an ongoing discovery saga, Plaintiffs Heckler & Koch, Inc. and Heckler & Koch GmbH ("HK") seek to serve over thirty-three subpoenas on Defendant American Tactical Imports' customers and rep groups. These subpoenas request advertising and promotional materials related to Defendant German Sport Guns' GSG-5 and GSG-522 firearms. Addressing this issue during a September 21, 2012, telephonic status conference, the Court partially overruled Defendants' objections and instructed the parties to seek agreement by reducing the number of subpoenas. [Docket No. 81.] The parties did not reach an agreement and Plaintiffs moved for leave to serve a reduced number of subpoenas. Defendants object to service of any subpoenas and move for a protective order. For the reasons below, Plaintiffs' motion for leave [Docket No. 108] is granted in part and denied in part. Defendants' motion for protective order [Docket No. 117] is granted in part and denied in part.

## II.    Discussion

### A.    *Relevancy and good cause objections*

Federal Rule of Civil Procedure 26(b)(1) provides for discovery of "any nonprivileged matter that is relevant to any party's claim or defense." "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26. "Even when information is not directly related to the claims or defenses identified in the pleadings, the information still may be relevant to the broader subject matter at hand and meet the rule's good cause standard." *Taleyarkhan v. Purdue Univ.*, No. 4:10-CV-39, 2013 WL 771803, at *2 (N.D. Ind. Feb. 28, 2013). The good cause standard is flexible and the party seeking discovery should articulate a reason for believing it is warranted. *Sanyo Laser Prods. Inc. v. Arista Records, Inc.*, 214 F.R.D. 496, 499 (S.D. Ind. 2003).

Plaintiffs seek leave to serve a reduced number of subpoenas on ATI's customers and rep groups including Dick's, Gander Mountain, Durham's, Camfour, Bill Hick's, AcuSport, Sportsman, and Gunnies.[1] The discovery Plaintiffs seek is relevant to the claims and defenses in this lawsuit, which centers around whether the GSG-522 firearm infringes on Plaintiffs' MP5 firearm in violation of the prior settlement agreement that seemingly resolved the alleged intellectual property issues. As the Court noted in its September 21, 2012, order, "Discovery is intended to be broad and the marketing materials that Plaintiffs seek are relevant because they may reveal customers' impressions relating to the type of guns sold." [Docket No. 81 at 1.]

---

[1]Rep groups are independent sales people working on behalf of ATI and other distributors/importers to promote the GSG-5 and GSG-522 firearms. [Docket No. 135-2 at 2.]

Specifically, Plaintiffs contend that past advertising materials for the GSG-5 firearm represented that the GSG-5 was being marketed as a clone and look-alike to Plaintiffs' MP5 firearm.  [Docket No. 135 at 5.]  ATI employees' depositions suggest that the new GSG-522 firearm is being marketed as an MP5 clone and continues to create market confusion.  [*Id.*] Although Plaintiffs have not pursued an infringement claim against ATI, the absence of a claim against ATI does not make ATI's marketing materials irrelevant to the claims and defenses in this case.  If marketing materials from ATI's customers reveal that they view the GSG-522 firearm as a clone of Plaintiffs' MP5, then that evidence tends to discount Defendants' theory that the GSG-522 is noninfringing and not in violation of the settlement.  Thus, GSG-522 marketing materials are relevant to the claims and defenses in this case.[2]

With respect to the GSG-5 firearm, marketing materials are likely to lead to admissible evidence related to Defendants' counterclaim challenging the trade dress design of the MP5 firearm.  Defendants allege that the MP5 is a "generic, common firearm design freely available for use within the firearms industry . . . ."  [Docket No. 10 at 9.]  As Plaintiffs note, any retailer advertisement that compares the GSG-5, GSG-522, and MP5 could be used to rebut Defendants' theory that the MP5 is a generic firearm.  [Docket No. 135 at 6.]  Accordingly, Defendants' relevancy and good cause objections are overruled.

---

[2]Even applying the heightened good cause standard, Plaintiffs satisfy this standard by explaining the importance of the marketing materials sought, citing to past marketing materials that allegedly revealed infringement, and by citing depositions that suggest the same marketing practices continue for the GSG-522.

B.       *Undue burden objection*

Defendants also claim that the subpoenas are unduly burdensome, harassing, and likely to cause significant adverse business consequences.  [Docket No. 117 at 2.]  Federal Rule of Civil Procedure 26(c) states "the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Defendants correctly point out that undue burden requires a showing that the requested discovery adds such little value that the potential harm outweighs the typical presumption allowing broad disclosure.  [Docket No. 118 at 5.]  However, Defendants have not met this burden to justify denying all requested subpoenas.

The Court agrees that serving 33 subpoenas could cause significant adverse business consequences.  [*See* Docket No. 81.]  But the information sought is relevant to Plaintiffs' claims and Plaintiffs have significantly reduced the number of subpoenas they seek to serve on ATI's customers from 33 to eight.  As Plaintiffs note, this is less than .0145% of ATI's customer pool.  [Docket No. 135 at 10.]  Considering that Plaintiffs significantly reduced the number of subpoenas and the importance of the information sought, the limited number of subpoenas outweigh the potential harm.

While Defendants also offer to collect marketing materials to forgo the formal issuance of subpoenas, Plaintiffs have not agreed to this option.  Considering the history of ongoing discovery disputes in this case, it is not unreasonable for Plaintiffs to prefer the subpoena process over voluntary disclosures, as they believe it is the most effective process for obtaining the marketing materials.  [Docket No. 135 at 11.]  Finally, Defendants complain that the subpoenas are designed to pressure them into settlement.  While such a tactic is not out of the realm of

reason in this case, the Court notes that this case has its origins in a settlement breakdown.  Thus, it seems unlikely that the true purpose of the subpoenas is to force a settlement.  Therefore, Defendants' undue burden, harassment, and other related objections are overruled.

        C.      *Unnecessarily cumulative and duplicative objection*

Defendants argue that Plaintiffs' request for advertising and marketing materials is unnecessarily cumulative and duplicative because Plaintiffs already have marketing materials in their possession.  Defendants have produced marketing materials for the GSG-522 firearm and their employees were deposed regarding marketing activities.  [Docket No. 118 at 6.]  But the marketing information in Plaintiffs' possession for the GSG-522 is limited and the marketing materials Plaintiffs seek from ATI's customers and rep groups will paint a more complete picture of customer impressions and potential market confusion.  However, Plaintiffs should already have the majority of the GSG-5 marketing materials in their possession from the prior litigation and therefore production of those marketing materials is unnecessary.  [*See* Docket No. 135 at 5.]  Accordingly, Defendants' objection that the request is unnecessarily cumulative and duplicative is sustained for the GSG-5 firearm and overruled for the GSG-522 firearm.

        D.      *Number and scope of subpoenas*

Plaintiffs have reduced the number of requested subpoenas to eight customers of ATI, divided evenly between different size customers.  The parties conferred and purportedly agreed on five of the eight companies Plaintiffs seek to subpoena: Camfour, AcuSport, Bill Hick's, Sportsman, and Gunnies.  [Docket No. 109 at 3.]  Defendants apparently have taken a different position in their briefs, but nonetheless fail to make a sufficient showing as to why any of these five specific groups should not be served.  Therefore, Plaintiffs may serve subpoenas on these

five companies.

The parties have not agreed on serving the large retailers.  Plaintiffs seek to serve Gander Mountain, Dunham's, and Dick's.  Although Gander Mountain and Dunham's are large retailers, standing alone that is not a sufficient reason to prohibit discovery on these retailers.  However, Defendants convincingly argue that Dick's should not be served.  Dick's was served with similar subpoenas by Plaintiffs during past litigation related to this case.  As a result, Dick's already has been burdened to a greater extent, and are more likely to take adverse business actions against Defendants.  [Docket No. 119 at 6.]  Moreover, Defendants are extremely concerned about the possible adverse impact these subpoenas could have on these critical large retailers.  Given that Dick's has already been dragged into related litigation, Defendants' concerns about adverse business fallout with Dick's is justified.  Thus, as for these large retailers, the Court concludes that serving Gander Mountain and Dunham's is sufficient.

The remaining set of subpoenas that Plaintiffs seek to serve is on ATI's rep groups. Plaintiffs have not identified the exact rep groups that they seek to serve, but that appears partially due to the lack of information exchanged between the parties.  In any event, Defendants shall provide Plaintiffs with information necessary to identify rep groups for the GSG-522 firearm and thereafter Plaintiffs shall only serve subpoenas on two rep groups of their choice.  If Plaintiffs later believe additional subpoenas are necessary after Defendants identify the rep groups and serve initial subpoenas on those rep groups, the Court will consider any additional requests for more subpoenas.  Conversely, Defendants may file any appropriate motion challenging the language of any subpoenas or other defects, but providing Defendants with a copy of subpoenas at this time is not required.  Of course, ideally the parties should be able to

work cooperatively to avoid bringing yet another discovery dispute before the Court.

**III.    Conclusion**

For the reasons above, Plaintiffs' motion for leave [Docket No. 108] is granted in part and denied in part.  Defendants' motion for protective order [Docket No. 117] is granted in part and denied in part.  Accordingly, Plaintiffs may only serve subpoenas on Camfour, AcuSport, Bill Hick's, Sportsman, Gunnies, Dunham's, and Gander Mountain that seek advertising and promotional materials for the GSG-522 firearm.  Plaintiffs may also serve subpoenas on two rep groups of their choice.

Dated:  05/31/2013

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Neal F. Bailen
STITES & HARBISON, LLP
nbailen@stites.com

Douglas B. Bates
STITES & HARBISON, LLP
dbates@stites.com

Tracy Nicole Betz
TAFT STETTINIUS & HOLLISTER LLP
tbetz@taftlaw.com

Anne L. Cowgur
TAFT STETTINIUS & HOLLISTER LLP
acowgur@taftlaw.com

Michael Zachary Gordon
TAFT STETTINIUS & HOLLISTER LLP
zgordon@taftlaw.com

Charles .M. Landrum III
JASON SNEED PLLC
clandrum@sneedlegal.com

Bruce Benjamin Paul
STITES & HARBISON, LLP
bpaul@stites.com

Jonathan G. Polak
TAFT STETTINIUS & HOLLISTER LLP
jpolak@taftlaw.com

Darlene R. Seymour
dseymour@ce-ip.com

Jason M. Sneed
JASON SNEED PLLC
jsneed@sneedlegal.com