UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HECKLER & KOCH, INC., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | CASE NO. 1:11-cv-1108-SEB-TAB |
| ) | |
| GERMAN SPORT GUNS GMBH, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER ON MOTIONS FOR RECONSIDERATION**

**I.     Introduction**

Plaintiffs and Defendants have both filed motions asking the Court to reconsider certain discovery rulings. Such motions are appropriate in limited circumstances: "to correct manifest errors of law or fact or to present newly discovered evidence." *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008). The Court agrees with the parties that there are some factual statements in the Court's December 28, 2012, order that need to be corrected. Nevertheless, these corrections involve harmless errors and provide no basis for the relief the parties seek on reconsideration.

With respect to many of the other issues that the parties raise, it is inappropriate for the Court to consider them at this late stage. The parties' motions generally attempt to rehash old arguments, belatedly raise new challenges, and introduce evidence that previously could have been submitted to the Court. *See United States v. Resnick*, 594 F.3d 562, 568 (7th Cir. 2010) (Reconsideration does "not provide a vehicle for a party to undo its own procedural failures, and

it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment."). For the reasons below, Plaintiffs' motion for reconsideration [Docket No. 139] and Defendants' motion for reconsideration [Docket No. 151] are denied.

## II.     Background

Defendants' motion to compel sought "to defeat Plaintiffs' claims of attorney-client privilege and the work product doctrine for over 200 documents listed in Plaintiffs' privilege logs based on three grounds: (1) Plaintiffs' privilege logs are insufficient to establish either attorney-client privilege or the work product doctrine, (2) numerous documents listed in the privilege logs involve third parties who are neither attorneys nor clients, and (3) the crime-fraud exception overcomes privilege and work product." [Docket No. 136 at 2.] The Court agreed in part with Defendants and granted Defendants' motion to the extent that Plaintiffs were ordered to produce: "(1) any communications or documents listed in the privilege logs that include Umarex or Monika Bräutigam, (2) any communications or documents listed in the privilege logs identifying or clarifying the ownership or assignment of the MP5 rights, and (3) any communications or documents related to the assignment of the MP5 rights not identified in the privilege logs." [*Id.* at 20.] Additionally, "[f]or those communications and documents listed in the privilege logs that discuss the decisions and reasons for assigning the rights and the perceived impact that the assignment may have had on litigation," Plaintiffs were ordered to "produce these documents to the Court for *in camera* review . . . ." [*Id.*] The Court also held that any "documents not listed in the privilege logs that are related to the ownership or assignment of the MP5 rights are waived and these documents must be produced" to Defendants.

2

[Docket No. 136 at 19.]

### III. Discussion

#### A. Plaintiffs' Motion for Reconsideration

*1. Common interest doctrine*

Defendants challenged several entries on Plaintiffs' privilege logs that involved third parties who are neither attorneys nor clients. Two of those third parties were Umarex and Monika Bräutigam.[1] Plaintiffs asserted that the communications involving Umarex and Bräutigam are protected by the common interest doctrine. The common interest doctrine is "an exception to the rule that no privilege attaches to communications between a client and an attorney in the presence of a third person." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007). To show that this exception was applicable, Plaintiffs asserted that they have a "nearly identical" legal interest with Umarex based on an exclusive license agreement. Defendants responded by arguing that a common legal interest cannot be "nearly identical."

The Court agreed with Defendants, reasoning that:

> Not only do Plaintiffs assert that the interest is "nearly identical," but Plaintiffs later assert that the interest "may be identical." [Docket No. 95 at 19.] Defendants emphasize this point [Docket No. 98 at 11], and Plaintiffs fail to respond to this argument let alone assert that the interest is identical. [*See* Docket No. 111; Docket No. 111-1, ¶ 9.]

[Docket No. 136 at 12.]

Plaintiffs' motion for reconsideration addresses this point for the first time. Plaintiffs' motion correctly points out that the common interest doctrine does not require that the interests

---

[1]According to Plaintiffs, Umarex is HK's executive licensee for the manufacture and sale of certain products at issue in this lawsuit [Docket No. 95 at 6, 18], and Bräutigam works for Umarex as a personal assistant for one of the owners. [Docket No. 120 at 1.]

3

be comparable in all respects.  [Docket No. 139 at 6.]  But while interests need not be comparable in all respects, case law also states that the interests cannot merely be similar. *Pampered Chef v. Alexanian*, 737 F. Supp. 2d 958, 964 (N.D. Ill. 2010) ("Parties may assert a common interest where they have an identical—not merely similar—legal interest in the subject matter of a communication and the communication is made in the course of furthering the ongoing, common enterprise.").  As Plaintiffs suggest, this is not a precise standard.  [*See* Docket No. 156 at 4 ("Is 'nearly identical' closer to 'identical' or 'merely similar'"?).]

In any event, Plaintiffs did not raise these arguments in response to Defendants' challenge questioning whether Umarex's and Plaintiffs' interests were truly common in light of phrases such as "nearly identical" and "may be identical."  Plaintiffs' assumption that this argument would not be significant was risky, particularly because Defendants devoted an entire page to emphasizing this point.  [Docket No. 98 at 11.]  Although Defendants did not challenge "nearly identical" and other similar descriptions until their reply brief, Plaintiffs could have responded to the issue in a surreply.  The purpose of a surreply is to address new matters argued in a reply brief.  *Meraz-Camacho v. United States*, 417 F. App'x 558, 559 (7th Cir. 2011) (unpublished); *Almy v. Kickert Sch. Bus Line, Inc.*, No. 08-CV-2902, 2013 WL 80367, at *15 (N.D. Ill. Jan. 7, 2013).

Plaintiffs specifically requested and were given leave to file a surreply.  For whatever reason, Plaintiffs limited their surreply to four discrete issues.  [*See* Docket No. 107 at 2.]  This limitation was self imposed.  As the history of this litigation demonstrates, the parties are fully capable of identifying and responding to issues.  Plaintiffs have not been shy to file other surreplies and in fact filed a sur-surreply in conjunction with this motion for reconsideration.

Litigation is an advocacy process and because Plaintiffs did not address or request to address this issue, the challenge to "nearly identical" and "may be identical" went uncontested. Failing to respond to an opposing parties' argument is construed as a concession. *See Mart v. Forest River, Inc.*, 854 F. Supp. 2d 577, 608 (N.D. Ind. 2012); *Lockard v. City of Lawrenceburg, Ind.*, 815 F. Supp. 2d 1034, 1040 (S.D. Ind. 2011).

The Court recognizes that Plaintiffs submitted an affidavit to support their position that an exclusive license agreement with Umarex created a common interest. [Docket No. 95-2 at ¶ 7.] But that affidavit was the source of Defendants' challenge because it concluded that the interest was "nearly identical." [*Id.*] As the Court noted, "[n]o agreement or other evidence has been submitted to suggest otherwise." [Docket No. 136 at 12.] In other words, the Court was unable to confirm Plaintiffs' interpretation of the license agreement and accurately determine what Plaintiffs meant by "nearly identical." It was incumbent upon the Plaintiffs to present the Court with an adequate factual basis to support application of the common interest doctrine.[2] Plaintiffs failed to do so. *See Rockies Express Pipeline LLC v. 58.6 Acres*, No. 1:08-CV-0751-RLY-DML, 2009 WL 5219025, *2 (S.D. Ind. Dec. 31, 2009) ("[A]ny doubts about the applicability of the privilege must be resolved in favor of disclosure.").[3]

As a final matter, Plaintiffs seek clarification of which documents must be produced.

---

[2]Plaintiffs now submit a common interest agreement between Plaintiffs and Umarex to support their position. [Docket No. 156-1.] This agreement was executed in October 2012 and could have been submitted to the Court in conjunction with the briefing on Defendants' motion to compel. Belatedly introducing this agreement does not warrant its consideration. *United States v. Resnick*, 594 F.3d 562, 568 (7th Cir. 2010).

[3]Defendants also claim that Umarex does not hold a valid license and therefore there is no common interest. [Docket No. 150 at 8; Docket No. 161 at 2–5.] In light of the Court's decision, Defendants' argument need not be addressed.

[Docket No. 139 at 7 n.6]  The Court ordered that "any communications or documents listed in the privilege logs that include Umarex or Monika Bräutigam" must be produced.  To clarify, the privilege logs that the Court was referring to are a Taft privilege log [Docket No. 75-1], a Continental Enterprises privilege log [Docket No. 75- 2], and a supplemental privilege log. [Docket No. 98-2.]  The Court recognizes that Plaintiffs fear that this decision "potentially destroys HK's and Umarex's attorney-client and work product privileges vis-à-vis other litigants in other cases."  [Docket No. 139 at 8.]  But if that is the result, it is a consequence of Plaintiffs not satisfying their burden with respect to this issue.  The Court notes, however, that it is not making any decision with respect to whether the common interest doctrine applies to other communications involving Umarex and Bräutigam.  Rather, the limited question before the Court is whether Plaintiffs satisfied their burden of establishing that the common interest doctrine applies to the communications and documents in the three privilege logs listed above.

    *2.*       *Crime-fraud exception*

The part of the Court's order addressing the crime-fraud exception mistakenly attributes an argument to Plaintiffs.  This originated from Plaintiffs' brief, which cited the Court to Defendants' motion to dismiss [Docket No. 50] in support of their argument.  This mistake went unidentified by the Court and led the Court to conclude that Plaintiffs were arguing "that in the settlement agreement 'HK' is a conflated reference to HK USA and HK GmbH."  [Docket No. 136 at 13–14 (citing Docket No. 50).]  This mistake is harmless.

If anything, considering "HK" as a conflated reference to HK USA and HK GmbH strengthens Plaintiffs' argument that the crime-fraud exception does not apply.  In other words, this error was favorable to Plaintiffs and does not provide a basis for reconsideration.  Although

the Court rejected this argument, the Court also considered the parties' other arguments and concluded that Defendants made a colorable showing of fraud sufficient to invoke the exception.[4] The Court reasoned that:

> While mere allegations alone are insufficient to make a colorable showing, the short-form assignment and the settlement agreement filed with the Court provide support for the above allegations and are sufficient to give color to the charge of fraud. The short-form agreement confirms that HK USA assigned its MP5 rights to HK GmbH [Docket No. 130-1] prior to entering into the settlement agreement. Plaintiffs do not deny that they assigned the MP5 rights prior to entering into the settlement agreement. Instead, Plaintiffs argue "that the Settlement Agreement does not encompass an affirmative statement as to HK's direct ownership of any intellectual property rights and expressly disavows any reliance by Defendants with respect to such ownership rights." [Docket No. 95 at 20.] However, the settlement agreement expressly states:
>
> WHEREAS, HK owns a federal trademark registration in the mark "MP5" (Reg. No. 1594109) (the "MP5 Trademark");
>
> WHEREAS, HK claims to own in the United States a proprietary trade dress comprised of the designs of certain elements of its MP5 firearms (the "MP5 trade dress");
> [Docket No. 45-1 at 1.]

[Docket No. 136 at 13–14.]

Plaintiffs' motion for reconsideration continues to rehash their argument that without reliance there can be no colorable showing of fraud. Plaintiffs assert that the settlement agreement expressly disclaimed "any acknowledgment or agreement that HK owns the intellectual property rights it claims to own," and therefore there could be no reliance. [Docket No. 139 at 10 (citing Docket No. 45-1 at ¶ 9).] Considering Plaintiffs' argument in context, Paragraph nine states:

---

[4]"Case law does not require a party seeking to invoke the crime-fraud exception to allege a particular offense or to make a prima facie showing with respect to each element of common law fraud." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 820 (7th Cir. 2007); *see also United States v. Al-Shahin*, 474 F.3d 941, 946 (7th Cir. 2007) ("[It's] not whether the evidence supports a verdict but whether it calls for inquiry.").

> *No admission of liability*. In entering into this Agreement, Defendants make no admission of liability for the claims made against them in the Lawsuit or otherwise acknowledge the existence of any rights claimed by HK. Similarly, HK makes no admission of the validity of Defendants' contentions and/or claims in this proceeding against HK.

To some extent, paragraph nine appears inconsistent with the provisions at the beginning of the settlement agreement that represent that Plaintiffs own the trademark and trade dress rights. But the statements must be considered in context and a reasonable interpretation of paragraph nine could simply be that none of the merits of the case or issues of liability were being conceded or resolved, not that Plaintiffs disavowed their claim to the trademark or trade dress rights. Moreover, it is unreasonable to assert that Defendants did not rely upon the fact that Plaintiffs owned the trademark and trade dress rights. Without ownership of these rights, Defendants may not have entered into the settlement and could have challenged Plaintiffs' standing to maintain the lawsuit. *See Persis Intern., Inc. v. Burgett, Inc.*, No. 09-C-7451, 2012 WL 4176877, at *7–8 (N.D. Ill. Sept. 18, 2012). Accordingly, a colorable showing of fraud was made and any errors in the Court's order were harmless.

    *3.*    *Waiver*

Related to the crime-fraud exception issue, Defendants argued in their motion to compel that many of the documents related to the assignment of the MP5 rights were not included in the three privilege logs submitted to the Court and therefore any claim of privilege for those unidentified documents is waived.[5] The Court agreed with Defendants:

> As Defendants point out, the earliest communication in the privilege log is dated April 20, 2009 [Docket No. 98-2 at 5], which is approximately one month after the assignment was

---

[5]As noted in the Court's order, these privilege logs include a Taft privilege log, a Continental Enterprises privilege log, and a supplemental privilege log. [Docket No. 136 at 3.]

>executed. [Docket No. 130-1.] Undoubtedly, there must be emails and other communications that led up to the decision to assign the MP5 rights and there must be documentation related to the assignment. None of these documents are identified in the privilege logs. Therefore, any document related to the assignment of the MP5 rights not listed in the privilege logs must be produced. *See E.E.O.C. v. Southlake Tri-City RBA Corp.*, No. 2:10-CV-444, 2012 WL 839169, at *4 (N.D. Ind. Mar. 12, 2012); *Jorling v. Anthem, Inc.*, No. 1:09-CV-0798-TWP-TAB, 2011 WL 3759189, at *2 (S.D. Ind. Aug. 25, 2011).

[Docket No. 136 at 19.]

Plaintiffs now assert that three additional privilege logs have been produced since the motion to compel was filed. However, Plaintiffs never informed the Court that other privilege logs existed, that additional privilege logs were in the process of being created, or even that additional privilege logs may be produced at a later date due to outstanding discovery.[6] Instead, Plaintiffs failed to respond to Defendants' waiver argument. Although the issue of waiver was not fleshed out until Defendants' reply, Plaintiffs could have responded to this argument in their surreply. As noted, a surreply would have been the appropriate method of response, and the parties have demonstrated a strong appetite for filing surreplies.

Plaintiffs submit these additional privilege logs for the first time with their reply in support of their motion for reconsideration and incorrectly suggest that Defendants had the burden of producing these privilege logs. [Docket No. 156 at 12–13.] This attempt to identify additional privilege logs simply comes too late, and Plaintiffs fail to consider that the party asserting privilege has the burden to establish that it applies. *Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 446 (7th Cir. 2011). A finding of waiver is therefore appropriate.

---

[6]Plaintiffs waited until a January 10, 2013, telephonic status conference to inform the Court about these additional privilege logs.

*4. Scope of production*

The parties also seek clarification as to the scope of production. The Court ordered Plaintiffs to "produce any communications or documents listed in Plaintiffs' privilege logs that identify or clarify the ownership and assignment of the MP5 intellectual property rights." [Docket No. 136 at 18.] "With respect to any documents related to the decisions and reasons for assigning the rights and the perceived impact that the assignment may have had on litigation, Plaintiffs . . . [were ordered to] produce these documents to the Court for *in camera* review." [*Id.*] Plaintiffs construe the Court's order to mean that any responsive documents covered by attorney-client privilege and the work product doctrine should be produced for *in camera* review. To clarify, the only documents that should be submitted for *in camera* review include those documents that discuss the reasons and decisions to assign the MP5 rights that Plaintiffs categorized as work product. This is because those documents may reveal "the attorney's mental impressions, conclusions, opinions, and legal theories." [Docket No. 136 at 16.] In any event, it is unclear why Plaintiffs seek clarification of this issue because they claim that none of the documents listed in the privilege logs that were before the Court contain such categories of documents.[7] [Docket No. 139 at 8.] If that is the case, then there are no documents related to those privilege logs that Plaintiffs can produce or submit for *in camera* review.

With respect to waiver, any "documents not listed in the privilege logs that are related to the ownership or assignment of the MP5 rights are waived and these documents must be produced" to Defendants. [Docket No. 136 at 19.] The Court did not order *in camera* review for

---

[7]The Court also notes that for the majority of the documents in the privilege logs for which Plaintiffs asserted attorney-client privilege, Plaintiffs also asserted the work product doctrine. [Docket Nos. 75-1, 72-2, 98-2.]

these waived documents. Plaintiffs are correct that this ruling may have broad implications. As discussed above, the Court did not have the benefit of reviewing these newly created privilege logs, but that was due to Plaintiffs' failure to timely present this information to the Court. Plaintiffs could have informed the Court that other privilege logs existed, that privilege logs were in the process of being created, or even that additional privilege logs may be produced. Instead, Plaintiffs failed to respond to Defendants' waiver argument and must now bear the consequences of that shortcoming.

Finally, Plaintiffs request a stay of discovery for documents related to the assignment of the MP5 rights until the related motions to dismiss are resolved. But a pending motion to dismiss does not typically warrant a stay of discovery. *New England Carpenters Health & Welfare Fund v. Abbott Labs.*, No. 12-C-1662, 2013 WL 690613, at *3 (N.D. Ill. Feb. 20, 2013); *Bianchi v. Tonigan*, No. 12-C-0364, 2012 WL 5906536, at *1 (N.D. Ill. Nov. 26, 2012). Considering the slow progression of this case—particularly the slow progression of discovery—the Court does not depart from this rule.

### B. Defendants' Motion for Reconsideration

#### 1. *Niels Ihloff*

Defendants argued in their motion to compel that communications involving Niels Ihloff were not privileged because he only works for HK in a business capacity. The Court disagreed and concluded that he also serves as in-house counsel for HK. [Docket No. 136 at 9.] As Plaintiffs pointed out, a corporate officer can wear "two hats," although the "nature of his communications must be closely scrutinized to separate business communications from legal communications, as the attorney-client privilege is narrow." *Fares Pawn, LLC v. Indiana*, No.

3:11-CV-136- RLY-WGH, 2010 WL 3580068, at *5 (S.D. Ind. Aug. 17, 2012). The communications at issue involving Ihloff were related to legal advice and this litigation.

The Court further explained that even if Ihloff was not in-house counsel for HK, the communications involving Ihloff included Darlene Seymour who is counsel of record and in-house counsel for Continental.[8] The Court's point was that even if it had concluded Ihloff was not in-house counsel or even a practicing attorney, the communications involving Ihloff involved another attorney discussing legal issues related to this case. That attorney is Seymour who is counsel of record and in-house counsel for Continental. Thus, the communications involving Ihloff are privileged regardless of whether Ihloff is in-house counsel or a practicing attorney.

 2. *Darlene Seymour*

The next issue relates to the somewhat complicated relationship between Plaintiffs, Continental, and Seymour. Defendants argued that because Seymour is counsel of record for Plaintiffs and in-house counsel for Continental she lacks "independence of counsel." Defendants claim that this Court is the only court to permit in-house counsel of an investigatory company to also serve as outside counsel for clients of an investigatory company. However, that was not the issue before the Court. Defendants have not moved to disqualify Seymour. Rather, the limited question before the Court was whether Seymour's relationship with Plaintiffs and Continental, if impermissible, retroactively eliminates attorney-client privilege and the protections of the work product doctrine.

---

[8]The Court inadvertently referred to Seymour as in-house counsel for HK. [Docket No. 136 at 10.] The reference to Seymour as in-house counsel for HK should have read "Seymour who is counsel of record in this case and in-house counsel for Continental." Nevertheless, the Court understood that Seymour is in-house counsel for Continental. As Plaintiffs point out, there are numerous references to Seymour as in-house counsel for Continental in the Court's order.

The only legal authority that Defendants cited in support of their argument was *Cincinnati Ins. Co. v. Wills*, 717 N.E.2d 151, 165 (Ind. 1999), which addressed an insurance company's use of in-house counsel to represent an insured without disclosing to the insured that the insured's counsel was also in-house counsel for the insurer. The Indiana Supreme Court held "that an insurance company does not necessarily engage in the unauthorized practice of law when it employs house counsel to represent its insureds and that attorneys who are employees of an insurance company do not assist the insurer in the unauthorized practice of law when they represent the insureds." *Id.* at 151. However, the court noted that conflicts may arise, and when they do, disclosure of the relationship is necessary. *Id.* Thus, *Cincinnati Insurance* involved a two part inquiry: whether there was unauthorized practice of law, and if not, whether potential conflicts and counsel's relationships were properly disclosed.

It was not clear to the Court which aspect of *Cincinnati Insurance* that Defendants were addressing. Defendants only discussed the general holding in *Cincinnati Insurance* and did not discuss any specific professional rules of conduct related to the unauthorized practice of law.[9] Rather, Defendants discussed numerous facts that led the Court to conclude that Defendants were focusing on the conflict and disclosure aspect of *Cincinnati Insurance*. Defendants focused heavily on "independence" of counsel, which is primarily addressed in the disclosure aspect of that decision. *See Cincinnati Insurance*, 717 N.E.2d at 164. This and other arguments suggested a conflict and disclosure issue to the Court.

---

[9]Apparently, Plaintiffs were also confused by Defendants use of "independent." [Docket No. 157 at 4 ("As far as what is meant by an "independent" attorney-client relationship as compared with an attorney-client relationship, Defendants offer no explanation and cite no case law on this issue.").]

13

Turning to the conflict and disclosure issue, the Court concluded that Defendants failed to explain why independence of counsel is necessary between Plaintiffs and Continental. There is no identifiable conflict since Plaintiffs hired Continental to assist with this litigation. Moreover, unlike *Cincinnati Insurance*, Plaintiffs know that Seymour serves in this dual capacity and Plaintiffs are sophisticated business entities represented by other counsel. Thus, there is no issue of disclosure or lack of understanding. The Court's point that Seymour is "representing the business entity that employs her" was simply intended to emphasize that there is no issue of disclosure. While this statement may not be accurate in the sense that Plaintiffs are not employing or paying Seymour directly for her services but are doing so through Continental, it does not change the fact that Plaintiffs knowingly chose Seymour to serve as their counsel despite knowing that she also serves as in-house counsel for Continental.

To the extent that Defendants were raising an unauthorized practice of law issue, it was not clear to the Court. Defendants cite a litany of facts to show that Seymour lacks independence, but fail to cite any specific rule of conduct prohibiting such actions. [*See* Docket No. 151 at 8–14.] This shortcoming is also reflected in Defendants' briefs in support of their motion to compel.[10] [Docket No. 74 at 7–9; Docket No. 98 at 6–8.] Defendants also claim that *Cincinnati Insurance* "illustrate[s] the sole exception under Indiana law where in-house counsel can represent premium-paying customers: insurance defense." [*Id.* at 10–11.] However, nowhere in *Cincinnati Insurance* does the Indiana Supreme Court say that it is carving out a single exception. On the contrary, the court notes that "[n]otwithstanding the continuing ban,

---

[10]The only rule cited was IRPC 1.5, but that rule requires that certain fee arrangements be made in writing, signaling to the Court a potential disclosure issue. [Docket No. 98 at 6 n.5.]

indeed criminalization of 'practicing law' by any 'person' not an attorney, the Rules of Professional Conduct, statutes and well accepted forms of practice clearly imply that the entity itself is not unlawfully practicing law as long as the activity is conducted through licensed attorneys." *Cincinnati Insurance*, 717 N.E.2d at 159. In other words, unauthorized practice of law "boils down to whether a non-lawyer is performing tasks requiring a lawyer, or a lawyer not admitted in this State is practicing in Indiana." *Id.* at 160. There is no dispute that Seymour is a licensed attorney in Indiana, and according to Defendants, Continental employs members of the Indiana bar to perform legal services. [Docket No. 151 at 13.] In any event, the Court need not decide whether Seymour somehow engaged in the unauthorized practice of law or is violating the professional rules of conduct as it is merely a collateral issue.

As noted, the primary issue before the Court is this: if Seymour engaged in the unauthorized practice of law or violated the professional rules of conduct, do those impermissible practices retroactively waive attorney-client privilege and work product protections? Defendants' briefs in support of their motion to compel cited no legal authority that requires or even discusses such a waiver.[11] On the contrary, the Court notes that Seymour is a licensed attorney and has been counsel of record since August 2011. Moreover, according to Defendants, Seymour has been counsel of record for Plaintiffs in over 40 lawsuits, including cases in this Court as well as other state and federal courts. [Docket No. 151 at 8.] Accordingly, Plaintiffs would have no reason to suspect that their communications with Seymour were not privileged.

---

[11]Defendants, however, did respond to cases that Plaintiffs cited in opposition to Defendants' motion for reconsideration.

15

To permit retroactive waiver of privilege and work product protections for a client who is consulting with a licensed attorney that has been counsel of record in this and numerous other cases is contrary to the purposes of privilege and work product. *Woodruff v. Am. Family Mut. Ins. Co.*, ___ F.R.D. ___, 2013 WL 1729403, at *8 (S.D. Ind. Apr. 22, 2013) ("The purpose of the work product rule is 'to benefit the adversary system itself and to produce an atmosphere in which counsel for both sides can fully prepare and present their clients' best case without the stifling self-editing that would be necessary if an attorney's work product were subject to unchecked discovery.'"); *Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 276 (N.D. Ill. 2004) ("The purpose of the attorney-client privilege is to encourage and foster candid communications between a client and counsel for the purpose of obtaining legal advice, by removing the fear of compelled disclosure of information."). Thus, the Court does not find that attorney-client privilege and the work product doctrine should be abrogated for communications and documents involving Seymour. *Gucci Am., Inc. v. Guess?, Inc.*, No. 09-CV-4373, 2011 WL 9375, at *5 (S.D.N.Y. Jan. 3, 2011) ("A number of courts have sustained invocation of the privilege even when the communications were not made with a member of the bar, if the client reasonably believed that it was communicating with an attorney."). If Defendants believe Seymour is engaging in inappropriate conduct, then they should file a disciplinary complaint or a motion for disqualification.[12]

Defendants also challenge the Court's conclusion that even if Seymour lacked

---

[12] Defendants claim that a newly produced privilege log indicates that Seymour is sharing legal fees with a non-lawyer in violation of IRPC 5.4(a) and using a non-lawyer assistant in violation of IRPC 9.1. [Docket No. 151 at 5.] These assertions are more properly presented to the Indiana Disciplinary Commission in the form of a complaint rather than to this Court in the form of a discovery-related attempt to overcome a privilege.

independence of counsel, her presence would not defeat privileges because she would fall within the attorney-agent exception.  Defendants mischaracterize the Court's order and assert that the Court characterized Seymour as both the attorney and the agent.  [Docket No. 151 at 4, 12.]  However, the Court was not relying on Seymour to satisfy both the attorney and agent aspects of the exception.  The Court concluded that even if Seymour lacked the necessary independence to serve as counsel of record, she would qualify as Plaintiffs' agent because Plaintiffs hired Continental to assist with this litigation and Seymour is a Continental employee assisting with this litigation.  [Docket No. 136 at 7–8.]  Plaintiffs have several other attorneys to satisfy the attorney element of the attorney-agent exception.  For example, Jonathan Polak is also counsel of record for Plaintiffs.  Thus, Polak (attorney) and Seymour (agent) are one of many combinations that could form the attorney-agent relationship.[13]

### 3. Other privilege issues

Defendants rehash numerous other privilege issues related to Karl Manders, Niels Ihloff, Stephen Farkas, and the overall sufficiency of Plaintiffs' privilege logs.  The Court sufficiently addressed these issues, and a motion for reconsideration is not the appropriate vehicle for revisiting these issues.  *United States v. Resnick*, 594 F.3d 562, 568 (7th Cir. 2010) (Motions for reconsideration do "not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment.").

---

[13] The Court notes that even communications between agents are protected when they are related to assisting with litigation.  *Long v. Am. Univ.*, 204 F.R.D. 129, 134 (S.D. Ind. 2001).

## IV.     Conclusion

For the reasons above, Plaintiffs' motion for reconsideration [Docket No. 139] and Defendants' motion for reconsideration [Docket No. 151] are denied. All documents ordered produced in the Court's order [Docket No. 136] shall be produced within 14 days.[14]

Dated: 05/31/2013

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

---

[14] By separate order, the Court has denied Defendants' motion for limited stay of discovery. [Docket No. 174.]

Copies to:

Neal F. Bailen
STITES & HARBISON, LLP
nbailen@stites.com

Douglas B. Bates
STITES & HARBISON, LLP
dbates@stites.com

Tracy Nicole Betz
TAFT STETTINIUS & HOLLISTER LLP
tbetz@taftlaw.com

Anne L. Cowgur
TAFT STETTINIUS & HOLLISTER LLP
acowgur@taftlaw.com

Michael Zachary Gordon
TAFT STETTINIUS & HOLLISTER LLP
zgordon@taftlaw.com

Charles .M. Landrum III
JASON SNEED PLLC
clandrum@sneedlegal.com

Bruce Benjamin Paul
STITES & HARBISON, LLP
bpaul@stites.com

Jonathan G. Polak
TAFT STETTINIUS & HOLLISTER LLP
jpolak@taftlaw.com

Darlene R. Seymour
dseymour@ce-ip.com

Jason M. Sneed
JASON SNEED PLLC
jsneed@sneedlegal.com