UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HECKLER & KOCH, INC., and<br>HECKLER & KOCH GMBH,<br><br>Plaintiffs/Counterclaim Defendants,<br><br>vs.<br><br>GERMAN SPORT GUNS GMBH, and<br>AMERICAN TACTICAL IMPORTS, INC.,<br><br>Defendants/Counterclaimants,<br><br>AND<br><br>GERMAN SPORT GUNS GMBH, and<br>AMERICAN TACTICAL IMPORTS, INC.,<br><br>Third-Party Plaintiffs,<br><br>vs.<br><br>G. WAYNE WEBER AND NIELS IHLOFF,<br><br>Third-Party Defendants.<br>———————————————— | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. 1:11-cv-01108-SEB-TAB<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER ON MOTIONS RELATED TO DEFENDANTS' AMENDED COUNTERCLAIM
AND THIRD-PARTY COMPLAINT**

This cause is before the Court on two related motions: (1) Plaintiffs' Motion to Strike

Answer to Amended Complaint and Third-Party Counterclaim pursuant to Federal Rules of Civil

Procedure 12(f) [Docket No. 57], and (2) Third-Party Defendants' Motion to Strike and/or

Dismiss for Failure to State a Claim pursuant to Federal Rules of Civil Procedure 12(b)(6)

[Docket No. 103]. Because these motions present intertwined issues of fact and law, we have

chosen to resolve them jointly. For the reasons set forth below, Plaintiffs' Motion to Strike is

1

DENIED and Third-Party Defendants' Motion to Strike and/or Dismiss is GRANTED in part and DENIED in part.

## Factual and Procedural Background

Plaintiffs are two firms engaged in the design, manufacture, and sale of firearms. Heckler & Koch GmbH ("HK GmbH") is incorporated and based in Germany, and HK, Inc. ("HK USA") is incorporated and based in the state of Virginia. Am. Compl. ¶¶ 5, 6.[1] The two companies, although distinct entities, are corporate affiliates, and Plaintiffs refer to themselves jointly as "HK." Am. Compl. 1. HK owns intellectual property (IP) rights related to its firearm products; according to Plaintiffs, these include federal and state registered trademarks, trade dress, copyrights, and patents. ¶ 12. Of HK's products, the primary focus of litigation is the MP5® line of .22 caliber sub-machine guns—a brand of firearm that Plaintiffs assert is recognized worldwide. ¶ 1. HK GmbH currently holds the registered federal trademark for the MP5® gun (Regis. # 1594109), ¶ 12, and the company has granted an exclusive license to Carl Walther GmbH ("Walther")—another German weapons manufacturer—to produce replicas of the MP5®, including for sale in the United States. ¶¶ 1, 19.

Defendants are also firearms concerns: German Sports Guns GmbH ("GSG") is an arms manufacturer based in Germany, and American Tactical Imports, Inc. ("ATI") is an arms importer and seller incorporated and based in New York. ¶¶ 7–8.

Third-Party Defendants are HK officers. G. Wayne Weber is the President of HK USA. Defs.' Answer 18, ¶ 14.[2] Niels Ilhoff[3] is a managing director of HK GmbH and consulted HK USA during the 2009 settlement negotiations. *Id.* at ¶ 15, 28.

---

[1] Henceforth all citations to paragraphs refer to Plaintiffs' amended complaint (Am. Compl.) unless otherwise noted.
[2] For purposes of this order, "Defs.' Answer" refers to Defendants' "Answer, Amended Counterclaims and Third-Party Complaint."
[3] Mr. Ilhoff's name is misspelled in some of the parties' submissions and captions as "Nils Ilhoff."

HK USA first brought suit in the Southern District of Indiana against Defendants in 2009, alleging trademark infringement, trade dress infringement, and other related claims. ¶ 20; *see Heckler & Koch, Inc. v. German Sports Guns GmbH, et al,* Cause No. 1:09-cv-00039.  HK USA's principal allegation was that the GSG-5 weapon manufactured by GSG and sold by ATI copied the well-known design features of the MP5®, and thus violated HK's intellectual property rights. *Id.* The parties ultimately resolved their differences through a Mediated Settlement Conference; both Third-Party Defendants Weber and Ihloff were present and represented HK USA at this conference. Defs.' Answer 18, ¶ 15. The fruit of the conference was a Settlement Agreement dated October 8, 2009, which was signed by representatives of HK USA, including Third-Party Defendant Weber. *Id.* Plaintiffs have attached the full Agreement as an exhibit to their current complaint. Am. Comp., Ex. A. Under the terms of the Agreement, Defendants agreed to cease all manufacture, distribution, and sales of the GSG-5 after the "sell-off dates," which were March 17, 2010, for GSG and January 21, 2010, for ATI. Am. Compl. Ex. A, ¶ 3–4. Defendants also agreed to pay $300,000 to HK. *Id.* at ¶ 1. In exchange for these commitments, Plaintiffs agreed to stipulate to the dismissal of the 2009 suit. *Id.* at ¶ 2. Finally, the parties agreed that another GSG weapon design, the GSG-522, did not infringe on HK USA's intellectual property; HK USA agreed not to sue Defendants for their manufacture or sale of the GSG-522, photographic exhibits of whose design were attached to the Agreement. ¶ 23.

HK contends that Defendants have failed to abide by the Settlement Agreement. Specifically, they allege that Defendants have "repackaged" the GSG-5—a "knock-off" weapon designed to "replicate the look and feel of the famous MP5®"—and sold it under the label of the GSG-522. ¶ 2. By manufacturing, importing, and selling this GSG-5 in a GSG-522's clothes, Plaintiffs argue, Defendants have both violated their covenant not to sell the GSG-5 and

deceptively deviated from the GSG-522 design that they submitted for HK's approval in the Agreement. *Id.* Plaintiffs also allege that Defendants continued to manufacture and sell the GSG-5 under its own label even after the 2010 "sell-off dates." ¶ 3, 27–32. According to Plaintiffs, this conduct directly contravenes Paragraph 3 of the Settlement Agreement.

Bearing these grievances, HK has again brought GSG and ATI before this court. The original complaint was brought by HK USA alone, and it contained only a claim for breach of contract. *See* Docket No. 1. Plaintiffs subsequently sought leave to amend the complaint to add HK GmbH as a plaintiff and to include additional claims for tortious interference and fraud against both Defendants, as well as claims of state and federal trade dress infringement, trademark dilution, and unfair competition against GSG alone. Magistrate Judge Baker granted leave to amend, Docket No. 44, and Plaintiffs filed their amended complaint on May 22, 2012. Defendants filed this Motion to Dismiss [Docket No. 49] on June 5, 2012.

During the course of this litigation, it has emerged that HK assigned the registered trademark for its MP5® weapon—the cornerstone of its IP claim against Defendants—after initiating the 2009 litigation but well before the negotiation and signing of the Settlement Agreement. On March 19, 2009, HK USA executed an assignment of "all right, title and interest in and to" the MP5® trademark, "together with the good will of the business symbolized by the said mark and the respective registration," to HK GmbH, its German parent company. Defs.' Answer 22, ¶ 26. Weber signed this assignment agreement, and Defendants allege that Ihloff, as a high-ranking officer of HK GmbH, also knew of it. *Id.* at ¶ 27. Additionally, Defendants allege that HK USA concluded a separate agreement with HK GmbH for the transfer of trade dress rights and related goodwill associated with the MP5®. *Id.* at ¶ 26. Despite having assigned the MP5® trademark, HK recited in a preliminary clause of the Settlement Agreement that it

4

"own[ed] a federal trademark registration in the mark 'MP5'" and "claims to own in the United

States a proprietary trade dress comprised of the designs of certain elements of the MP5

firearms." Am. Compl., Ex. A at 1.

On their discovery of these facts, Defendants filed an answer to the amended complaint

on July 13, 2012, containing counterclaims against Plaintiffs and a third-party complaint

asserting multiple causes of action against Third-Party Defendants Weber and Ihloff. Docket.

No. 56. Plaintiffs responded with this Motion to Strike [Docket No. 57] on July 30, 2012, and

Third-Party Defendants brought this Motion to Strike and/or Dismiss [Docket No. 103] on

November 13, 2012.

## Legal Analysis

### Standard of Review

**A. Under Rule 12(f)**

Both Plaintiffs and Third-Party Defendants bring motions to strike under Federal Rules of

Civil Procedure 12(f). Rule 12(f) provides that a court may, *sua sponte* or on motion, strike from

a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous

matter." Fed. R. Civ. Pro. 12(f). As the rule's language indicates, a motion to strike should be

granted only in rare circumstances, and such motions are "disfavored" because they "potentially

serve only to delay." *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294

(7th Cir. 1989); *Crowder v. Foster Wheeler, LLC*, 265 F.R.D. 368, 370 (S.D. Ind. 2009). For this

reason, a motion will be successful where it "remove[s] unnecessary clutter from the case,"

expediting the resolution of the case rather than erecting another obstacle to its consideration on

the merits. *Id* (citing *United States v. 416.81 Acres of Land,* 514 F.2d 627, 631 (7th Cir. 1975).

**B. Under Rule 12(b)(6)**

**1. The Rule 8(a) Standard**

Federal Rules of Civil Procedure 12(b)(6) authorizes dismissal of claims for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In determining the sufficiency of a claim, the court considers all allegations in the complaint to be true and draws such reasonable inferences as required in the plaintiff's favor. *Jacobs v. City of Chi.*, 215 F.3d 758, 765 (7th Cir. 2000). Federal Rules of Procedure 8(a) applies, with several enumerated exceptions, to all civil claims, and it establishes a liberal pleading regime in which a plaintiff must provide only a "short and plain statement of the claim showing that [he] is entitled to relief," Fed. R. Civ. Pro. 8(a)(2); this reflects the modern policy judgment that claims should be "determined on their merits rather than through missteps in pleading." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 779 (7th Cir. 2007) (citing 2 James W. Moore, et al., *Moore's Federal Practice* § 8.04 (3d ed. 2006)). A pleading satisfies the core requirement of fairness to the defendant so long as it provides "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

In its decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court introduced a more stringent formulation of the pleading requirements under Rule 8. In addition to providing fair notice to a defendant, the Court clarified that a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility requires more than labels and conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Killingsworth v. HSBC*

6

*Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (quoting *Twombly,* 550 U.S. at

555).  Instead, the factual allegations in the complaint "must be enough to raise a right to relief

above the speculative level." *Id.* The plausibility of a complaint depends upon the context in

which the allegations are situated, and turns on more than the pleadings' level of factual

specificity; the same factually sparse pleading could be fantastic and unrealistic in one setting

and entirely plausible in another. *See In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F.

Supp. 2d 363, 370 (M.D. Pa. 2008).

Although *Twombly* and *Iqbal* represent a new gloss on the standards governing the

sufficiency of pleadings, they do not overturn the fundamental principle of liberality embodied in

Rule 8. As this Court has noted, "notice pleading is still all that is required, and 'a plaintiff still

must provide only enough detail to give the defendant fair notice of what the claim is and the

grounds upon which it rests, and, through his allegations, show that it is plausible, rather than

merely speculative, that he is entitled to relief.'" *United States v. City of Evansville*, 2011 WL

52467, at *1 (S.D. Ind. Jan. 8, 2011) (quoting *Tamayo*, 526 F.3d at 1083). On a motion to

dismiss, "the plaintiff receives the benefit of imagination, so long as the hypotheses are

consistent with the complaint."  *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d

247, 251 (7th Cir. 1994).

### 2. The Rule 9 Standard

Defendants assert a claim of fraud against Plaintiffs and Third-Party Defendants. Defs.'

Answer, 31–33.  To plead fraud or mistake under Rule 9(b), a plaintiff must state "the identity of

the person making the misrepresentation, the time, place, and content of the misrepresentation,

and the method by which the misrepresentation was communicated to plaintiff." *See* Fed. R. Civ.

Pro. 9(b); *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir.1992). The

Seventh Circuit has summarized the particularity requirement as "calling for the first paragraph of any newspaper story: the who, what, when, where, and how." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012) (citations omitted). The rules require that fraud allegations be stated with greater particularity in order to combat "the great harm to the reputation of a business firm or other enterprise" that can be inflicted by a baseless claim. *See Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

## Discussion

Both Plaintiffs and Third-Party Defendants move to strike Defendants' Answer, Counterclaims, and Third-Party Complaint. Additionally, Third-Party Defendants pursue a motion to dismiss for failure to state a claim under Rule 12(b)(6), arguing that Defendants have failed to state properly their counterclaims for fraud, deception, and tortious interference with business relations. Both motions to strike rely on the same argument and virtually the same citations to authority in support, and we find that both are meritless. We will discuss the deficiencies of the consolidated motion to strike, before turning to Third-Party Defendants' motion to dismiss.

## I.     The Motions to Strike

Although Plaintiffs[4] recite that they bring their motions to strike under Rule 12(f), their briefs make no effort to establish a nexus between their objections to the Defendants' Answer and Counterclaims and the standard governing a motion under the rule. Nowhere do they mention either the text or the purpose of the rule under which they purport to bring their motion, instead relying on the procedural guidelines contained in Federal Rules of Civil Procedure 14,

---

[4] Because Plaintiffs' and Third-Party Defendants' arguments and briefing on their motions to strike are indistinguishable, we will refer to the moving party as "Plaintiffs" for the sake of brevity in this section of the order.

15, and 16. *See* Pls.' Br. 5–6[5]; Third-Party Defs.' Br. 5.[6] This serious methodological error

undermines the persuasiveness of any motion to strike at the outset. *See* Defs.' First Resp. 6[7]

(citing *Crowder v. Foster Wheeler, LLC,* 265 F.R.D. 368, 370 (S.D. Ind. 2009)). Nonetheless,

conscious of the fact that some "motions may be proper despite the lack of a specific rule,"

*Custom Vehicles, Inc. v. Forest River, Inc.*, 464 F.3d 725, 727 (7th Cir. 2008), we will consider

the substance of Plaintiffs' objections, which are based primarily on timing and Defendants'

failure to seek leave of court in filing their amended answer and counterclaims.

**A. Failure to Amend Timely under Rule 15**

Plaintiffs' first objection to Defendants' answer arises under Federal Rules of Civil

Procedure 15, which provides that if a party does not amend its pleading within 21 days of the

pleading's initial service, it may do so only with "the opposing party's written consent or the

court's leave." Fed. R. Civ. Pro. 15(a)(2). Courts should "freely give leave when justice so

requires." *Id.* Plaintiffs contend that because Defendants neither sought leave of the court to file

their Answer to Amended Complaint and Counterclaim, nor filed it within 21 days after service

of their initial answer on August 19, 2011, they have run afoul of this requirement.[8] Pls.' Br. 6–7.

However, as Defendants point out, the requirements for amending answers may change

when a plaintiff has also amended his complaint. "[W]hen a plaintiff files an amended complaint,

the new complaint supersedes all previous complaints and controls the case from that point

---

[5] For purposes of this order, Plaintiffs' Brief (Pls.' Br.) refers to the "Brief in Support of Motion to Strike Amended Counterclaims and Third-Party Complaint" [Docket No. 58].

[6] For purposes of this order, Third-Party Defendants' Brief (Third-Party Defs.' Br.) refers to the "Third-Party Defendants' Brief in Support of Motion to Strike and/or Dismiss Third-Party Complaint" [Docket No. 104].

[7] For purposes of this order, "Defendants' Response in Opposition to Plaintiffs' Motion to Strike" [Docket No. 62] will be styled "Defendants' First Response" (Defs.' First Resp.), while "Third-Party Plaintiffs' Response in Opposition to Third-Party Defendants' Motion to Strike and/or Dismiss" [Docket No. 114] will be styled "Defendants' Second Response" (Defs.' Second Resp.).

[8] Plaintiffs further insist that regardless of the Rule 15 (and Rule 14 and Rule 16) violations, the counterclaims should be stricken as futile. Because this amounts to a Rule 12(b)(6) motion to dismiss, we will consider it in conjunction with Third-Party Defendants' identical arguments in their motion to dismiss.

forward." *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999).  If the amended complaint adds "new theories of recovery or changes the scope of the case," then the defendant is free to plead anew as if the prior pleadings did not occur—this may include adding new affirmative defenses or pursuing new counterclaims. *Fausset v. Mortgage First, LLC,* 2010 WL 1212085, at *4 (N.D. Ind. Mar. 23, 2010). Here, Plaintiffs' amended complaint significantly expanded the scope of the litigation. While the original complaint sounded only in breach of contract, the amended complaint added claims of fraud, tortious interference, and several state and federal trademark infringement causes of action. *Compare* Docket No. 1, Ex. A at 3 (Complaint on Removal) *with* Am. Compl. 6–13. Plaintiffs' changes constitute entirely new theories of recovery rather than simply elaborations on their initial breach of contract claim. *Cf. GSI Group, Inc. v. Sukup Mfg. Co.*, 2007 WL 757819, *2 (C.D. Ill. Mar. 8, 2007) (finding free leave to answer appropriate where amended complaint added unfair competition and deceptive practices counts to an original claim of patent infringement). We therefore conclude that Rule 15's timing rules for amended pleadings do not apply to Defendants here, and their failure to seek leave of the court or file within 21 days of their original answer is not fatal to their answer and counterclaims.

**B. Failure to Join New Parties Timely under Rule 14**

Plaintiffs likewise argue that Federal Rules of Civil Procedure 14(a) commands that Defendants answer and counterclaims be stricken on grounds of timing. *See* Pls.' Br. 6; Pls.' Reply 3–4. Rule 14(a) provides that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer." Fed. R. Civ. Pro. 14(a)(1). The parties join issue over what constitutes an "original" answer for the purposes of

Rule 14—a question that does not appear to be settled definitively by case law. *See generally McDougald v. O.A.R.S. Cos., Inc.*, 2006 WL 997896, at *2 (E.D. Cal. Apr. 17, 2007) (discussing three possible approaches). Plaintiffs urge that we look for guidance elsewhere in the Federal Rules, where case law has interpreted the term "original pleading" in Rule 15(c) to refer to the very first pleading by a party. Pls.' Reply 4 (citing *BI3, Inc. v. Hamor*, 2011 WL 5023394, at *11 (N.D. Ill. Oct. 20, 2011)). Rule 15(c), however, allows "relation back" for parties whose pleadings would otherwise be faced with jurisdictional bars. *See* Fed. R. Civ. Pro. 15(c). This difference in context tarnishes Plaintiffs' suggested analogy; defining "original" literally under Rule 15(c) comports with the general leniency of the Federal Rules towards parties on technical issues, whereas a formalist definition of the term in the Rule 14 context would serve the opposite end, making impleading more difficult. We are more persuaded by the "nuanced, functional reading" of the term proffered by Defendants, for which they have marshaled considerable persuasive case law. Defs.' Resp. 4; *see, e.g.*, *McDougald*, 2006 WL 997896, at *2; *Capodanno v. Premier Transp. & Warehousing, Inc.*, 2010 WL 1329938, at *2 (S.D. Fla. Mar. 29, 2010). Under this interpretation, elements of an answer should be considered "original" where they respond to new material in an amended complaint, thus giving defendants the same chance to respond to new claims by impleading new parties that they would have had in answering an initial complaint.

Defendants argue credibly that they impleaded the Third-Party Defendants in response to new material appearing in the amended complaint—namely, the revelation that HK GmbH is the current owner of the trademark to the MP5® weapon. Defs.' Resp. 4; *see* Docket. No. 39. The claims for fraud and deception that lie at the heart of the third-party complaint derive from Defendants' theory that Weber and Ihloff intentionally deceived representatives of GSG and ATI

11

regarding the status of that intellectual property. Without touching the merits of those claims, we agree that they are more plausibly a reaction to material from the amended complaint than from the initial one. In keeping with our approach to the same questions of fairness presented under Rule 15, we therefore find that the amended complaint was the "original" one for these purposes, and that the impleading of Weber and Ihloff was not untimely under Rule 14.

## C. Failure to Follow Case Management Deadlines

The third and final timing violation that Plaintiffs allege in support of their motion to strike is a failure to follow the guidelines set down by the Case Management Plan. Federal Rules of Civil Procedure 16(b) provides that parties may amend their pleadings outside the deadlines established by a court's schedule only for "good cause and with the judge's consent." Fed. R. Civ. Pro. 16(b). The "good cause" requirement signifies a more stringent standard than that provided by Rule 15, *see Trustmark Ins. Co. v. General and Cologne Life Re of Am.*, 424 F.3d 542, 554 (7th Cir. 2005); "in this context, 'good cause' means that the deadline could not be met despite the party's diligence." *Dowers v. Mize,* 2010 WL 2694995, at *2 (S.D. Ind. July 2, 2010) (citing *Sulkoff v. United States*, 2003 WL 1903349, at *3 (S.D. Ind. Jan. 29, 2003)). The Rules' policy of giving teeth to case management deadlines derives from the court system's "legitimate interest in ensuring that parties abide by scheduling orders to ensure prompt and orderly litigation." *Dowers,* 2010 WL 2694995, at *2.

Just as with Rules 14 and 15, however, Defendants point out that Rule 16 is not a *per se* bar to the assertion of new defenses and counterclaims past the original scheduling deadline where a plaintiff has pleaded new material in an amended complaint to which the defendant deserves a chance to respond. *See, e.g.*, *Unigene Labs., Inc. v. Apotex, Inc.*, 2010 WL 2730471, at *5 (S.D.N.Y. July 7, 2010) (permitting a new answer after the original scheduling order

deadline when "the scheduling order pre-date[d] the Court's decision to grant Plaintiffs' request to amend the complaint"). Defendants assert, and we agree, that since the Case Management Plan's deadlines were set before Plaintiffs filed their amended complaint, the tardiness of Defendants' answer under the original February 11, 2012, deadline is not a bar to our consideration of it. *See* Defs.' Resp. 5–6.

All three of Plaintiffs' Rules-based arguments for striking Defendants' answer and counterclaims rely on the premise that Defendants have "amended" their pleadings outside the prescribed time period. Basic fairness principles, however, recognize the distinction between amendments that are purely discretionary and those that are compelled by an opponent's new arguments. The timeliness and efficiency considerations that underlie such timing rules must give way where, as here, a party's ability to undertake a response to the claims against it would otherwise be jeopardized. Under the circumstances of this case, where Plaintiffs' amended complaint added eight new counts and several distinct theories of recovery, strictly applying Rules 14, 15, and 16 to the Defendants would be inequitable. Accordingly, Plaintiffs' and Third-Party Defendants' Motions to Strike on these grounds are DENIED.

## II.    Motions to Dismiss

We turn now to the arguments that Plaintiffs and Third-Party Defendants press against the sufficiency of Defendants' counterclaims. Third-Party Defendants have explicitly presented us with a motion to dismiss under Rule 12(b)(6), arguing in the alternative that if the Court does not grant its Motion to Strike, it should nonetheless dismiss Defendants' claims of fraud, deception, and tortious interference for failure to state a claim on which relief can be granted. *See* Third-Party Defs.' Br. 8–21. Plaintiffs nominally make only a motion to strike under Rule 12(f), but their briefs contain a "futility" argument against the fraud claims—that the Court should

strike as futile any amended pleadings that would not survive a 12(b)(6) motion to dismiss. In the interests of economy, we will treat the futility claim within Plaintiffs' brief as a motion to dismiss Counts I and II. Since Plaintiffs and Third-Party Defendants make nearly identical arguments against the sufficiency of Defendants' counter-claims, we will discuss their motions together with respect to those two counts and then proceed to consider Third-Party Defendants' motion to dismiss the deception and tortious interference claims.

## A. Count I – Fraud against HK USA and Weber

Defendants allege that HK USA and its president, G. Wayne Weber, committed fraudulent inducement by misrepresenting the ownership of the HK IP in the course of the 2009 litigation's settlement conference and by signing the Settlement Agreement. Defs.' Answer 31.

To prevail on a fraud claim for an affirmative misrepresentation, a plaintiff must establish that there was: (1) a material misrepresentation of past or existing fact which (2) was untrue, (3) was made with knowledge of or in reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) which proximately caused injury or damage. *Lawyers Title Ins. Corp. v. Pokraka,* 595 N.E.2d 244, 249 (Ind. 1992); *Angel v. Powelson*, 977 N.E.2d 434, 444–445 (Ind. Ct. App. 2012). In a claim for fraudulent inducement, the ordinary limitations of the parole evidence rule do not apply, and evidence of oral representations made prior to the signing of the written instrument in question may be introduced. *See Circle Centre Dev. Co. v. Y/G Indiana, L.P.*, 762 N.E.2d 176, 179 (Ind. Ct. App. 2002) (citing *Ruff v. Charter Behavioral Health Sys. of Nw. Ind.*, 699 N.E.2d 1171, 1174 (Ind. Ct. App. 1998)). A negotiated resolution of litigation, like an ordinary contract, can be the subject of a fraudulent inducement claim. *See AmCan Enterprises, Inc. v. Renzi,* 32 F.3d 233, 235 (7th Cir. 1994).

Defendants allege that, throughout the settlement negotiations in the seven months leading up to the 2009 Settlement Agreement, HK USA and Weber "knew and intentionally and willfully withheld and concealed" the fact that HK USA had assigned its MP5® trademark to HK GmbH in March 2009. Defs.' Answer 19, ¶ 17. Further, they allege that by signing the Settlement Agreement, HK USA and Weber endorsed  three materially false representations in the agreement, contained in its preliminary "whereas" clauses. These clauses recited that: (1) "HK sells and distributes under the MP5 trademark certain firearms and related products and accessories"; (2) "HK owns a federal trademark registration in the mark 'MP5'. . ."; and (3) "HK claims to own in the United States a proprietary trade dress comprised of the designs of certain elements of its MP5 firearms ('the MP5 trade dress')." Defs.' Answer 24–25, ¶ 34 (citing Am. Compl., Ex. A at 1). According to Defendants, their agreement to pay $300,000 to settle the 2009 litigation relied at least in part on these knowingly false representations. *Id.* ¶ 35.

Plaintiffs and Third-Party Defendants urge dismissal of the fraud claim on the grounds that it fails to establish any material misrepresentation or any detrimental reliance producing damages. We need not resolve the parties' dispute over whether preliminary "whereas" statements in an agreement can constitute misrepresentations for fraud purposes, because we find that Defendants have failed to plead plausibly that they suffered damages as a proximate result of the alleged misrepresentations.

Plaintiffs and Third-Party Defendants pursue two related arguments on the issue of reliance and damages. First, they point to Defendants' own preliminary "whereas" statement in the Settlement Agreement, to the effect that they "seek a judgment declaring. . . that HK does not own the trademark, trade dress, and other intellectual property rights it claims to own." Third-Party Defs.' Reply 4 (citing Am. Compl., Ex. A at 1); *see also* Am. Compl. Ex. A ¶ 9

15

(Defendants refusing to "acknowledge the existence of any rights claimed by HK"). Urging that "[d]enial is not reliance," *id.*, they argue that Defendants are estopped from claiming detrimental reliance on HK's claim to own the trademark when they had resolutely refused to admit the existence of any intellectual property rights in the first place. Second, Plaintiffs and Third-Party Defendants deny that Defendants could have suffered any injury even if they did rely on the alleged misrepresentations, because the Settlement Agreement binds HK GmbH as well as HK USA. HK GmbH was named among the "affiliates, parents, [and] subsidiaries" of HK USA released from liability under the Agreement, Am. Compl., Ex. A ¶ 13, and Paragraph 21 provides that "the covenants, agreements, terms, provisions and conditions contained in this Agreement shall be binding upon and inure to the benefit of the Parties and their respective parents, subsidiaries, successors and assigns." *Id.* at ¶ 21.  In other words, HK GmbH is fully bound by the Agreement, and Defendants' agreement to pay $300,000 released them from any liability to the German parent as well as the American subsidiary, regardless of which of the two companies owned the IP at the time the deal was signed. Since the result of the Agreement for Defendants was exactly the same as it would have been had HK's representations about the true ownership of the MP5® trademark been correct, Plaintiffs and Third-Party Representatives argue that Defendants' claim of injury from the fraud fails as a matter of law. *See* Third-Party Defs.' Br. 13.

   We cannot agree that Defendants' claim of reliance on the alleged misrepresentations is groundless. Reliance is generally tested by "whether the party would have acted in absence of the representation." *Plymale v. Upright,* 419 N.E.2d 756, 761 n.3 (Ind. Ct. App. 1981). Here, regardless of Defendants' official litigation stance, it is at least plausible that their willingness to pay $300,000 to settle the litigation reflected their judgment that HK's claims of trademark infringement had merit—a judgment informed by HK's representations that it owned the MP5®

16

trademark. While Defendants have pleaded reliance successfully, however, they cannot show that the reliance proximately caused them harm. "Fraud without injury does not give rise to a cause of action." *Rhoda v. N. Ind. Pub. Serv. Co.*, 357 N.E.2d 287, 289 (Ind. Ct. App. 1976) (citing *Miller Jewelry Co. v. Dickson*, 42 N.E.2d 398, 402 (Ind. Ct. App. 1942)). HK USA sued Defendants when it owned the MP5® trademark. It assigned its IP rights to HK GmbH while the suit was pending, but the resulting settlement fully bound HK GmbH as an assignee and corporate affiliate. *See* Am. Compl., Ex. A ¶¶ 13, 21. *One* of the two bound HK entities owned the trademark at all relevant times, and there is no reason to think that the settlement's dollar value would have in any way reflected this nominal change in ownership had it been disclosed. *See* Third-Party Defs.' Br. 12 (noting that Fed. R. Civ. Pro. 25(c) contemplates the continuance of a suit by an original party even after assignment of the underlying interest on which it sued).[9] If any party suffered financial harm as a direct result of HK USA's lack of candor, it would have been HK GmbH, which found itself bound by an agreement to settle infringement claims against a trademark it had acquired, even though its American affiliate, the predecessor in interest, collected the $300,000. Indeed, binding both HK USA and HK GmbH to the same settlement likely did the Defendants a favor, freeing them from the expense of being sued later for the same set of alleged violations by the assignees of the MP5® trademark. Defendants have offered no meaningful refutation of Plaintiffs' and Third-Party Defendants' arguments on this score, and their inability to show any plausible thread of proximate causation connecting HK and Weber's misconduct and tangible injury is fatal to their fraud claim. *See Hermann v. Yater*, 631 N.E.2d

---

[9] Defendants assert in their Answer: "Had GSG and ATI known that HK USA no longer owned the MP5 trademark or any related claimed trade dress rights in the design of MP5 firearms, GSG and ATI would not have entered into the Settlement Agreemtn with HK USA, paid the settlement amount to HK USA, ceased the manufacture and sale of GSG-5 firearms, or agreed to the other terms of the Settlement Agreement." Defs.' Answer ¶ 38. We do not find this factually unsupported assertion to be plausible. It would make little sense for a company to halt settlement negotiations with one plaintiff and subject itself to an entirely separate suit by another because the IP in question changed hands between two corporate affiliates who were clearly pursuing the same litigation strategy.

511, 514 (Ind. Ct. App. 1994). Accordingly, the Motions to Dismiss with respect to Count I for fraud are GRANTED.

**B. Count II – Constructive Fraud**

Defendants also bring a claim for constructive fraud against HK USA, HK GmbH, Weber, and Ihloff, extending not only to the affirmative representations contained in the Settlement Agreement—which HK GmbH and Ihloff did not sign—but also to failure to disclose the IP assignment during the course of the 2009 litigation. The tort of constructive fraud encompasses omissions and failures to disclose as well as affirmative misrepresentations, but it applies to a narrower class of defendants—those who owe plaintiffs a "duty existing by virtue of the relationship between the parties." *Comfax Corp. v. N. Am. Van Lines, Inc.*, 587 N.E.2d 118, 125 (Ind. Ct. App. 1992). "In constructive fraud, the law infers fraud from the relationship of the parties and the circumstances which surround them. . . . This special relationship is shown when the parties have fiduciary duties to each other." *Id.* There is no definitive list of the "special" relationships giving rise to fiduciary duties, but they include "attorney and client, guardian and ward, principal and agent, pastor and parishioner," and close familial relationships. *See Lucas v. Frazee,* 471 N.E.2d 1163, 1166–1167 (Ind. Ct. App. 1984). Outside the fiduciary context, constructive fraud may also arise in buyer-seller relationships where "one party may be in the unique possession of knowledge not possessed by the other and may thereby enjoy a position of superiority over the other." *Mullen v. Cogdell*, 643 N.E.2d 390, 401 (Ind. Ct. App. 1994). However, "as a matter of law," there is no special relationship between parties when they "deal at arm's length." *Lyntech Eng'g, Inc. v. SPX Corp.*, 2010 WL 5027139, at *4 (N.D. Ind. Dec. 2, 2010).

18

Defendants' constructive fraud claim fails for two reasons, either of which would be sufficient to warrant dismissal: they have not established the existence of a special duty between the parties and—just as with their actual fraud claim—they have failed to plead plausibly that they suffered harm from the representations or omissions.

Here, the parties stood to one another in 2009 like they stand to one another now—as opponents in a lawsuit. They were both large corporate entities, represented by counsel, negotiating with each other at arm's length. *See, e.g.*, Defs.' Answer ¶¶ 10–11. Seizing on the fact that a special duty can sometimes arise between buyers and sellers, Defendants analogize the settlement negotiations to a commercial transaction: "Plaintiffs were 'selling' and Defendants 'bought' for $300,000 a release of all claims…." Defs.' Second Resp. 18. Further, they urge that HK's withholding of information during the negotiations gives rise to the kind of unequal bargaining position mandating a fiduciary duty, and that an "arm's length transaction occurs only where both parties have 'full access to all the relevant facts at all times.'" Defs.' Second Resp. 4 (citing *Pugh's IGA, Inc. v. Super Food Servs., Inc.*, 531 N.E.2d 1194, 1198 (Ind. Ct. App. 1988)).

Even if we were to accept Defendants' suggestion that the posture of adverse parties in a lawsuit is analogous to that of a buyer and seller in a commercial transaction, we reject their theory that every information imbalance in a settlement negotiation triggers a fiduciary duty. In advancing this theory, Defendants misconstrue language from *Pugh's IGA, Inc. v. Super Food Services, Inc.*, 531 N.E.2d 1194 (Ind. Ct. App. 1988). In that decision, the Indiana Court of Appeals held that no fiduciary duty bound two parties in a commercial transaction, and it noted in support of this conclusion that the parties were "experienced business people who had full access to all the relevant facts at all times. Thus, [the parties] were doing business at 'arm's

length.'" *Pugh's IGA*, 531 N.E.2d at 1198. In contending that arm's length transactions exist *only* where both parties "have access to all the relevant facts at all times," Defendants have attempted to elevate a common feature of an arm's length transaction into a necessary prerequisite. This mangling of the *Pugh's IGA* court's words proves too much. As Third-Party Defendants note, "such a standard would create a fiduciary relationship between nearly every group of contracting parties." Third-Party Defs.' Reply 6–7. Defendants' proposed rule is particularly inapt as applied to adverse parties in litigation, whose incentive to withhold information from each other—where disclosure is not otherwise commanded by law—is an unavoidable feature of the process. *See, e.g., Lewis v. Sch. Dist. No. 70*, 648 F.3d 484 (7th Cir. 2011) (declining to invalidate a settlement on grounds that if a party had revealed an ongoing criminal investigation of one of its employees, the adverse party would have achieved a more favorable settlement result). In the absence of a fiduciary relationship, no special duty of candor supporting an allegation of constructive fraud arises unless one party "dealt from a position of overpowering influence as to the subordinate party." *Lucas,* 471 N.E.2d at 1167. Especially in light of the heightened pleading burden imposed on fraud claimants under Rule 9, *see Concordia Theological Seminary, Inc. v. Hendry,* 2005 WL 3005482, at *3 (N.D. Ind. Nov. 9, 2005), we find that Defendants have failed to allege plausibly that such a "bargaining power" disparity existed between the parties to the 2009 settlement conference—or indeed that a notion derived from commercial transactions could ever apply to adverse parties in a lawsuit.

   Defendants' constructive fraud claim also fails for the same reason that their actual fraud claim fails—they have failed to state an adequate claim that they suffered harm as a proximate result of the alleged omissions or failures to disclose by HK, Weber, and Ihloff. Apart from the conclusory statement that "the HK Defendants proximately caused GSG and ATI injury," Defs.'

Answer 33, ¶ 67, neither Defendants' answer and counterclaims nor their briefs expand on the arguments made in support of Count I.

For these reasons, the motions to dismiss with respect to Count II for constructive fraud are GRANTED.

## C. Count III -- Deception

Defendants seek damages against HK USA, HK GmbH, Weber, and Ihloff for "deception" under the Indiana Crime Victims' Compensation Act (CVCA), Ind. Code § 34-24-3-1, which provides victims a civil cause of action against the perpetrators of certain crimes which have caused them pecuniary loss. In order to recover under the CVCA, a plaintiff need only prove the elements of the crime alleged by preponderance of the evidence; "a criminal conviction is not a condition precedent to recovery." *Klinker v. First Merchants Bank, N.A.*, 964 N.E.2d 190, 193 (Ind. 2012).

Defendants allege: "Each of the HK Defendants knowingly and intentionally has made false or misleading written statements to ATI and GSG with the intent to obtain property, or misapplied entrusted property in a manner that each person knows involves substantial risk of loss or detriment to GSG and ATI." Defs.' Answer 33, ¶ 70. We read this as an attempt to state a claim under two subsections of the deception statute: Section 3(a)(2) targets those who "knowingly or intentionally make[] a false or misleading statement with intent to obtain property, employment, or an educational opportunity," and Section 3(a)(3) applies in relevant part to a defendant who "misapplies entrusted property… in a manner that the person knows involves substantial risk of loss or detriment to either the owner of the property or to a person for whose benefit the property was entrusted." Ind. Code § 35-43-5-3(a)(2)–(3). Third-Party Defendants seek dismissal of the claims against Weber and Ihloff; Plaintiffs have not challenged

the claims against HK USA and HK GmbH, which we therefore leave undisturbed. We examine the claims against Weber and Ihloff under these two subsections in turn.

### 1. Deception under Ind. Code § 35-43-5-3(a)(2)

A claim under subsection 2 requires a "written statement." Ind. Code § 35-43-5-3(a)(2). Since Defendants rely on no written documents other than the Settlement Agreement, which Third-Party Defendant Ihloff did not sign, *see* Am. Compl. Ex. A, they have stated no valid claim under subsection 2 against Ihloff. As to Weber, Third-Party Defendants argue that the claim fails because it does not establish that Weber made a written misrepresentation with the intent to acquire the $300,000 for his *personal* benefit. Third-Party Defs.' Br. 18–19. Third-Party Defendants cite no authority for the proposition that a corporate officer cannot be guilty of deception under this statute when the pecuniary benefits accrue to the company he heads rather than himself, and it stands to reason that Weber benefited at least indirectly from HK's $300,000 settlement windfall. In allegations incorporated by reference into Count III, Defendants have stated the "who, what, when, where, and how" of the misrepresentation *, see Wigod*, 673 F.3d at 569—assertions that HK USA owned the MP5® trademark contained in the 2009 Settlement Agreement that Weber, as HK USA's president, plausibly knew were false. *See* Defs.' Answer ¶¶ 14, 16, 17, 26. Defendants have therefore satisfied their burden to plead with particularity when alleging fraudulent conduct under Rule 9(b), and Plaintiffs and Third-Party Defendants have shown us no reason why the claim against Weber is implausible or fails as a matter of law.

### 2. Deception under Ind. Code § 35-43-5-3(a)(3)

To be culpable under subsection 3, a defendant must misapply "entrusted property." Ind. Code § 35-43-5-3(a)(3). The Code further provides that property is "entrusted" when it is "held in a fiduciary capacity or placed in charge of a person engaged in the business of transporting,

storing, lending on, or otherwise holding property of others." Ind. Code § 35-43-5-1(h). Case law

is consistent with this definition. *See, e.g., Longhi v. Mazzoni*, 914 N.E.2d 834, 845 (Ind. Ct.

App. 2009) (applying statute to defendant who absconded with an earnest deposit); *cf. DeSimone*

*v. Quicken Loans, Inc.*, 2011 WL 2470661, at *3 (S.D. Ind. June 20, 2011) (finding statute

inapplicable to alleged misstatements in loan negotiations). The Settlement Agreement resulted

in an outright transfer of money, a transaction inconsistent with the statutory definition of

"entrusted" property. Defendants' claim under subsection 3 therefore fails.

Taking the claims under the two subsections of the deception statute together, Third-

Party Defendants' motion to dismiss is GRANTED with respect to Ihloff in all respects. Because

Defendants have stated a viable claim against Weber under Section 35-43-5-3(a)(2), the motion

to dismiss with respected to Weber is DENIED.

**D. Count VII – Tortious Interference with a Business Relationship**

Defendants allege that HK USA, HK GmbH, Weber, and Ihloff are all liable for tortious

interference with the business relationship between Defendants and their distributors and

retailers. Because only Third-Party Defendants' motion addresses this claim, we will consider

only the allegations with respect to Weber and Ihloff and will leave Defendants' claims against

HK USA and HK GmbH undisturbed at this stage.

There are five elements of common law tortious interference in Indiana: "(1) the

existence of a valid relationship; (2) the defendant's knowledge of the existence of the

relationship; (3) the defendant's intentional interference with that relationship through some

independent unlawful acts; (4) the absence of justification; and (5) damages resulting from

defendant's wrongful interference with the relationship." *Meridian Fin. Advisors, Ltd. v. Pence*,

763 F. Supp. 2d 1046, 1063 (S.D. Ind. 2011); *see also Levee v. Beeching*, 729 N.E.2d 215, 222

(Ind. Ct. App. 2000) (citing *Bradley v. Hall*, 720 N.E.2d 747, 750 (Ind. Ct. App. 1999)). Third-Party Defendants object to this counterclaim on the grounds that it fails to establish any "independent illegal action." Third-Party Defs.' Br. 19.

In Count VII, Defendants aver that "the HK Defendants [including Weber and Ihloff] acted illegally and with the aim to harm the business interests of GSG and ATI." Defs.' Answer 36, ¶ 91. Although not specific in its own right, the claim incorporates the allegations preceding it in the complaint, including the claim that Third-Party Defendants were guilty of deception, an Indiana crime. *See* Ind. Code § 35-43-5-3(a). We have dismissed the deception claim against Ihloff, but the claim against Weber survives. *See supra,* § II(C). Defendants also allege that HK USA has instigated more than two dozen bad-faith lawsuits for violation of its putative trade dress rights in the MP5® firearm, "us[ing] litigation as a means of maneuvering its litigation opponents into agreements to sign licenses or to agree not to continue to sell products otherwise in legitimate competition with HK." Defs.' Answer 36, ¶¶ 92–95.[10]

Third-Party Defendants' objections on the issue of independent unlawful acts are misplaced. They correctly note that the good-faith pursuit of litigation cannot serve as the independent act underlying a tortious interference claim, *see Watson Rural Water Co., Inc. v. Ind. Cities Water Corp.*, 540 N.E.2d 131, 139–140 (Ind. Ct. App. 1989), and they therefore urge that we disregard Defendants' allegations that HK USA has engaged in bullying litigation against it and other firms in the gun industry. But, as the structure of their counterclaim makes clear, Defendants make these allegations to satisfy a different element of the tort—the *scienter* requirement of lack of justification. Defendants allege not that the litigation itself is the act

---

[10] Third-Party Defendant Ihloff is an officer of HK GmbH rather than HK USA, and Defendants have not argued that he was responsible for HK USA's alleged pattern of bullying litigation. Therefore Defendants have not stated a claim against him for tortious interference based on this pattern, even if it were to serve as an independently sufficient predicate action on which to hold Weber, as HK USA's president, liable.

constituting tortious interference, but that HK USA's litigiousness serves as evidence that the misrepresentations made during the 2009 litigation reflect a bad-faith desire to interfere with competitors rather than an honest desire to protect its intellectual property. Since the "more than two dozen lawsuits" initiated by HK USA are alleged to be in bad faith, the privilege for good-faith litigation mentioned by Third-Party Defendants is no bar to their serving as the basis for a tortious interference claim. *Cf. Watson*, 540 N.E.2d at 139 (denying that "representations made in good faith" constitute unlawful acts). At any rate, the separate allegation of deception suffices to state a claim for this element of the tort.

Third-Party Defendants have raised no other objections to the sufficiency of the tortious interference claim—they do not dispute the existence of a relationship, Weber and Ihloff's knowledge of it, their absence of justification, or the existence of damages.[11] As Third-Party Defendants concede in their reply brief on this issue, "the parties' disagreement arises simply from their fundamentally opposed position concerning whether Defendants have adequately pled that Weber and Ihloff committed an underlying tort." Third-Party Defs.' Reply 9. Because we find that Defendants have adequately stated a claim that Weber is civilly liable for the crime of deception, we also find that they have adequately stated a claim against Weber for at least one predicate act sufficient to support tortious interference. Accordingly, Third-Party Defendants' Motion to Dismiss Count VII is GRANTED with respect to Ihloff and DENIED with respect to Weber.

---

[11] Having discussed the Defendants' difficulty in showing any damages in relation to the fraud claim, *see supra* § II(A), we note that they will likely have difficulty doing so here as well. Here, however, the claim of misconduct is broader—Defendants allege not only the misrepresentation about the assignment of the MP5® trade dress, but that HK never "establish[ed] the ownership of any legitimate trade dress" in the first place. It is plausible that Defendants could show damages if HK USA's entire litigation strategy has been in bad faith.

**Conclusion**

Plaintiffs and Third-Party Defendants presented two types of objections to Defendants' counterclaims and third-party complaint. Having determined that their procedural objections based on the timing of the Answer are without merit, Plaintiffs' and Third-Party Defendants' Motions to Strike under Rule 12(f) are DENIED.

As to the substantive objections to the counterclaims and third-party complaint, we resolve the Motions to Dismiss under Rule 12(b)(6) as follows:

(1) Plaintiffs' and Third-Party Defendants' motions to dismiss Count I for actual fraud are GRANTED as to all Plaintiffs and Third-Party Defendants.

(2) Plaintiffs' and Third-Party Defendants' motions to dismiss Count II for constructive fraud are GRANTED as to all Plaintiffs and Third-Party Defendants.

(3) Third-Party Defendants' motion to dismiss Count III for deception is GRANTED with respected to Third-Party Defendant Ihloff and DENIED with respect to Third-Party Defendant Weber.

(4) Third-Party Defendants' motion to dismiss Count VII for tortious interference with business relations is GRANTED with respect to Third-Party Defendant Ihloff and DENIED with respect to Third-Party Defendant Weber.

Neither Plaintiffs nor Third-Party Defendants presented arguments for the dismissal of the other counts of the Defendants' counterclaims and third-party complaint—namely, breach of contract (three counts), a request for the cancellation of U.S. Trademark Reg. No. 1,594,109, a claim for false registration, and declaratory judgment claims. These claims remain undisturbed.

IT IS SO ORDERED.

Date: _____09/30/2013_____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

26

Distribution:

Darlene R. Seymour
dseymour@ce-ip.com

Jason M. Sneed
JASON SNEED PLLC
jsneed@sneedlegal.com

Charles M. Landrum, III
JASON SNEED PLLC
clandrum@sneedlegal.com

Bruce Benjamin Paul
STITES & HARBISON, LLP
bpaul@stites.com

Douglas B. Bates
STITES & HARBISON, LLP
dbates@stites.com

Neal F. Bailen
STITES & HARBISON, LLP
nbailen@stites.com

Anne L. Cowgur
TAFT STETTINIUS & HOLLISTER LLP
acowgur@taftlaw.com

Jonathan G. Polak
TAFT STETTINIUS & HOLLISTER LLP
jpolak@taftlaw.com

Michael Zachary Gordon
TAFT STETTINIUS & HOLLISTER LLP
zgordon@taftlaw.com

Peter Jon Prettyman
TAFT STETTINIUS & HOLLISTER LLP
pprettyman@taftlaw.com

Tracy Nicole Betz
TAFT STETTINIUS & HOLLISTER LLP
tbetz@taftlaw.com