UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HECKLER & KOCH, INC. and<br>HECKLER & KOCH GMBH,<br><br>    Plaintiffs/Counterclaim Defendants,<br><br>    v.<br><br>GERMAN SPORT GUNS GMBH; and<br>AMERICAN TACTICAL IMPORTS, INC.,<br><br>    Defendants/Counterclaimants,<br><br>AND<br><br>GERMAN SPORT GUNS GMBH; and<br>AMERICAN TACTICAL IMPORTS, INC.,<br><br>    Third-Party Plaintiffs,<br><br>    v.<br><br>G. WAYNE WEBER AND NIELS IHLOFF,<br><br>    Third-Party Defendants. | Case No. 1:11-cv-01108-SEB-TAB |

**RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

Defendants American Tactical Imports, Inc. ("ATI") and German Sport Guns GmbH ("GSG") hereby respond to Plaintiffs' Motion to Compel, (Doc. No. 210), and brief in support thereof. (Doc. No. 211, hereinafter "Brief").

# TABLE OF CONTENTS

I.   Introduction ......................................................................................................... 4

II.  Relevant History of Discovery .......................................................................... 4

III. The Motion and Request for Expenses Should Be Denied ............................... 6

IV. Legal Standards Relevant to this Discovery .................................................... 9
   A.  Rule 34 Requests for Production May Be Directed to Parties Only and Not to Counsel, Absent Waiver by the Party and Its Counsel ..................................................... 10
   B.  Confidential Documents Provided to the Mediator in the Prior Litigation Are Not Discoverable ................................................................................................ 14
   C.  Extensive Financial Discovery is Not Appropriate ............................................ 17
   D.  Requests for Production Attempting to Exceed the Scope of Rule 26 Must Be Denied... 19

V.  Interrogatories ................................................................................................ 21
   A.  Interrogatory No. 7 to GSG, regarding sale of conversion kits ........................... 21
   B.  Interrogatory No. 10 to GSG, regarding replica firearms manufactured by GSG............ 22
   C.  Interrogatory No. 11 to ATI, regarding federal investigations of ATI;........................ 23
   D.  Interrogatory No. 17 to ATI and No. 18 to GSG, regarding drawings provided to the mediator ........................................................................................................... 24
   E.  Interrogatory No. 24 to ATI and No. 25 to GSG, regarding documents from the USPTO concerning marks owned by HKI ...................................................................... 25

VI. Requests for Production.................................................................................. 26
   A.  Request Nos. 29 and 30 to GSG and Nos. 31 and 32 to ATI, regarding expenditures for manufacture and sale of firearms.................................................................... 26
   B.  Request No. 33 to GSG and No. 35 to ATI, regarding documents relating to settlement of the first litigation ............................................................................................. 27
   C.  Request No. 34 to GSG and No. 36 to ATI, regarding design patent applications;.......... 27
   D.  Request No. 41 to GSG and No. 43 to ATI, regarding documents in support of damage claims.............................................................................................................. 28
   E.  Request No. 42 to GSG and Request No. 44 to ATI, regarding communications with third parties concerning the litigation ..................................................................... 29
   F.  Request Nos. 45 to ATI, regarding customer warranty documents.................................. 30
   G.  Request No. 46 to ATI, regarding customer demographic information........................... 31
   H.  Request No. 46 to GSG and Request No. 48 to ATI, regarding annual budgets.............. 32
   I.  Request No. 53 to ATI, regarding ATF or ICE investigations......................................... 32
   J.  Request Nos. 55 and 56 to ATI, regarding communications with ATI's customers who decided to stop doing business with ATI......................................................... 33
   K.  Request No. 57 to ATI, regarding communications between ATI and its customers relevant to the litigation .................................................................................. 34
   L.  Request Nos. 56, 57, 58 and 59 to GSG and Nos. 58, 59, 60 and 61 to ATI, regarding ATI's loss of credit facilities .......................................................................... 35
   M.  Request No. 76 to ATI, regarding communications between ATI and former employees regarding the litigation................................................................................... 35
   N.  Request No. 76 to GSG and Request No. 82 to ATI, regarding invoices for legal services incurred in the prior litigation........................................................................ 36

O.    Request Nos. 80 and 81 to GSG and Nos. 86 and 87 to ATI, regarding third-party use of foregrip and stock ........................................................................................... 37

P.    Request No. 82 to GSG and Request No. 88 to ATI, regarding documents supporting GSG's claim that the MP5 trade dress is unenforceable ................................................... 38

**VII.    Conclusion** ........................................................................................................... **38**

## I.    INTRODUCTION

In responding to Plaintiffs' multiplicity of papers, Defendants address four major points. In Section II, Defendants show the Court that the relevant discovery history and diligence of Defendants in responding to Plaintiffs discovery makes Plaintiffs' motion highly suspect. In Section III, Defendants show that the Court is free to summarily deny the motion and deny the award of expenses for lack of good faith on Plaintiffs' part, among other reasons. In Section IV, Defendants set forth the legal standard of critical importance that are implicated in several requests, such as the discoverability of an attorney's files or files shown to a mediator. And in Sections V and VI, Defendants address the particular discovery requests subject to the motion.

Should the Court elect to take up the merits of the agglomeration of papers served by Plaintiffs, Defendants have assembled a reference chart at Exhibit A. The chart sets forth those requests served by Defendants, those subject to Plaintiffs' motion, those requests that Plaintiffs now represent have been resolved by Defendants' supplementation, and the current status of each request. As is readily apparent, only a small minority of the vast discovery requests served by Plaintiffs remain at issue. For those requests that Plaintiffs represent are no longer at issue, Defendants rely on that representation and do not respond herein. (See Doc. No. 216, at ¶4).

## II.    RELEVANT HISTORY OF DISCOVERY

Defendants responded fully and completely to the interrogatories and requests for production served by Plaintiffs during 2011 and 2012, spending hundreds of attorney hours reviewing documents and ultimately producing over 17,000 pages of documents to Plaintiffs. After Plaintiffs' review of the documents and completion of their twelfth deposition in this case, Plaintiffs represented to Defendants that Plaintiffs' discovery was complete. (See, Doc. No. 72) ("…Plaintiffs' counsel indicated that he would not approve more than a short extension."). While the Court granted an extension of discovery to February 28, 2013, (Doc. No. 101), discovery was

ultimately stayed by the Court on January 14, 2013. (Doc. No. 143). On February 1, 2013, the Court scheduled a settlement conference for April 19, 2013. (Doc. No. 152).

Even though a settlement conference had been scheduled and Plaintiffs had completed their discovery, Plaintiffs decided to serve a burdensome second wave of discovery on February 18, 2013 leading up to the settlement conference. Together, Plaintiffs and Third-Party Defendants served a total of 129 new interrogatories and 260 new requests for production comprising over 150 pages. Plaintiffs apparently sought to maximize the burden of those discovery requests by having each Plaintiff and/or Third-Party Defendant serve duplicative requests and even directing requests to one Defendant where the records sought related strictly to the other Defendant. (*See, e.g.,* Doc. No. 216, at 4 ¶7.d.vii) (serving four requests for production on Defendant **GSG** "regarding **ATI's** loss of credit facilities"). The discovery sought by Plaintiffs appears to have been for tactical, and not substantive, reasons.

Nevertheless, Defendants responded in due course to the mass of requests, responding where appropriate and objecting where appropriate. On July 11, 2013, the parties conferred regarding Defendants' objections and responses. The parties were able to come to agreement on particular requests, for which Defendants agreed to provide supplemental responses. Defendants served those supplemental responses on August 21, 2013. With respect to other requests, the parties participated in a conference with the Court on August 7, 2013. The parties conferred again on August 14, 2013 and were able to agree to the supplementation of certain additional requests. Defendants' counsel sent a letter memorializing the same on August 20, 2013, which letter Plaintiffs did not provide to the Court. (See Exhibit B, Letter from C. Landrum). Where requests clearly were potentially relevant to claims or defenses in this case, Defendants have responded. In many instances, Defendants have elected to produce the requested materials where

relevance was debatable, rather than to trouble the Court and invest resources in briefings on debatable points. Unfortunately, Plaintiffs have conceded but a single point: that Plaintiffs' requests for documents related to GSG-5 and GSG-522 **airsoft guns** are not likely to lead to the discovery of admissible evidence, and that concession was made only as a defensive reaction to Defendants' motion to compel seeking communications by Plaintiffs and their agents with Defendants. (Doc. No. 212, at 10) ("Plaintiffs have decided not to press the issue of discovery concerning airsoft replicas in this case.").

Defendants have spent and will spend in excess of hundreds, if not a thousand, attorney hours reviewing and producing documents responsive to those requests on which the parties have reached agreement. Yet Plaintiffs insist on drinking from the dregs of their requests, demanding each and every last document requested regardless of whether it is likely to lead to the discovery of admissible evidence. Plaintiffs' claim is incorrect and unsupported that "[a]s of the filing of the Motion, there was no indication that the supplemental responses would ever be forthcoming." (Doc. No. 216, at 3 ¶5). In fact, the parties explicitly agreed that document production in response to the resolved requests would be ongoing until approximately October 31, 2013, absent an extension. Plaintiffs were well aware of Defendants' forthcoming discovery responses and ongoing document review and production. Indeed, Defendants served their verified supplemental interrogatory responses and dozens of pages of responses to the 260 requests for production on September 18, 2013, the same day as Plaintiffs' filing of the instant motion. Defendants respectfully request that the Court deny Plaintiffs' attempts to burden Defendants and this Court with the instant motion to compel.

### III.    THE MOTION AND REQUEST FOR EXPENSES SHOULD BE DENIED

The Court should not hesitate to deny Plaintiffs' motion and requests for expenses for failure to attempt in **good faith** to obtain discovery without court action. Defendants agree that

the parties have had numerous conversations about many, but not all, of these requests. However, Defendants take great issue with Plaintiffs' willful blindness to the supplementation that Defendants had indicated clearly was forthcoming, and which was in fact served the same day as the filing of the instant motion. Contrary to Plaintiffs' counsel's belief, reliance on a twelve-day-old email without Plaintiffs attempting *any* follow up is hardly "good faith" when Plaintiffs already had a letter from Defendants setting forth the specifics of the forthcoming supplementation. *See, e.g., Ellis v. CCA of Tennessee, LLC*, 1:08-CV-0254-SEB-JMS, 2009 WL 234514, *2 (S.D. Ind. Feb. 2, 2009) ("In the Court's view, a reasonable effort to reach agreement as required by L.R. 37.1 'means more than mailing or faxing a letter to the opposing party. It requires that the parties in good faith converse, confer, compare views, consult and deliberate, or in good faith attempt to do so.'") (*quoting Payless Shoesource Worldwide, Inc. v. Target Corp.*, 237 F.R.D. 666, 670 (D. Kan. 2006)). Plaintiffs even admit in their motion that the discovery was forthcoming: "If Defendants appropriately supplement their responses prior to any order from the Court on this motion, Plaintiffs will so advise the Court." (Brief, at 4). Rather than wait to obtain the discovery, inquire when the discovery would be forthcoming, or enlist the Court in a simple conference call to set a date for completion, (*See, e.g.,* Doc. No. 131) (minute order requiring Plaintiffs to serve overdue discovery), Plaintiffs elected to file their motion on what turned out to be the same day Defendants were serving the requested discovery.

Plaintiffs fault Defendants for being "12 days past due," but the passage of time runs both ways. Defendants declined to give an estimated date due to the uncertainty of timing and, while Plaintiffs asked for an estimated date, Plaintiffs never expressed that failure to provide the discovery by a particular date would necessitate a motion to compel. Accordingly, it was reasonable for Defendants to believe that Plaintiffs did not object to not having an estimated

date, particularly in light of Plaintiffs' seeking an extension to respond to Defendants' already filed motion to compel. (Doc. No. 205). Not only did Plaintiffs inconvenience the Court through a premature filing, but Plaintiffs also chose to increase litigation costs for themselves by drafting a lengthier-than-necessary motion and a supplemental filing to undo portions of the motion.

Rule 37(a)(5)(A) provides that "if the motion is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." However, Rule 37(a)(5)(A) prohibits such payment if "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."

As set forth above, Plaintiffs' motion was not filed in good faith. As set forth below, Defendants' responses and objections are substantially justified. Plaintiffs even admit to the same with respect to several discovery requests. *See, e.g.,* Interrogatory No. 17 to ATI and No. 18 to GSG) ("Plaintiffs recognize the existence of a legitimate and good-faith dispute with regard to this request and, therefore, do not seek their fees in relation to this portion of the motion.") (Brief, at 10). Accordingly, an award of expenses would not be appropriate.

And Plaintiffs' actions appear to have been tactical in nature. On August 29, 2013, Defendants filed a motion to compel relating to the heinous actions of Plaintiffs and their agent Continental Incorporated, Inc. d/b/a Continental Enterprises ("Continental"). (Doc. No. 200). After filing, Plaintiffs attempted to "negotiate" their response to the motion to compel through conferences with Defendants. Plaintiffs even requested an extension to respond to the motion to

compel expressly for the purpose of having "discussions" regarding the motion. (Doc. No. 205). Plaintiffs' "discussions" consisted of offering documents to which Defendants were already entitled in exchange for Defendants' waiving their right to attorney's fees on the motion to compel. Defendants made a counter-offer in which fees would be waived in exchange for the filing of a consent order. Instead of continuing "discussions," Plaintiffs used the extension of time to draft and file not one but two motions to compel on behalf of Plaintiffs and the Third-Party Defendants on September 18, 2013, all the while planning to request fees allegedly necessitated by their own motion to compel while simultaneously seeking to strike a deal asking Defendants to waive fees for their already-filed, good faith, and necessary motion to compel against Plaintiffs. Ultimately, Plaintiffs and Third-Party Defendants buried this Court with two motions *and* two supplemental filings requiring extensive cross-referencing to sort through the chaff to find the few issues of substance remaining in dispute. Under such circumstances, an award of expenses would be unjust.

## IV.    LEGAL STANDARDS RELEVANT TO THIS DISCOVERY

Plaintiffs' wide-ranging motion attempts to obtain much discovery to which Plaintiffs are not entitled under the Federal Rules of Civil Procedure, such as: (A) by demanding that Defendants' counsel's files be searched pursuant to Rule 34 requests for production served on Defendants; (B) by seeking confidential documents from the mediation of the prior litigation; (C) by seeking extensive financial documents not relevant to any party's claims or defenses; and (D) by attempting to impose obligations on Defendants beyond those imposed by Rule 26 through so-called "contention requests for production." Due to the significance of these issues and the applicability of the legal standards to multiple discovery requests addressed in Sections V and VI, Defendants first address those legal standards in Sections IV(A)–(D) below.

**A.      Rule 34 Requests for Production May Be Directed to Parties Only and Not to Counsel, Absent Waiver by the Party and Its Counsel**

Requests for production served pursuant to Rule 34 may be directed only to parties: "A party may serve **on any other party** a request within the scope of Rule 26(b)…" Fed.R.Civ.P. 34(a) (emphasis added); *Hickman v. Taylor,* 329 U.S. 495, 504 (1947) (explaining that Rule 34 "is limited to parties to the proceeding, **thereby excluding their counsel** or agents") (emphasis added); *Hobley v. Burge*, 433 F.3d 946, 950 (7th Cir. 2006) ("It is the City, not Jones Day, that is the responsive party in this suit. And even if Jones Day were the City's current counsel, **Rule 34 would not be the correct discovery tool** for gaining access to work product held by an attorney.") (emphasis added); *see also,* 8 Wright, et al., *Federal Practice and Procedure* § 2208 (Rule 34 creates a discovery device only against parties and does not run against a party's counsel or nonparty witnesses).

In *Hobley*, the district court initially sanctioned a party's former counsel for failing to produce documents or a privilege log in response to Rule 34 requests for production. The Seventh Circuit overturned the sanction on grounds that an attorney may assert work-product immunity even in the face of waiver by the client and that the usual method of compelling production from a non-party, including counsel, is via subpoena under Rule 45. 433 F.3d at 949 ("An attorney has an independent interest in privacy, even when the client has waived its own claim, as long as invoking the privilege would not harm the client's interests. Although the City has abandoned its own privilege claims, Jones Day's claim is not inconsistent with the City's interests in this litigation.") (internal citation omitted). Absent such waiver, the attorney's privacy interest negates the client's control of the documents. *DeGeer v. Gillis*, 755 F. Supp. 2d 909, 924 (N.D. Ill. 2010) (citing *Hobley* for the proposition that the law firm's "independent privacy interest in work product documents…negates the client's 'control' of those documents").

*DeGeer* went on to require production, not of the attorney's files, but of the client's backup tapes held by the attorney, i.e., the client's own documents to which the attorney maintained custody. *Id.* Plaintiffs' citation to *Gray v. Faulkner* is inapposite because the resisting party raised no objection to the requested discovery. 148 F.R.D. 220, 223 (N.D. Ind. 1992). Accordingly, the *Gray* court did not have before it objections based on the non-party status of the attorney or the work-product-doctrine immunity negating control by the client. Still further, the *Gray* court found that the resisting party had made no attempt to search even its own files. *Id.* The Court should be reticent to follow such a case.

To be clear, Defendants are not refusing categorically to "produce communications by Alston and Bird attorneys," (Brief, at 16), nor refusing to produce documents in support of their claims or defenses. To the extent that such documents exists in **Defendants'** files and are responsive to Plaintiffs' requests for production, they have been and will be produced or logged as appropriate. Where Defendants draw the line is Plaintiffs' demand, contrary to *Hickman* and *Hobley*, that Defendants' former counsel, Alston & Bird LLP, and/or their current counsel Sneed PLLC, produce documents or a privilege log from the **attorney's files**, in response to Rule 34 requests for production to ATI and GSG. Neither the Seventh Circuit nor the Supreme Court, however, make such a requirement.

Defendants have discharged and will continue to discharge their production responsibilities under Rules 26, 33, and 34 by their thorough and extensive document collection, review, and production activities from their own files. To wit, twice during the last two years ATI and GSG have commissioned outside e-discovery vendors, under the direction of their outside counsel representing them in this case, to image hard drives and servers, and to collect potentially responsive hard copy documents. The first such collection took place in January 2012

in Germany and in Rochester, New York at the respective Defendants' offices, with outside counsel and e-discovery vendors present during each collection. And in response to the present, expansive set of discovery requests, GSG and ATI again, in June 2013, had their outside counsel and e-discovery vendors conduct on-site collection in Germany and New York so as to discharge their duties under the Federal Rules of Civil Procedure. ATI and GSG estimate that review of the materials collected in June 2013 for responsiveness, privilege, and confidentiality will take in excess of 1,000 attorney hours, which efforts are ongoing. Given the thorough collection activities described above, plus the Defendants' retention of their own files, and most importantly in light of the guidance of *Hickman* and *Hobley*, Defendants have discharged their discovery duties completely and their former and/or present counsel have no duty to produce any materials from the **lawyers' files**, or even to create a privilege log from the same.

Plaintiffs, as to their part, have had a practice of having their attorneys maintain a repository of materials used for production in their 40+ cases instigated by Plaintiffs against their competitors. Accordingly, Plaintiffs have not, on information and belief, conducted proper collection in this case, but instead have instructed their lawyers at Taft, Stettinius & Hollister LLP and Continental to produce documents from the lawyers' files. For example, in an August 10, 2012 letter, Plaintiffs' counsel represented that the records at counsel's office "are now designated as in HK's document production and they are made available to you under FRCP 34(d) [sic]." (Doc. No. 74-6, at 3). Plaintiffs' counsel further represented that the documents possessed by Continental, "so there is no uncertainty, these records are also designated as a part of HK's document production and are made available to you pursuant to FRCP 34(d)." Id. By representing that such documents were being produced pursuant to Rule 34, Plaintiffs exercised the requisite control over their lawyers' files and the lawyers have accommodated.

By contrast, neither Defendants nor their counsel have made any such waiver, and Defendants' counsel will not agree to produce their work product just because Plaintiffs' counsel may have done so. As stated above, Defendants have conducted a proper review of their files, resulting in the production of over 17,000 pages to date, and recording documents entitled to the attorney-client privilege and work-product-immunity doctrine in a privilege log made from ATI's and GSG's files. Defendants are in the midst of repeating the same process in response to HKI's Second Requests for Production, in addition to supplementing Defendants' prior productions. To the extent that communications with counsel exist in Defendants' files and are responsive to Plaintiffs' requests for production, those documents have been or will be logged. And unlike the situation in *DeGeer*, Defendants' counsel do not possess backup tapes of their clients' own files so as to create a separate source for production of documents.

Tellingly, Plaintiff HKI tried, earlier this year, to acquire the files of ATI's and GSG's former counsel Alston & Bird LLP, by serving a subpoena *duces tecum* on Defendants' former counsel in the Western District of North Carolina. In response to a mere thirteen requests for production, Alston served over 20 pages of objections consistent with *Hickman* and further required that HKI advance the cost of producing a privilege log in response to those thirteen requests, estimated to be $20,000. HKI chose to withdraw the subpoena. Now Plaintiffs ask this Court to require that in response to **260** requests for production served by Plaintiffs and Third-Party Defendants "that Defendants must search for and produce all responsive documents in their custody or control, including those documents from Alston and Bird attorneys that are now in their current attorney's possession." (Doc. No. 216, at 3). Such a demand is unreasonable on its face. For example, HKI's Request No. 42 to GSG and No. 44 to ATI, seeking "any and all communications to third parties relating to the present action or the Prior Litigation," would

require the logging and or production of essentially every file in Defendants' counsel's files. As a matter of policy, the Federal Rules of Civil Procedure should not be construed to require an opponent's counsel to log its privileged litigation files in response to requests served on a client.

Still further, Plaintiffs are seeking an end-run around the protections against undue burden and expense, by imposing a duty on opposing counsel to search the lawyers' entire file. As set forth above, the Federal Rules of Civil Procedure do not require that Defendants expend further time and funds to have their counsel review and log each and every document in their possession. Such an order would produce the very circumstance *Hickman* sought to prevent:

> Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

329 U.S. 495 at 511. If Plaintiffs have a legitimate, non-harassing basis for seeking discovery from Defendants' counsel, Plaintiffs must submit to the requirements of Rule 45 and specify the legal rationale for overcoming the attorney-client privilege and work-product immunity. Otherwise, Defendants' counsel will be subjected to a patently overbroad and unduly burdensome demand to review documents to determine whether they are responsive to any of Plaintiffs' and Third-Party Defendant's 260 requests for production.

**B.    Confidential Documents Provided to the Mediator in the Prior Litigation Are Not Discoverable**

Pursuant to Fed.R.Evid. 501, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." As set forth below in response to specific discovery requests, Plaintiffs seek documents exchanged with the mediator in support of their allegations of breach-of-contract. Accordingly, state law governs privilege with respect to those claims. *In re March, 1994 Special Grand Jury*, 897 F. Supp. 1170, 1172

(S.D. Ind. 1995) ("Under Rule 501 of the Federal Rules of Evidence, federal law governs the recognition of testimonial and/or disclosure privileges in federal cases **unless some state law serves as the rule of decision**.") (emphasis added). And even with respect to federal claims, "state law regarding evidentiary privileges should not be ignored, because 'a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy.'" *In re Mar. 1994 Special Grand Jury*, 897 F. Supp. at 1172 (*quoting Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058, 1061 (7th Cir.1981). "While federal law does not recognize a mediator's privilege, Indiana law does recognize such a privilege. Therefore, this court will consider whether that state created privilege should be recognized…." *Id.*

"Indiana policy strongly favors the confidentiality of all matters that occur during mediation." *Horner v. Carter*, 981 N.E.2d 1210, 1211 (Ind. 2013). "Indiana judicial policy strongly urges the amicable resolution of disputes and thus embraces a robust policy of confidentiality of conduct and statements made during negotiation and mediation." *Id.*, at 1212. Still further, the Indiana Supreme Court has acknowledged the chilling effect of admitting statements made during mediation. *See, e.g., Loparex, LLC v. MPI Release Technologies, LLC*, 964 N.E.2d 806, 821 (Ind. 2012) (use of bargaining tactics and statements in a follow up suit would most certainly chill the negotiating process").

Mediation is a process where at least two disputing parties choose to be guided to a mutually agreeable solution with the aid of a mediator. *See, e.g.,* Ind. Code § 34-6-2-78. A "mediator" means a neutral and impartial person who assists in the resolution of a dispute through the mediation process. *See, e.g.,* Ind. Code § 34-6-2-79. If parties are to avail themselves of a mediator to guide them to a mutually agreeable solution, a party must be permitted to

discuss with the mediator in confidence what would and would not constitute a possible solution. If every word spoken and every document presented to a mediator is discoverable, the mediator is reduced to a mere messenger, carrying the competing offers from party to party without any ability to guide those offers. Plaintiffs attempt to turn the matter on its head: "Such a rule would mean that discovery is available in breach-of-contract cases when the contract is formulated outside mediation, but the same discovery would not be available if the contract was formulated inside mediation." (Brief, at 9). Yet this is not true: in a non-mediated settlement conference, a party is not entitled to discover the confidential discussions of its opponent in formulating an offer absent a showing that the attorney-client privilege should be set aside. Here, the mediator's privilege preserves the privileged and confidential nature of those discussions with a mediator.

Here, Plaintiffs are not seeking just the identification of documents exchanged between the *parties*. Plaintiffs are seeking documents allegedly provided to the mediator whether or not the documents ultimately were shown to the Plaintiffs. Not only do Plaintiffs wish to make parties to a mediation hesitant to make offers-in-compromise, Plaintiffs wish to impair Defendants' ability even to discuss potential offers with the mediator: "It is important to remember that Defendants' counsel gave the drawings at issue to the mediator for the purpose of using them in the negotiation." But assuming, *arguendo*, that the mediator advised Defendants of the merits of any particular offer and that Defendants' incorporated the mediator's advice into any subsequent offer, that dialogue with the mediator and any documents used to facilitate such dialogue are highly confidential. At a minimum, each party presented confidential mediation statements to the mediator, which statements may or may not have included drawings.

Still further, contract theory offers additional support for the Court's refusal to order the production of materials provided to a mediator in confidence. When these parties engaged in

16

mediation before Larry Hefter, a lawyer identified from the International Trademark Association's Panel of Neutrals, they jointly agreed among the parties and mediator that each could have confidential communications with Mr. Hefter, which he agreed would not be shared with the opposing parties. Such an agreement facilitated creative discussion in conferences with Mr. Hefter. Now, however, Plaintiffs seek to require Defendants and/or their counsel to turn over whatever documents they may have provided to Mr. Hefter in a confidential session. In other words, Plaintiffs seek the Court's endorsement of a breach of the oral or implied contract undergirding the settlement conference in 2009. Both parties are entitled to the benefit of the implied contract of confidentiality regarding such statements. Plaintiffs' attempt to pierce the veil of confidentiality and to breach that implied contract must be denied.

## C.    Extensive Financial Discovery is Not Appropriate

Pursuant to Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Plaintiffs make no argument that the discovery into Defendants' general financial affairs is needed for any claim, but they nevertheless ask the Court to require extensive production to Plaintiffs of Defendants' finances. Plaintiffs express that discovery is needed in defense of an alleged claim of Plaintiff ATI:

> Although ATI has not amended its discovery responses to so state, ATI recently represented that it does not intend to make a claim related to the loss of its credit facilities. Even if this is correct, Plaintiffs are still entitled to this discovery because it demonstrates another outside injury to ATI – just like the federal investigations. ATI alleges that Plaintiffs' actions have essentially destroyed its business.

(Brief, at 29-30). Not only have Defendants supplemented their discovery responses to set forth those damages that Defendants intend to pursue, Plaintiffs attached the supplemental response to the instant motion but apparently did not read the response (Doc. No. 210-5):

***INTERROGATORY NO. 2:*** *Identify all damages you claim in this action by count and provide a general description of the facts and opinions supporting each such identified damage. Include in your answer the dollar amount of each claim of damage.*

**ANSWER:** *Defendant objects to this contention interrogatory as overly broad and unduly burdensome insofar as it seeks a narrative account of "all damages you claim." Defendant further states that this contention interrogatory is premature, as it seeks to have Defendant articulate theories of its case which are not yet fully developed, and does not have to be answered, if at all, until further discovery has been taken. Additionally, the interrogatory is premature as the Case Management Plan provides a separate deadline for discovery related to damages. Defendant further objects on grounds that the interrogatory seeks information involving the mental impressions, conclusions, opinions and legal theories of counsel and is therefore protected by the work-product doctrine.*

**SUPPLEMENTAL ANSWER:** *Subject to and without waiving the foregoing objections, Defendant responds that Defendants ATI and GSG collectively have incurred damages for attorney's fees and costs in excess of $660,000 related to the defense of invalid and/or fraudulent intellectual property claims asserted by Plaintiff Heckler & Koch, Inc. in the prior litigation of which fees and costs were shared equally, $300,000 for the payment of a fraudulently induced settlement agreement of which payment was shared equally, and lost profits due to discontinuance of the GSG-5 firearms and replacement by the GSG-522 firearms, the sale of related accessories, advertising expenses and tooling costs, lost sales to customers of ATI, and attorney's fees and costs to be determined related to Plaintiffs' assertion of the fraudulently maintained MP5 trademark registration No. 1,594,109 and non-existent trade dress alleged with respect to MP5 firearms in the present action, as to which amounts Defendant has made no determination independent of facts and opinions protected from discovery by Rule 26(b)(4)(D). Defendant further responds that Defendant is entitled to treble damages, punitive damages, and such other damages as may be identified through further discovery.*

As set forth below, Plaintiffs seek extensive financial information from Defendants related not to the specific products at issue in this litigation, on which Defendants' damages claims are based, but related to Defendants' businesses in general. On the one hand, courts have permitted discovery into "budgets" and "forecasts" related to the particular products at issue. *See, e.g., Retail Experts Consulting & Mgmt., Inc. v. Premium Retail Servs., Inc.*, 2006 WL 1719564 (N.D. Ill. June 15, 2006) ("The court agrees that Premium should produce documents supporting its estimate of net profits and expected revenues under the Contract.") And when a parties' damages calculation relies on extensive financial history, such information may be discoverable. *See, e.g., Roadbuilders Mach. Supply Co., Inc. v. Oshkosh Corp.*, 2012 WL 1580643 (D. Kan. May 4, 2012). But Courts have denied discovery into the "overall financial status of the defendant" where actual issues in the case related to some discrete portion of the

business. *See, e.g., Childrey v. Spectrum Health Worth Home Care, Inc.*, 105-CV-446, 2007 WL 1701836 (W.D. Mich. June 11, 2007) ("Significantly, the financial information sought by plaintiffs focuses not on Briggs as an individual, but rather an overall financial status of the defendant.") (*citing Pioneer Resources Corporation v. Nami Resources Company*, 2006 WL 1635651 (E.D. Ky. 2006) (unreported) (denying attempts obtain financial information about the value of the defendant company or the profits derived from operating over 800 wells not owned by the plaintiff as simply not being at issue).

In the instant action, neither Defendant has made any claim for damages relying on a generalized financial harm to the Defendant. Only two of Defendants' many product lines have any relevance to any parties' claim or defense: the GSG-5 firearms and the GSG-522 firearms. Seeking high-level financial information about the overall financial condition of either Defendant is inappropriate. Indeed, Plaintiffs have served three subpoenas on banks seeking extensive financial information related to ATI, as well as a subpoena on ATI's business consultant, JC Jones & Associates. Those banks have produced thousands of pages of documents and JC Jones has produced high-level analyses of ATI that have yielded not a scintilla of evidence related to any party's claim or defense in this action. Indeed, Plaintiffs provide no examples of how the discovery thus far has been likely to lead to the discovery of admissible evidence or how the discovery that is the subject of this motion will do so. The Court should foreclose further discovery into the financial condition of Defendants.

**D.     Requests for Production Attempting to Exceed the Scope of Rule 26 Must Be Denied**

Plaintiffs proffer numerous requests for production in the form of "contention" requests. (See, e.g., Request No. 41 to GSG and No. 43) ("regarding documents in support of damage claims"). In Plaintiffs' August 5, 2013 submission to the Court, Plaintiffs characterized such discovery as merely seeking that required by Rule 26: "This is no different than what would be

required under Rule 26…" Yet Rule 26(a)(1)(A)(ii) requires production of "of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and **may use to support its claims or defenses**, unless the use would be solely for impeachment." (emphasis added). The Comments to the 2000 Amendments to Rule 26 clearly state, "A party is no longer obligated to disclose witnesses or documents, whether favorable or unfavorable, **that it does not intend to use**." Plaintiffs' "contention" requests for production are not so limited.

And though the parties' roles are reversed, *Council on Am.-Islamic Relations Action Network, Inc. v. Schlussel* provides an apt description of the present discovery dispute:

> Throughout their briefs, Defendants rest on the implied assertion that *"standard* 'contention requests'" are per se acceptable under the Federal Rules of Civil Procedure. Yet Defendants provide no authority for such a presumption. Indeed, while this may be common practice, many courts that have been presented with the issue of the appropriateness of such requests have rejected similar arguments.

2012 WL 4513605, *2 (E.D. Mich. Oct. 2, 2012) (emphasis in original); *see also, Bonilla v. Trebol Motors Corp.*, 1997 WL 178844 (D.P.R. Mar. 27, 1997) *judgment rev'd on other grounds, vacated in part sub nom. Bonilla v. Volvo Car Corp.*, 150 F.3d 88 (1st Cir. 1998) ("Defendants have decided to invent a new form of discovery—contention requests to produce documents. They have asked plaintiffs to produce all evidence on each allegation of the complaint and RICO case statement. Such a form does not exist under the Federal Rules."). Indeed, the Federal Rules of Civil Procedure acknowledge "contention" interrogatories. Fed.R.Civ.P. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention…"). However, neither Rule 34 nor the Advisory Committee Notes to Rule 34 make any reference to so-called "contention" requests for production.

Still further, requests for production under Rule 34(b)(1)(A) must define with "reasonable particularity" the documents sought. "Contention requests for production" are problematic

because the requesting party is not specifying "what documents or things [they] expect to receive." *Council on Am.-Islamic Relations Action Network*, 2012 WL 4513605, *3 n.2 ("[R]equests for production must describe with "reasonable particularity each item or category of items to be inspected." Fed.R.Civ.P. 34. Simply quoting paragraphs of Plaintiffs' Complaint and Answer to Defendants' Affirmative Defenses fails to meet this requirement.") *Id.* Furthermore, "contention requests" must be analyzed individually for burden and relevance. *Id.* (*citing Caban v. Sedgwich Co. Sheriff's Dept.,* No. 98–1196, 2000 WL 1480481, at *7 (D.Kan. May 18, 2000).

Here, Defendants have produced and will produce all documents that Defendants intend to use to support their claims or defenses pursuant to Rule 26. As for the instant motion, Plaintiffs confuse the Court's approval of contention **interrogatories** with so-called "contention **requests for production**." In the August 7, 2013 conference, the Court did advise that contention **interrogatories** should generally be answered and advised as to how such an answer might be given. Plaintiffs did not ask, nor did the Court give guidance, as to how so-called "contention requests for production" should be addressed.

## V.    INTERROGATORIES

### A.    Interrogatory No. 7 to GSG, regarding sale of conversion kits

The parties have met and conferred over numerous discovery-related matters during the past six months. "Conversion kit" documents is not one of them, as demonstrated by the fact that this request was not included in Plaintiffs' August 5, 2013 list of issues to address with the Court. Accordingly, the issue is not ripe for consideration by the Court pursuant to Rule 37 and S.D. Ind. LR 37-1(a). Plaintiffs' sole objection to GSG's response rests on GSG's election to produce business records pursuant to Rule 34. Had Plaintiffs inquired about the particular request, the issue likely would have been resolved without Court involvement. As Plaintiffs are aware, document production is ongoing. Had Plaintiffs inquired about the specific Bates numbers

relating to this request, GSG would have informed Plaintiffs that GSG anticipates producing those documents as part of the ongoing document review process. In fact, Plaintiffs should have been alerted to this fact when editing Defendants' response to use the past tense "elect[ed]" instead of the future tense: "Defendant elects to produce…" Defendant GSG intends to provide Bates numbers of the responsive documents upon production of the same. In short, Plaintiffs' request is premature and should be denied.

**B.    Interrogatory No. 10 to GSG, regarding replica firearms manufactured by GSG**

***INTERROGATORY NO. 10:*** *Please list all replica firearms that are manufactured by GSG. For each replica firearm, please state whether there is a license related to the firearm and identify the licensor."*

***ANSWER:*** *Defendant objects on the basis that the interrogatory is overly broad, unduly burdensome and not relevant to any claim or defenses in this matter insofar as it seeks information regarding "all replica firearms that are manufactured by GSG" and thus seeks information concerning firearms not at issue in this litigation. Defendant further objects as the term "replica" and the term "license" are undefined, rendering the interrogatory vague and ambiguous.*

***SUPPLEMENTAL ANSWER:*** *Subject to and without waiving the foregoing objections, Defendant responds that the GSG-522 firearm is not a "replica firearm," as the phrase is presently understood.*

Plaintiffs claim, "It is important to know whether GSG manufactures replica firearms because it goes to the issue of intentional misconduct and Plaintiffs' claim for treble damages." (Brief, at 15). Plaintiffs fail to show even marginal relevance, as the interrogatory is not likely to lead to the discovery of evidence having any bearing on alleged "intentional misconduct."

According to the Supreme Court, copying is generally permissible absent a recognized intellectual property right. *See, e.g., TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29, 121 S. Ct. 1255, 1260, 149 L. Ed. 2d 164 (2001) ("In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying."). And even presuming that a license was required to produce a replica of one *particular* firearm, it does not follow that a license is required to produce a replica of *every* firearm, or for some other particular

firearm. In fact, the inherent functionality of firearms makes the existence of a product configuration trade dress in the general configuration of a firearm extremely unlikely. *Colt Def. LLC v. Bushmaster Firearms, Inc.*, 2005 WL 2293909, *31 (D. Me. Sept. 20, 2005) *subsequently aff'd*, 486 F.3d 701 (1st Cir. 2007) (Bushmaster "fails to point to any feature of, or marking on, its M4 carbine that is ornamental or intended to identify its source") (citing *TrafFix Devices*, 532 U.S. at 34 ("MDI in essence seeks protection for the dual-spring design alone. The asserted trade dress consists simply of the dual-spring design, four legs, a base, an upright, and a sign. MDI has pointed to nothing arbitrary about the components of its device or the way they are assembled. The Lanham Act does not exist to reward manufacturers for their innovation in creating a particular device; that is the purpose of the patent law and its period of exclusivity.").

Plaintiffs also take issue with GSG's statement that "the GSG-522 is not a 'replica firearm.'" Yet GSG's response goes directly to the claimed issue of alleged "intentional misconduct": GSG manufactures GSG-522s not as a replica of any firearm but pursuant to the covenant-not-to-sue set forth in the Settlement Agreement. (Doc. No. 45-1). Whether some other firearm is or is not a replica has no bearing on the issues in this case in light of the fact that the GSG-522 is protected by a covenant not to sue.

**C.    Interrogatory No. 11 to ATI, regarding federal investigations of ATI;**

***INTERROGATORY NO. 11:*** *Please describe in detail any federal investigations of ATI involving any of its products over the last five (5) years, including but not limited to investigations conducted by ICE (U.S. Immigration and Customs Enforcement) and/or ATF (Bureau of Alcohol, Firearms, Tobacco and Explosives).*

***ANSWER:*** *Defendant objects to the interrogatory, as it is not limited to the products at issue in this litigation nor does "any federal investigation" have relevance to any party's claims or defenses. Accordingly, the interrogatory is overly broad, unduly burdensome, seeks information not relevant to any party's claims or defenses, and as written would include investigations, if any, related to issues wholly unrelated to this litigation.*

***SUPPLEMENTAL ANSWER:*** *Subject to and without waiving the foregoing objections, and pursuant to the parties' agreement that Defendant's response is limited to the years 2007 through 2010, Defendant responds that there have been no investigations of ATI involving the*

*GSG-5 or GSG-522 firearms, excepting non-investigatory activities such as analysis and classification of products for importation and compliance with the National Firearms Act by the Bureau of Alcohol, Tobacco, Firearms, and Explosives.*

In spite of having received Defendants' supplementation, Plaintiffs offer no explanation as to why Interrogatory No. 11 remains at issue. Plaintiffs may not agree with ATI's answer, but Plaintiffs cannot expect the Court to compel a different answer. *See, e.g., Stewart v. Capital Newspapers, Inc.,* 2010 WL 1508289, *3 (W.D. Wis. 2010) ("The purpose of a motion to compel discovery is not to challenge the truthfulness of the response but rather to compel a party to answer the interrogatory. Defendant has done that, so there is nothing for the court to compel"); *Peralta v. Martel*, 2011 WL 5547153, *2 (E.D. Cal. 2011) ("Defendants answered 'Yes,' but plaintiff disagrees. Similarly, the court cannot compel a different answer and this request is denied.") (internal citation omitted). Accordingly, the Court must deny the motion to compel.

**D.     Interrogatory No. 17 to ATI and No. 18 to GSG, regarding drawings provided to the mediator[1]**

**<u>INTERROGATORY NO. 17:</u>** *Identify all documents provided by you to Larry Hefter.*

**ANSWER:** *Defendant objects to this interrogatory as overly broad and unduly burdensome, as it seeks "all documents" provided to Mr. Hefter without limitation as to time or subject matter. Defendant also objects to this interrogatory on the basis that it seeks information not relevant to any party's claim or defense, and even if relevant, is not reasonably calculated to lead to the discovery of admissible evidence. Further, Defendant objects to the interrogatory in that it seeks disclosure of communications made in confidence for the purpose of settling the prior litigation, as Mr. Hefter was the mediator retained to mediate the settlement of the 2009 Litigation.*

Plaintiffs concede the overbroad and unduly burdensome nature of the interrogatory as served, as Plaintiffs now desire the identification only of "drawings provided to Mr. Hefter depicting the GSG-5 and GSG-522 firearms." (Brief, at 8). Plaintiffs claim, "These documents are relevant to assist in interpretation of the settlement agreement's Exhibit A." However, Plaintiffs offer no plausible explanation of how any such drawings properly would be used to

---

[1] Though the numbering differs, Plaintiffs served numerous identical discovery requests on GSG and ATI. Where the request to each Defendant and the responses thereto are identical, Defendants combine their response herein.

"interpret" the Settlement Agreement. In addition to the compelling reasons set forth in Section IV.B above, Plaintiffs have identified no ambiguous term requiring "interpretation" in the fully integrated Settlement Agreement.[2] Yet any such drawings are immaterial to the interpretation of the Settlement Agreement. If a drawing was shown to the mediator, Mr. Hefter, in confidence and ultimately rejected in favor of some other drawing that was never disclosed to Plaintiffs, Plaintiffs cannot credibly argue that the drawing has any bearing on the proper interpretation of the Settlement Agreement. Still further, Plaintiffs have made clear that their single demand in this litigation is to force additional changes to the GSG-522 firearms. Plaintiffs are attempting to determine whether Defendants considered any alternative designs in 2009. The Court should not permit Plaintiffs to invade Defendants' confidential discussions with the mediator.

**E.    Interrogatory No. 24 to ATI and No. 25 to GSG, regarding documents from the USPTO concerning marks owned by HKI**

*INTERROGATORY NO. 24: Prior to October 8, 2008, did you order or request any documents from the USPTO relating to the marks claimed by Heckler & Koch, Inc. at that time? If so, identify those documents, state whether you received them and on what date.*

*ANSWER: Defendant objects to the interrogatory insofar as the "marks claimed by Heckler & Koch, Inc. at that time" is undefined, not limited to any rights or alleged rights at issue in the instant litigation and is not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects on grounds that the interrogatory presumably seeks information involving the research, communications, conclusions, and opinions and theories of legal counsel and is therefore protected by the attorney-client privilege and work-product doctrine.*

*SUPPLEMENTAL ANSWER: Subject to and without waiving the foregoing objections, and limiting the following response to U.S. Registration No. 1,594,109 for the MP5 mark pursuant to the Court's direction, Defendant responds as follows: no. Accordingly, no response is required to the remainder of the interrogatory.*

In spite of the fact that Defendants supplemented their answer to this interrogatory to provide the substantive answer "no," Plaintiffs inexplicably press the matter. The second subpart

---

[2] Paragraph 16 of the Settlement Agreement reads, "*Entire Agreement.* Each party to acknowledges that no person or any other entity has made any promise, representation or warranty whatsoever, expressed or implied or statutory, not contained herein, concerning the subject matter hereof, to induce the execution of this instrument, and each of the Parties hereby acknowledge that it has not executed this Agreement in reliance on any promise, representation, or warranty not contained herein." (Doc. No. 45-1, Settlement Agreement, at 4).

of the interrogatory sought a response only if the answer to the first subpart was in the affirmative: "If so, identify those documents…" Plaintiffs may not agree with Defendants' answers, but Plaintiffs cannot expect the Court to compel a different answer. *See, e.g., Stewart v. Capital Newspapers, Inc.,* 2010 WL 1508289, *3 (W.D. Wis. 2010) ("The purpose of a motion to compel discovery is not to challenge the truthfulness of the response but rather to compel a party to answer the interrogatory. Defendant has done that, so there is nothing for the court to compel."); *Peralta v. Martel*, 2011 WL 5547153, *2 (E.D. Cal. 2011) ("Defendants answered 'Yes,' but plaintiff disagrees. Similarly, the court cannot compel a different answer and this request is denied.") (internal citation omitted). Thus, the Court must deny the motion to compel.

## VI.    REQUESTS FOR PRODUCTION

### A.    Request Nos. 29 and 30 to GSG and Nos. 31 and 32 to ATI, regarding expenditures for manufacture and sale of firearms

**REQUEST NO. 29** *All documents and things relating to your expenditures for manufacture, advertising, display, publication, offer for sale, distribution and sale of GSG-522 firearms.*

**RESPONSE:** *Defendant objects to this request as overly broad. Defendant also objects as the request does not describe with reasonable particularity the documents sought and is therefore vague and ambiguous.*

**SUPPLEMENTAL RESPONSE:** *Subject to and without waiving the foregoing objections, Defendant further objects as set forth in its response to Heckler & Koch, Inc.'s First Request No. 4, and hereby incorporates its response to that request. With that understanding, Defendant will produce marketing expenditures for the GSG-522 firearms.*

**REQUEST NO. 30** *All documents and things relating to your expenditures for manufacture, advertising, display, publication, offer for sale, distribution and sale of GSG-5 firearms.*

**RESPONSE:** *Defendant objects to the request as claims regarding the GSG-5 have been released and therefore the requested documents, if any, have no relevance to any party's claims or defenses and is not reasonably calculated to lead to the discovery of admissible evidence.*

**SUPPLEMENTAL RESPONSE:** *Subject to and without waiving the foregoing objections, Defendant further objects as set forth in its response to Heckler & Koch, Inc.'s First Request No. 4, and hereby incorporates its response to that request. With that understanding, Defendant will produce marketing expenditures for the GSG-522 firearms.*

Defendants have agreed to produce documents as set forth in the supplemental responses, a fact of which Plaintiffs have been aware since Defendant's August 20, 2013 Letter (Exhibit B):

"GSG is reviewing marketing and advertising documents for GSG-5 and GSG-522 firearms in response to Request Nos. 19, 20, 21, 22, **29, and 30**" and "ATI is reviewing marketing and advertising documents for GSG-5 and GSG-522 firearms in response to Request Nos. 21, 22, 23, 24, **31, and 32**." For Plaintiffs to file a motion to compel on documents that Defendants already had agreed to produce is an egregious waste of this Court's time. Plaintiffs' motion is premature.

## B.     Request No. 33 to GSG and No. 35 to ATI, regarding documents relating to settlement of the first litigation

***REQUEST NO. 33*** *Any and all documents relating in any way to the settlement of the First Litigation, including but not limited to communications between counsel, communications with the mediator, drafts of any settlement agreement and other settlement-related documents, etc.*

**RESPONSE:** *Defendant objects as vague and ambiguous, particularly with respect to the phrase "between counsel." Defendant also objects as the request would encompass documents protected by the attorney-client privilege and work product immunity doctrine. Defendant further objects to this request on the basis that it seeks information not relevant to any party's claim or defense and even if relevant, is not reasonably calculated to lead to the discovery of admissible evidence. Further, Defendant objects to the request in that it seeks disclosure of communications made in confidence for the purpose of settling the prior litigation.*

As set forth above in Sections IV.B and V.D, Defendants object to this blatant attempt by Plaintiffs to invade the attorney-client privilege and work-product-immunity doctrine absent any showing that any privilege or immunity should be waived by this Court. Once again, Plaintiffs have provided no basis for the admissibility of parol evidence or any reason why such broad discovery into Defendants' settlement strategy is warranted. The request must be denied.

## C.     Request No. 34 to GSG and No. 36 to ATI, regarding design patent applications;

***REQUEST NO. 34:*** *Any and all documents relating to any design patent application filed anywhere in the world for any weapon manufactured by you.*

**RESPONSE:** *Defendant objects to the request as it not relevant to any party's claim or defense and is not reasonably calculated to lead to the discovery of admissible evidence. Defendant objects to the request as overly broad and unduly burdensome in that the request seeks documents related to "any weapon" regardless of whether that weapon is related to this action. Defendant also objects as the request would encompass documents protected by the attorney-client privilege.*

Plaintiffs' requests for production are based on a fundamentally flawed understanding of

design patent law. Plaintiffs mistakenly believe that a nonfunctionality claim by Defendants in Defendant GSG's design patent application will prove that Plaintiffs' alleged MP5 trade dress is nonfunctional. Nothing could be further from the truth.

Plaintiffs, or one of them, claim to own a trade dress right pertaining to the external appearance of an MP5 firearm, which claim requires proof of consumer distinctiveness and non-functionality. GSG's design patent to its GSG-522 design claims proprietary rights to the external design of the GSG-522, with all of the novel design enhancements present in that firearm and which are not present in Plaintiffs' MP5 products. Moreover, Defendants certainly can use the existence of utility patents to establish the functionality of the alleged MP5 trade dress. *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001) ("A utility patent is strong evidence that the features therein claimed are functional."). But whether **Defendants** hold any **design patents** related to products manufactured by Defendants has no bearing on whether **Plaintiffs'** alleged MP5 trade dress is functional. Plaintiffs get the issue exactly backward.

Still further, to the extent that Defendants have filed patents that have not been published, such documents are confidential. 35 U.S.C. § 122. To the extent that any patents have been published, the documents are publicly available. Not only do Plaintiffs admit to being "aware" of a GSG-522 design patent, Plaintiffs have used the publicly available documents as deposition exhibits. In short, Plaintiffs are troubling this Court to require production of documents that Plaintiffs already possess, that are publicly available if published, and if not published are entitled to confidentiality under law. And in no event does the existence of a design patent with respect to the GSG-522 bear on any claim or defense in this litigation.

**D.    Request No. 41 to GSG and No. 43 to ATI, regarding documents in support of damage claims**

***REQUEST NO. 41:*** *Any and all documents related to any claim for damages you have in this matter.*

28

*RESPONSE: Defendant objects to the request as overly broad. Defendant also objects insofar as the request seeks "all documents" and does not describe with reasonable particularity the documents requested, and is therefore vague, ambiguous and unduly burdensome. Defendant objects to this request in that it fails to describe with reasonable particularity the documents requested. Discovery is ongoing and the request for production constitutes premature contention discovery that does not have to be answered until further discovery has been taken. Defendant further objects on grounds that the request seeks information involving the mental impressions, conclusions, opinions and legal theories of counsel and is therefore protected by the attorney-client privilege and work-product doctrine.*

As set forth in Section IV.D, this request is an improper "contention request for production" not recognized under the Federal Rules and for which it "does not describe with reasonable particularity the documents requested." In fact, such an overbroad request highlights the deficient nature of attempted "contention" requests, in that it seeks "[a]ny and all documents related to **any** claim for damages…" (emphasis added). As Plaintiffs' stated purpose for the interrogatory is merely to obtain that which Defendants are obligated to disclose under Rule 26, Defendants are aware of their obligations under Rule 26. The request should be denied.

### E.    Request No. 42 to GSG and Request No. 44 to ATI, regarding communications with third parties concerning the litigation

**REQUEST NO. 42:** *Any and all communications to third parties relating to the present action or the Prior Litigation.*

**RESPONSE:** *Defendant also objects as the request is overly broad, unduly burdensome and contains no limitation as to time. Defendant also objects as the request would encompass documents protected by the attorney-client privilege and work product doctrine.*

Plaintiffs' motion to compel with respect to these requests is not ripe. During the parties' conference, the parties resolved Defendants' objection as to time by limiting production of documents to July 1, 2009 forward. However, Defendants asked Plaintiffs to propose a narrowing of these requests, as they seek any statement, no matter how inconsequential. Plaintiffs have not proposed any narrowing of these requests. Accordingly, Defendants ask that the Court deny Plaintiffs' motion to compel on grounds that the parties have not completed their meet-and-confer obligations with respect to these requests.

Plaintiffs claim that these documents are "relevant to myriad issues," though they provide only a single example: "alleged harm to Defendants' businesses." To the extent that any such communications are relevant on that basis, these requests are duplicative of Request Nos. 55 and 56 to ATI, seeking communications with customers that have ceased doing business with ATI. And while Plaintiffs' unfairly make short shrift of Defendants' privilege objection, each and every communication with counsel is a "communication" with a third-party. Defendants should not be required to log each and every communication with counsel simply because it is a communication with counsel. Indeed, such a request is not likely to lead to the discovery of admissible evidence for the simple fact that the documents would be both privileged and subject to work-product immunity. Still further, transmission to a third-party does not necessarily waive privilege if the common interest or joint defense doctrine applies to the communication.

**F.    Request Nos. 45 to ATI, regarding customer warranty documents**

**_REQUEST NO. 45:_** *Any and all warranty documents related to the GSG-5 or GSG-522 firearms. This includes but is not limited to the so-called "warranty cards" maintained by ATI and/or AmChar.*

**_RESPONSE:_** *Defendant objects to the request as claims regarding the GSG-5 have been released and therefore the requested documents, if any, have no relevance to any party's claims or defenses and is not reasonably calculated to lead to the discovery of admissible evidence. Defendant also objects to this request on the basis that it seeks information in the custody of AmChar, a non-party to this litigation. Defendant further objects as the request is vague and ambiguous insofar as the term "warranty documents" is not described. Additionally, Defendant objects on the basis that the request is not relevant to any party's claims or defenses in this litigation and is therefore not reasonably calculated to lead to the discovery of admissible evidence.*

Plaintiffs claim that "identify[ing] the demographics of consumers who purchase the product at issue" is necessary in a trademark infringement case and then claim that ATI's warranty documents are needed for that purpose. Yet Defendants informed Plaintiffs in December 2012 that fewer than 10,000 warranty registrations have been made in contrast to the hundreds of thousands of firearms sold. Moreover, the information contained in ATI's records is

not validated and does not constitute survey evidence conducted as part of a market research survey by an expert, such that any demographic information provided by a purchaser is inadmissible hearsay. Still further, Plaintiffs' claim that the "warranty information positively identifies the product purchasers" is not true: the information constitutes hearsay identifying the person **filling out the warranty information**, which may or may not be the same as the purchaser. Still further, Plaintiffs' licensees are competitors with Defendants. Accordingly, the individual identifying information provided by firearms purchasers should not be provided to Plaintiffs, even under an "attorney's eyes only" designation, as it is highly confidential, consisting of a subsection of Defendant ATI's customers' identities. If Plaintiffs are in need of demographic information to support their claim that the alleged MP5 trade dress is famous and distinctive, Plaintiffs should expend the funds to conduct a proper survey rather than attempt to freeload on ATI's warranty data.

## G.    Request No. 46 to ATI, regarding customer demographic information

**_REQUEST NO. 46:_** *Any and all documents related to demographic information for purchasers of the GSG-5 or GSG-522 firearms anywhere in the world.*

**RESPONSE:** *Defendant objects on the basis that the request is not relevant to any party's claims or defenses in this litigation and is therefore not reasonably calculated to lead to the discovery of admissible evidence. Defendant also objects as the request seeks documents outside the United States, which documents are not relevant to any party's claims or defenses and is not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects as claims regarding the GSG-5 have been released and therefore the requested documents, if any, have no relevance to any party's claims or defenses and is not reasonably calculated to lead to the discovery of admissible evidence.*

Plaintiffs' motion to compel is directed solely to the warranty data. Plaintiffs make no attempt to address ATI's specific objections to this request, including the fact that the request seeks demographic information "anywhere in the world." Plaintiffs' only claims in this litigation relate to alleged infringement in the United States. Any documents related to sales outside the United States are irrelevant. Accordingly, the Court should deny the motion as moot. As with the

warranty data, Plaintiffs continue to get the matter backwards. What is at issue are the demographics of **Plaintiffs'** customers in determining whether the MP5 trademark and alleged MP5 trade dress are famous and distinctive in the United States. Attempting to freeload on any data that Defendants allegedly possess related to the GSG-5 or GSG-522 firearms is irrelevant.

## H.    Request No. 46 to GSG and Request No. 48 to ATI, regarding annual budgets

**_REQUEST NO. 46:_** *Any and all annual budgets since January 1, 2004.*

**RESPONSE:** *Defendant objects on the basis that the request is overly broad and unduly burdensome and has no relevance to any party's claims or defenses in this litigation and is therefore not reasonably calculated to lead to the discovery of admissible evidence. Defendant also objects on the basis that the request is overly broad as to the time period of information requested.*

As set forth above in Section IV.C, Defendants are not seeking any damages related to generalized harm to their respective businesses. Plaintiffs' attempt to probe the financial records of both Defendants is a baseless fishing expedition. Plaintiffs claim that budgets are "(1) are probative of Defendants' damages claims, giving insight to actual consumer demand; (2) demonstrate Defendants' costs and gross revenue from year to year; and (3) will assist in demonstrating whether Defendants' budget forecasts were in line with actual numbers." (Brief, at 24). Yet the documents are probative of none of those things. Defendants' overall budgets give no insight into the "actual consumer demand" related to the GSG-5 or GSG-522 firearms. And while a budget certainly shows Defendants' "costs and gross revenue," Plaintiffs proffer no reason why **gross** revenue is relevant to any claim or defense in this case relating to the GSG-5 and GSG-522 firearms. As for "budget forecasts," such documents are not even encompassed in a request seeking only "annual budgets." Plaintiffs effectively ask the Court to re-write the request for production and then compel Defendants to produce documents.

## I.    Request No. 53 to ATI, regarding ATF or ICE investigations

**_REQUEST NO. 53:_** *Any documents related to any investigation by the ATF or ICE of ATI from January 1, 2007 through December 31, 2011.*

**RESPONSE:** *Defendant objects on the basis that the request is overly broad, unduly burdensome, and seeks information not relevant to any party's claims or defenses, and as written would include investigations, if any, related to issues wholly unrelated to this litigation.*

As set forth in response to Interrogatory No. 11 above, ATI has responded that there were no investigations responsive to that request. Here, Plaintiffs press for documents in support of that interrogatory. Plaintiffs' only proffered justification is that "[t]his request seeks documents demonstrating alternate causes for harm to ATI's business." Again, ATI is not asserting any claim for damages related to a generalized harm to its business. Accordingly, the request is not relevant to any party's claim or defense. In light of that fact, fishing through ATI's confidential business records for documents related to "any investigation" is not proper. And as set forth in response to Interrogatory No. 11, there have been no investigations relating to the GSG-5 or GSG-522, such that a product-specific narrowing is unnecessary.

More importantly, allowing Plaintiffs, as competitors of Defendants, to engage in a fishing expedition has great potential for collateral damage to Defendants. One need look no further than the false arrest of GSG's CEO Michael Swoboda arranged by Plaintiffs' agent Continental to understand why Plaintiffs must not be given highly sensitive documents such as those related to alleged investigations, even under an "attorney's eyes only" designation. The motion to compel should be denied.

**J.     Request Nos. 55 and 56 to ATI, regarding communications with ATI's customers who decided to stop doing business with ATI**

<u>**REQUEST NO. 55:**</u> *Any documents related to any communication from or with any present or former customer of you regarding any decision by the customer to cease doing business with either GSG, ATI or AmChar during the period of January 1, 2007 through December 31, 2011. Your search for documents should include, but not be limited to, documents related to the following companies: NBS; Worldwide; Sports, Inc.; Davidson's; AcuSport; Camfour; Bill Hicks; AmChar; and Tom Bierzhoff and any of his related companies/groups.*

**RESPONSE:** *Defendant objects on the basis that the request is overly broad, unduly burdensome, and seeks information not relevant to any party's claims or defenses, and as written would include matters, if any, related to issues wholly unrelated to this litigation. Defendant also objects as the request as written seeks documents, if any exist, in the possession of co-defendant*

*GSG and non-party AmChar.*

**REQUEST NO. 56:** *Any documents related to any communication from or with any potential customer of you regarding any decision by the potential customer to not do business with GSG, ATI or AmChar during the period of January 1, 2007 through December 31, 2011.*

**RESPONSE:** *Defendant objects to this request as vague and ambiguous, as the phrase "potential customer" is undefined, and overly broad and unduly burdensome as to time. Defendant also objects as the request as written seeks documents, if any exist, in the possession of co-defendant ATI [sic, GSG] and non-party AmChar.*

Plaintiffs' motion to compel with respect to these requests is not ripe. During the parties' conference, the parties resolved Defendants' objection as to time by limiting production of documents to July 1, 2009 forward. However, Defendants asked Plaintiffs to propose a narrowing of these requests, as they seek any statement, no matter how inconsequential. Plaintiffs have not proposed any narrowing of these requests. Still further, ATI objects to the attempt to obtain documents related to non-party AmChar Wholesale, Inc. ("AmChar"). While ATI's owner, Tony DiChario, also owns AmChar, AmChar is a distinct legal entity from which discovery is not properly sought via a Rule 34 request for production. *See,* Section IV.A. Accordingly, Defendants ask that the Court deny Plaintiffs' motion to compel on grounds that the parties have not completed their meet-and-confer obligations with respect to these requests.

**K.     Request No. 57 to ATI, regarding communications between ATI and its customers relevant to the litigation**

Plaintiffs represent both that this request has been resolved (Doc. No. 216, ¶4.d) and yet remains in dispute. (Doc. No. 216, ¶7.e.x). Defendants hereby rely on Plaintiffs' statement that the request has been resolved, as Defendants have agreed to supplement the request as to subparts (d) through (i) and Plaintiffs have represented that subparts (a) through (c) would be held in abeyance. If this is not so, Plaintiffs again move to compel production of documents in response to a request for which the parties have reached agreement. Plaintiffs' motion is moot.

**L.    Request Nos. 56, 57, 58 and 59 to GSG and Nos. 58, 59, 60 and 61 to ATI, regarding ATI's loss of credit facilities**

As set forth above in Section IV.C, Plaintiffs seek to probe ATI's confidential financial documents in defense of a claim for damages not being raised by ATI. ATI is not seeking damages for loss of its credit facilities. Inexplicably, or maybe as a result of thrusting every request for production on each Defendant, Plaintiffs move to compel *GSG* to produce documents related to *ATI's* credit facilities. ATI is a distinct company in the U.S. from the German company GSG, and neither has common owners with the other or controls the other's documents. Plaintiffs do not even begin to explain why GSG should possess ATI's credit documents.

**M.    Request No. 76 to ATI, regarding communications between ATI and former employees regarding the litigation**

**REQUEST NO. 76:** *Any and all correspondence between you and any former employees of ATI regarding in any way the present action or the Prior Litigation, including but not limited to correspondence with Brent Chapman.*

**RESPONSE:** *Defendant objects as the request is overly broad, unduly burdensome and not limited in time. Defendant also objects on the basis that seeks [sic] to impose an obligation contrary to the request has no relevance to any party's claims or defenses in this litigation and is therefore not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects on grounds that the request would encompass documents seeking information involving the mental impressions, conclusions, opinions and legal theories of counsel and is therefore protected by the attorney-client privilege and work-product immunity doctrine.*

Plaintiffs further argue: "Documents responsive to this request could be relevant to myriad issues, including alleged harm to Defendants' business." (Brief, at 30). Plaintiffs claim that the request relates to "myriad issues" but then cite only one "alleged harm to Defendants' business." Plaintiffs do not explain how a communication with a former employee bears on that issue. Defendants can think of none. And as set forth above, Defendants are not making any claim for generalized harm to Defendants' business. Accordingly, Plaintiffs motion must be denied for failure to articulate any relevance basis.

N.    **Request No. 76 to GSG and Request No. 82 to ATI, regarding invoices for legal
services incurred in the prior litigation**

**REQUEST NO. 76:** *Copies of all invoices for legal services rendered in connection with the
First Litigation.*

**RESPONSE:** *Defendant objects to this request as overly broad and unduly burdensome, as it
does not describe with reasonable particularity the documents requested. Defendant objects as
the request seeks to impose an obligation contrary to the Case Management Plan governing this
litigation. Defendant further objects on grounds that the request seeks information involving the
mental impressions, conclusions, opinions and legal theories of counsel and is therefore
protected by the attorney-client privilege and work-product doctrine.*

Plaintiffs concede, "Defendants have produced records sufficient to demonstrate that the
fees were paid, but have refused to produce the detailed invoices." Plaintiffs nevertheless persist
in seeking unredacted invoices. Prior to filing the motion to compel and contrary to Plaintiffs'
brief, Plaintiffs never offered to accept redacted invoices. Still further, Plaintiffs cite *Nat'l Union
Fire Ins. Co. of Pittsburg, Pa. v. Mead Johnson & Co.* for the proposition that the invoices are
not attorney-client privileged materials. 3:11-CV-15-RLY-WGH, 2012 WL 28304 (S.D. Ind.
Jan. 5, 2012). However, the circumstances of *Nat'l Union* were very different. In that case, an
insurer sought a declaratory judgment with respect to its duties under particular insurance
policies to the defendant. Here, Plaintiffs seek copies of invoices reflecting legal services
provided in the prior litigation between Plaintiff HKI and Defendants. The instant action and the
prior litigation encompass the same claims being advanced by Plaintiffs. Providing minimally
redacted invoices at this juncture likely would severely prejudice Defendants in their preparation
of this case. Plaintiffs concede that the records produced are sufficient for Plaintiffs' needs at this
juncture. More detailed records can be produced at a later date. *See, e.g., Brooks v. Motsenbocker
Advanced Developments, Inc.*, 2008 WL 2446205, *5 (S.D. Cal. June 13, 2008) (denying a
motion to compel extensive financial information because "they do not need the information at
this time to prepare the heart of their case"). For now, this appears to constitute a different
method of compelling Defendants to forego privilege. Requiring Defendants to expend

36

additional time redacting invoices at this stage of litigation also would be unduly burdensome.

**O.    Request Nos. 80 and 81 to GSG and Nos. 86 and 87 to ATI, regarding third-party use of foregrip and stock**

**REQUEST NO. 80:** *Any documents evidencing third-party use of the same foregrip used in connection with the GSG-5 and GSG-522.*

**RESPONSE:** *Defendant objects to this request as overly broad and unduly burdensome, as it does not describe with reasonable particularity the documents requested. Defendant objects as this contention discovery is premature and does not have to be answered, if at all, until further discovery has been taken. Defendant also objects on grounds that the request seeks information involving the mental impressions, conclusions, opinions and legal theories of counsel and is therefore protected by the work-product doctrine.*

**REQUEST NO. 81:** *Any documents evidencing third-party use of the same stock used in connection with the GSG-5 and GSG-522.*

**RESPONSE**: *Defendant objects to this request as overly broad and unduly burdensome, as it does not describe with reasonable particularity the documents requested. Defendant objects as this contention discovery is premature and does not have to be answered, if at all, until further discovery has been taken. Defendant also objects on grounds that the request seeks information involving the mental impressions, conclusions, opinions and legal theories of counsel and is therefore protected by the work-product doctrine.*

Plaintiffs correctly note, "During conferences with Defendants' counsel, they clarified that a variety of foregrips and stocks have been used on the firearms and seek direction on the particular foregrips and stocks to which these requests apply." Yet Plaintiffs offer no assistance in answering the question. "Same stock" and "same foregrip" are meaningless phrases. Still further, Plaintiffs neglect to inform the Court that Defendants also clarified that the particular foregrips or stocks used on the GSG-5 and GSG-522 firearms are beside the point. The issue is third-party use of **Plaintiffs' alleged MP5 trade dress** or alleged infringements thereof. Accordingly, Plaintiffs requests seek irrelevant documents. Moreover, Defendants suspect that if Plaintiffs believe some stock or foregrip used with the GSG-5 or GSG-522 is infringing, Plaintiffs are attempting to use Defendants to identify other potential targets for "enforcement" by Continental. The Federal Rules of Civil Procedure require Defendants to make such identification. Plaintiffs' motion must be denied.

P.    **Request No. 82 to GSG and Request No. 88 to ATI, regarding documents supporting GSG's claim that the MP5 trade dress is unenforceable**

**REQUEST NO. 82:** *Any documents supporting your claim that the claimed MP5 trade dress is invalid or otherwise unenforceable against you.*

**RESPONSE:** *Defendant objects to this request as overly broad and unduly burdensome, as it does not describe with reasonable particularity the documents requested. Defendant objects as this contention discovery is premature and does not have to be answered, if at all, until further discovery has been taken. Defendant also objects on grounds that the request seeks information involving the mental impressions, conclusions, opinions and legal theories of counsel and is therefore protected by the work-product doctrine.*

As set forth in Section IV.D, this request is an improper "contention request for production" not recognized under the Federal Rules and for which it "does not describe with reasonable particularity the documents requested." In fact, such an overbroad request highlights the deficient nature of attempted "contention" requests, in that the documents could relate to any number of defenses or declaratory judgment claims. As Plaintiffs' stated purpose for the interrogatory is merely to obtain that which Defendants are obligated to disclose under Rule 26, Defendants are aware of their obligations under Rule 26. The request should be denied.

## VII.    CONCLUSION

Plaintiffs have served an overwhelming number of interrogatories and requests for production. Clearly, Plaintiffs are not targeting their discovery to the issues in this litigation but are seeking rather to bury Defendants, and this Court, under a mountain of paper. For the general and specific reasons set forth herein, Plaintiffs' motion to compel should be denied.

Dated: October 14, 2013

Jason M. Sneed *(admitted pro hac vice)*
Charles M. Landrum III *(adm. pro hac vice)*
SNEED PLLC
610 Jetton St., Suite 120-107
Davidson, NC 28036
Telephone: (704) 779-3611
JSneed@SneedLegal.com
CLandrum@SneedLegal.com

s/Douglas B. Bates
Douglas B. Bates (Supreme Court No. 16355-10)
Neal Bailen (Supreme Court No. 26246-53)
Bruce B. Paul (Supreme Court No. 25731-10)
STITES & HARBISON, PLLC
323 East Court Avenue
Jeffersonville, IN 47130
Telephone: (812) 282-7566
dbates@stites.com, bpaul@stites.com
nbailen@stites.com

*Attorneys for Defendants / Counterclaimants / Third-Party Plaintiffs ATI and GSG*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 14, 2013, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

| | |
|---|---|
| Darlene R. Seymour | Jonathan G. Polak |
| dseymour@ce-ip.com | Tracy N. Betz |
| | Anne Cowgur |
| | M. Zach Gordon |
| | Peter Prettyman |
| | TAFT STETTINIUS & HOLLISTER LLP |
| | jpolak@taftlaw.com |
| | tbetz@taftlaw.com |
| | acowgur@taftlaw.com |
| | zgordon@taftlaw.com |
| | pprettyman@taftlaw.com |

s/Douglas B. Bates
*An Attorney for Defendants / Counterclaimants / Third-Party Plaintiffs German Sport Guns GmbH and American Tactical Imports, Inc.*