UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HECKLER & KOCH, INC. and HECKLER & KOCH GMBH, <br><br> Plaintiffs/Counterclaim Defendants, <br><br> v. <br><br> GERMAN SPORT GUNS GMBH; and AMERICAN TACTICAL IMPORTS, INC., <br><br> Defendants/Counterclaimants, <br><br> AND <br><br> GERMAN SPORT GUNS GMBH; and AMERICAN TACTICAL IMPORTS, INC., <br><br> Third-Party Plaintiffs, <br><br> v. <br><br> G. WAYNE WEBER AND NIELS IHLOFF, <br><br> Third-Party Defendants. | Case No. 1:11-cv-01108-SEB-TAB |

**RESPONSE IN OPPOSITION TO THIRD-PARTY DEFENDANTS'
MOTION TO COMPEL**

Defendants American Tactical Imports, Inc. ("ATI") and German Sport Guns GmbH ("GSG") hereby respond to Third-Party Defendants' Motion to Compel, (Doc. No. 208), and brief in support thereof. (Doc. No. 209, hereinafter "Brief").

1

## TABLE OF CONTENTS

I. Introduction .................................................................................................................. 3

II. Relevant History of Discovery ..................................................................................... 3

III. The Motion and Request for Expenses Should Be Denied ............................................... 5
   A. Plaintiffs Did Not Attempt in Good Faith to Obtain Discovery Without Court Action ..... 6
   B. Plaintiffs' Request for Payment of Expenses Should Be Denied....................................... 7

IV. Interrogatories ............................................................................................................... 8
   A. Interrogatory No. 6 to ATI and GSG from Ihloff and Weber, regarding HKI's alleged lack of standing .................................................................................................................. 8
   B. Interrogatory No. 9 to ATI and GSG, regarding "benefits" from the settlement agreement 10
   C. Interrogatory No. 11 to ATI and GSG, regarding research of intellectual property ......... 11
   D. Interrogatory No. 16 to ATI, regarding interference with ATI's business relationships.. 12

V. Requests for Production ............................................................................................... 13

VI. Conclusion ................................................................................................................... 15

## I.   INTRODUCTION

In responding to Third-Party Defendants' multiplicity of papers, Defendants address four major points. In Section II, Defendants show the Court that the relevant discovery history and diligence of Defendants in responding to Third-Party Defendants' discovery makes Third-Party Defendants' motion highly suspect. In Section III, Defendants show that the Court is free to summarily deny the motion and deny the award of expenses for lack of good faith on Third-Party Defendants' part, among other reasons. And in Sections IV and V, Defendants address the particular interrogatories and requests for production subject to the instant motion.

Should the Court elect to take up the merits of the agglomeration of papers served by the Third-Party Defendants, Defendants have assembled a reference chart at Exhibit A. The chart sets forth those requests served by Defendants, those subject to the Third-Party Defendants' motion, those requests that Third-Party Defendants now represent have been resolved by Defendants' supplementation, and the current status of each request. As is readily apparent, only a small minority of the vast discovery requests served by Third-Party Defendants are properly at issue in this motion. For those requests that the Third-Party Defendants represent are no longer at issue, Defendants rely on that representation and do not respond herein. (See Doc. No. 217, at ¶4).

## II.   RELEVANT HISTORY OF DISCOVERY

Defendants responded fully and completely to the interrogatories and requests for production served by Plaintiffs during 2011 and 2012, spending hundreds of attorney hours reviewing documents and ultimately producing over 17,000 pages of documents to Plaintiffs.[1] After Plaintiffs' review of the documents and completion of their twelfth deposition in this case,

---

[1] The Third-Party Defendants served no discovery until February 18, 2013.

Plaintiffs represented to Defendants that Plaintiffs' discovery was complete. (See, Doc. No. 72) ("Defendants' counsel has consulted with Plaintiffs' counsel about the need for a new case / discovery schedule to facilitate several more months of discovery, but Plaintiffs' counsel indicated that he would not approve more than a short extension."). While the Court granted an extension of discovery to February 28, 2013, (Doc. No. 101), discovery was ultimately stayed by the Court on January 14, 2013. (Doc. No. 143). On February 1, 2013, the Court scheduled a settlement conference for April 19, 2013. (Doc. No. 152).

Even though a settlement conference had been scheduled and Plaintiffs had completed their discovery, Third-Party Defendants decided to serve a burdensome wave of discovery on February 18, 2013. Together, Plaintiffs and Third-Party Defendants served a total of 129 interrogatories and 260 new requests for production comprising over 150 pages. Third-Party Defendants apparently sought to maximize the burden of those discovery requests by having each Plaintiff and/or Third-Party Defendant serve duplicative requests. The discovery sought by Third-Party Defendants appears to have been for tactical, and not substantive, reasons.

Nevertheless, Defendants responded in due course to the mass of requests, responding where appropriate and objecting where appropriate. On July 11, 2013, the parties conferred regarding Defendants' objections and responses. The parties were able to come to agreement on particular requests, for which Defendants agreed to provide supplemental responses. Defendants served those supplemental responses on August 21, 2013. With respect to other requests, the parties participated in a conference with the Court on August 7, 2013. The parties conferred again on August 14, 2013 and were able to agree to the supplementation of certain additional requests. Defendants' counsel sent a letter memorializing the same on August 20, 2013, which letter Third-Party Defendants did not provide to the Court. (See Exhibit B, Letter from C. Landrum). Where requests clearly were potentially relevant to claims or defenses in this case,

Defendants have responded. In many instances, Defendants have elected to produce the requested materials where relevance was debatable, rather than to trouble the Court and invest resources in briefings on debatable points.

Defendants have spent and will spend in excess of hundreds, if not thousands, of attorney hours reviewing and producing documents responsive to those requests on which the parties have reached agreement. Yet Third-Party Defendants insist on drinking from the dregs of their requests, demanding each and every last document requested regardless of whether it is likely to lead to the discovery of admissible evidence. Third-Party Defendants' claim is incorrect and unsupported that "[a]s of the filing of the Motion, there was no indication that the supplemental responses would ever be forthcoming." (Doc. No. 217, at 3 ¶5). In fact, the parties explicitly agreed that document production in response to the resolved requests would be ongoing until October 31, 2013, absent an extension. Third-Party Defendants were well aware of the forthcoming discovery responses and ongoing document review and production. Indeed, Defendants served the supplemental responses on September 18, 2013, the same day as Third-Party Defendants' filing of the instant motion. Defendants respectfully request that the Court deny the Third-Party Defendants' attempts to burden Defendants and this Court with the instant motion to compel.

### III.     THE MOTION AND REQUEST FOR EXPENSES SHOULD BE DENIED

The Court should not hesitate to deny Third-Party Defendants' motion and requests for expenses for failure to attempt in **good faith** to obtain discovery without court action. Defendants agree that the parties have had numerous conversations about many, but not all, of these requests. However, Defendants take great issue with Third-Party Defendants' willful blindness to the supplementation that Defendants had indicated clearly was forthcoming, and which was in fact served the same day as the filing of the instant motion. Contrary to Third-Party

5

Defendants' counsel's belief, reliance on a twelve-day-old email without the Third-Party Defendants attempting *any* follow up is hardly "good faith" when the Third-Party Defendants already had a letter from Defendants setting forth the specifics of the forthcoming supplementation. *See, e.g., Ellis v. CCA of Tennessee, LLC*, 1:08-CV-0254-SEB-JMS, 2009 WL 234514, *2 (S.D. Ind. Feb. 2, 2009) ("In the Court's view, a reasonable effort to reach agreement as required by L.R. 37.1 'means more than mailing or faxing a letter to the opposing party. It requires that the parties in good faith converse, confer, compare views, consult and deliberate, or in good faith attempt to do so.'") (*quoting Payless Shoesource Worldwide, Inc. v. Target Corp.*, 237 F.R.D. 666, 670 (D.Kan. 2006). A simple phone call to Defendants or this Court would have resolved the dispute, as this Court has made clear. (See Doc. No. 131) (minute order requiring Plaintiffs to serve overdue discovery). At best, the Third-Party Defendants' motion is premature. At worst, the Third-Party Defendants' motion is a tactical maneuver to harass and burden Defendants in retaliation for Defendants' motion to compel. (Doc. No. 200).

      **A.**    **Plaintiffs Did Not Attempt in Good Faith to Obtain Discovery Without Court Action**

As to numerous interrogatories and requests for production, Defendants had informed the Third-Party Defendants via conference and via follow-up letter that the requested discovery was forthcoming. While the Third-Party Defendants had not been served with the formal responses, the Third-Party Defendants were on notice that the same was coming. The Third-Party Defendants even admit in their motion that the discovery was forthcoming: "If Defendants appropriately supplement their responses prior to any order from the Court on this motion, Plaintiffs [sic] will so advise the Court." (Brief, at 5). Rather than wait to obtain the discovery, inquire when the discovery would be forthcoming, or enlist the Court in a simple conference call to set a date for completion, the Third-Party Defendants elected to file their motion on what turned out to be the same day Defendants were serving the requested discovery.

6

The Third-Party Defendants fault Defendants for being "12 days past due," but the passage of time runs both ways. Defendants declined to give an estimated date due to the uncertainty of timing and, while the Third-Party Defendants asked for an estimated date, the Third-Party Defendants never expressed that failure to provide the discovery by a particular date would necessitate a motion to compel. Accordingly, it was reasonable for Defendants to believe that the Third-Party Defendants did not object to the delay, particularly in light of Plaintiffs' seeking an extension to respond to Defendants' already filed motion to compel, which counsel for Plaintiffs jointly represents the Third-Party Defendants. (Doc. No. 205). Even if Defendants had been unable to provide the requested date, a simple call to the Court would have resolved the issue. (*See, e.g.,* Doc. No. 131) (ordering Plaintiffs to serve overdue discover supplementation by a date certain). Not only did the Third-Party Defendants inconvenience the Court through a premature filing, the Third-Party Defendants chose to increase litigation costs for themselves by drafting a lengthier-than-necessary motion and a supplemental filing to undo portions of the motion.

### B.     Plaintiffs' Request for Payment of Expenses Should Be Denied

Rule 37(a)(5)(A) provides that if the motion is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. However, Rule 37(a)(5)(A) prohibits such payment "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."

As set forth above, Third-Party Defendants' motion was not filed in good faith. As set

forth below, Defendants' responses and objections are substantially justified. Accordingly, an award of expenses would not be appropriate in response to the instant motion.

And Third-Party Defendants' actions appear to have been tactical in nature. On August 29, 2013, Defendants filed a motion to compel relating to the heinous actions of Plaintiffs and their agent Continental. (Doc. No. 200). After filing, Plaintiffs attempted to "negotiate" their response to the motion to compel through conferences with Defendants. Plaintiffs even requested an extension to respond to the motion to compel expressly for the purpose of having "discussions" regarding the motion. (Doc. No. 205). Plaintiffs "discussions" consisted of offering documents to which Defendants were already entitled in exchange for Defendants waiving their right to attorney's fees on the motion to compel. Defendants made a counter-offer in which fees would be waived in exchange for the filing of a consent order. Instead of continuing "discussions," Plaintiffs used the extension of time to draft and file not one but two motions to compel on behalf of Plaintiffs and the Third-Party Defendants on September 18, 2013, all the while planning to request fees while asking Defendants to waive fees. Ultimately, Plaintiffs and Third-Party Defendants buried this Court with two motions *and* two supplemental filings requiring extensive cross-referencing to sort through the chaff to find the few issues of substance. Under such circumstances, an award of expenses would be unjust.

## IV.   INTERROGATORIES

### A.   Interrogatory No. 6 to ATI and GSG from Ihloff and Weber, regarding HKI's alleged lack of standing[2]

**INTERROGATORY NO. 6:** *Identify all facts to support your claim that HKI had no standing to participate in trademark litigation matters involving the MP5 trademark and trade dress after the Assignment was made.*

---

[2] Third-Party Defendants served numerous identical discovery requests on GSG and ATI. Where the request to each Defendant and the responses thereto are identical, Defendants combine their response herein.

> ***ANSWER:*** *Defendant objects to the interrogatory as vague, ambiguous, and confusing, as the phrase "participate in trademark litigation matters" is not defined. Defendant also objects to the interrogatory as improperly seeking a legal conclusion to a hypothetical question, as "standing" is a legal conclusion based on the facts of a particular case, which case (or cases) is not identified in the interrogatory. Defendant also objects to this contention interrogatory as overly broad, as the interrogatory is neither specific nor narrowly tailored for the case and is not limited to principal or material facts, unduly burdensome, as it seeks a narrative account of "all facts" underlying its claim. Defendant further objects that this contention interrogatory is premature, as it seeks to have Defendant articulate theories of its case which are not yet fully developed, and does not have to be answered, if at all, until further discovery has been taken. Defendant further objects as the interrogatory asks Defendant to speculate as to the legal theories Plaintiff may raise in this matter. Defendant further objects on grounds that the interrogatory seeks all facts "to support" Defendant's claim, which necessarily involves the mental impressions, conclusions, opinions and legal theories of counsel and is therefore protected by the work-product doctrine.*

The interrogatory generally refers to "trademark litigation matters." No mention is made of the prior litigation. Yet Third-Party Defendants now argue that the interrogatory "seeks the facts upon which Defendants rely to assert their claim that…HKI…had no standing in the **prior litigation**." (Brief, at 8). Still further, the interrogatory itself sets forth the relevant fact: "…after the Assignment was made." Once HKI consummated the Assignment, the consequences of that assignment are necessarily a question of law. If Plaintiffs are seeking "facts" related to a hypothetical substitution of parties, the interrogatory should be denied for that reason as well. *Gregg v. Local 305 Ibew*, 1:08-CV-160, 2009 WL 1325103 (N.D. Ind. May 13, 2009) (finding an objection well-taken to an interrogatory that "begs a speculative or hypothetical answer"). Still further, **Defendants** are the ones attempting to conduct discovery into the issue of the Assignment. **Plaintiffs** presently are in possession of all facts regarding the Assignment.

In support of Defendants' argument that the interrogatory seeks a legal conclusion, Defendants refer to Paragraph 19 of their Counterclaims wherein Defendants stated,

> HK USA had, in fact, deprived itself of the standing to continue to maintain the 2009 Litigation against ATI and GSG **when it assigned away** its trademark rights in the MP5 mark and, on information and belief, the putative MP5 trade dress, in March 2009. *See Gaia Technologies, Inc. v. Reconversion Technologies, Inc.*, 93 F.3d 774, 777 *amended on reh'g in part*, 104 F.3d 1296 (Fed. Cir. 1996) ("Absent ownership of the Intellectual Property, [Plaintiff] lacked standing to sue on the patent and trademark infringement

9

claims"); and *Schrieber Foods, Inc.*, 402 F.3d 1198 (Fed. Cir. 1995) ("once the assignment to Schreiber Technologies was completed, there was no question that Schreiber lost its 'personal stake in the outcome'" and "non-exclusive licensees do not have constitutional standing to sue").

(Doc. No. 86, at 20). For Plaintiffs to demand more, Plaintiffs unquestionably seek legal conclusions.

### B.   Interrogatory No. 9 to ATI and GSG, regarding "benefits" from the settlement agreement

**INTERROGATORY NO. 9:** *Did you receive any benefit from the settlement of the First Litigation? If so, identify all such benefits.*

**ANSWER:** *Defendant objects to this interrogatory on grounds that the settlement agreement speaks for itself. Defendant further objects as the phrase "benefit," insofar as it relates to the effect of the settlement of the First Litigation, is vague and ambiguous. Defendant further objects as the interrogatory seeks a legal conclusion. Defendant objects to this contention interrogatory as overly broad, as the interrogatory is neither specific nor narrowly tailored for the case and is not limited to principal or material facts, and unduly burdensome, as it seeks a narrative account of "any benefit", no matter how inconsequential. Defendant further objects that this contention interrogatory is premature, as it seeks to have Defendant articulate theories of its case which are not yet fully developed, and does not have to be answered, if at all, until further discovery has been taken.*

> Plaintiffs construe the interrogatory to ask for some vague recitation of "benefits":
>
> The benefits could be monetary in nature. Or perhaps there were some intangible benefits to Defendants' businesses. The interrogatory does not seek a legal interpretation of the language of the settlement agreement. Rather, it seeks a real-world description of any benefits GSG and ATI enjoyed as a result of the settlement. The Court should compel both GSG and ATI to identify those benefits.

(Brief, at 8). Defendants certainly did not understand the interrogatory to be seeking some "fuzzy" description of "benefits." *Gregg*, 2009 WL 1325103, *4 (*citing Shelley v. Hoenisch*, 2008 WL 2489927, at *2 (W.D.Wis. June 19, 2008) ("If plaintiff wants information from defendants, he must ask simple questions that are clear to the reader and can be answered with simple responses")). Nor should the Court sanction the addition of new subparts to the interrogatory. *See, e.g., Diglio v. Air Products & Chemicals, Inc.*, 1998 WL 126948, *14 (E.D. Pa. Mar. 17, 1998) ("Plaintiff is, in effect, requesting that the Court sanction its addition of a new

subpart to Interrogatory # 5 and then compel defendant to answer it"). The Court should refuse to compel further response to Interrogatory No. 9.

            **C.**       **Interrogatory No. 11 to ATI and GSG, regarding research of intellectual property**

**INTERROGATORY NO. 11:** *Did you research ownership of the intellectual property at issue in the First Litigation? If so, describe that research and its results. If not, why not? Did you ever request your attorneys to conduct that research? If so, when did you do so and by what means?*

**ANSWER:** *Defendant objects to the interrogatory as irrelevant and not likely to lead to the discovery of admissible evidence. Defendant also objects on grounds that the interrogatory seeks information involving the research, communications, conclusions opinions and legal theories of counsel and is therefore protected by the attorney-client privilege and work-product doctrine. Defendant further objects on grounds that the interrogatory is vague and ambiguous insofar as there is no definition of the phrase "intellectual property at issue." Defendant further objects that the interrogatory is overly broad and unduly burdensome insofar as there is no limitation as to the time period of the request.*

While the Third-Party Defendants' motion seeks to compel a response to Ihloff's and Weber's Interrogatory No. 11 to ATI and GSG as one to which some additional response is owed, (Doc. No. 208, at 4 ¶7.a–d), Third-Party Defendants' brief is silent, *i.e.*, no argument is advanced. Accordingly, Third-Party Defendants have waived any argument in favor of compelling a response. *See United States v. Elst,* 579 F.3d 740, 747 (7th Cir.2009) ("Perfunctory and undeveloped arguments as well as arguments unsupported by pertinent authority are waived."); *see also Bob Willow Motors, Inc. v. Gen. Motors Corp.,* 872 F.2d 788, 795 (7th Cir.1989) (argument unsupported by any authority and raised in "mere single line in the 'summary of argument' section" of opening brief is waived).

Yet even if Third-Party Defendants had addressed the interrogatory, its deficiencies are clear. The phrase "intellectual property at issue" is nowhere defined, particularly in light of the fact that the Settlement Agreement resolving the prior litigation mentioned multiple products for which Plaintiff Heckler & Koch, Inc. claimed rights. (*See, e.g.,* Doc. No. 45-1, ¶¶7 and 14). Finally, Third-Party Defendants have expressed no basis for piercing the attorney-client privilege

and work-product immunity doctrines to determine what requests were made of counsel.

Accordingly, the motion to compel must be denied.

### D. Interrogatory No. 16 to ATI, regarding interference with ATI's business relationships

**INTERROGATORY NO. 16:** *Identify all facts to support your claim that Ihloff interfered with ATI's business relationships. Include in your answer the specific identification of each and every business relationship you claim was interfered with.*

**ANSWER:** *Defendant objects to this contention interrogatory as overly broad, as the interrogatory is neither specific nor narrowly tailored for the case and is not limited to principal or material facts, and unduly burdensome, as it seeks a narrative account of "all facts" underlying its claim. Defendant further objects that this contention interrogatory is premature, as it seeks to have Defendant articulate theories of its case which are not yet fully developed, and does not have to be answered, if at all, until further discovery has been taken. Defendant further objects on grounds that the interrogatory seeks all facts "to support" Defendant's claim, which necessarily involves the mental impressions, conclusions, opinions and legal theories of counsel and is therefore protected by the work-product doctrine.*

**SUPPLEMENTAL ANSWER:** *Subject to and without waiving the foregoing objections, and with the understanding that Ihloff does not expect Defendant to "marshal its evidence" in response to the interrogatory, Defendant responds that Ihloff interfered with Defendant's relationships with GSG and Orion by participating in the settlement of litigation maintained by HKI against GSG, ATI, and Orion without legal standing. Defendant further responds that Ihloff interfered with Defendant's relationship with at least Bill Hicks & Co. Ltd., Davidson's, Inc., Ellett Brothers, Lipsey's, LLC, and Valor Corporation through HKI's and its agent's service of subpoenas related to fraudulently maintained litigation for which HKI lacked standing and with Defendant's relationship with at least Camfour, LLC and such others with which Plaintiffs or their agents communicated regarding the same litigation and which Defendant may identify through additional discovery.*

**SECOND SUPPLEMENTAL ANSWER:** *Defendant further identifies Jeff Robles and Associates, G.B. Stumpp and Associates, AcuSport Corporation, Gander Mountain, Gunnies, and The Sportsman's Shop, Sports South, LLC as those customers of Defendant with whom the HK Defendants, and each of them, interfered.*

Defendants have supplemented their response to this interrogatory not once, but twice. Defendants set forth both the identities of customers with whom Defendants believe were interfered with by HKI and by what means, namely through the service of subpoenas related to fraudulently maintained litigation and through communications with other customers regarding the litigation. Now, Plaintiffs seek to add new questions and have the Court compel Defendants

12

to answer them: "Did ATI suffer lost sales? Did the customer end the relationship?" (Brief, at 10). The Court should not sanction the addition of new subparts to the interrogatory. *Diglio v. See, e.g., Air Products & Chemicals, Inc.*, 1998 WL 126948, *14 (E.D. Pa. Mar. 17, 1998) ("Plaintiff is, in effect, requesting that the Court sanction its addition of a new subpart to Interrogatory # 5 and then compel defendant to answer it").

Still further, the Court already has provided guidance and Third-Party Defendants have conceded that a request for "all facts" does not mean that Defendants are required to marshal their evidence in response to an interrogatory. Particularly in light of the fact that Plaintiffs and Third-Party Defendants made the very communications underlying these claims, Defendants have answered sufficiently the interrogatory. The motion to compel should be denied.

## V. REQUESTS FOR PRODUCTION

Third-Party Defendants proffer numerous requests for production in the form of "contention" requests. In Third-Party Defendants' August 5, 2013 submission to the Court, Third-Party Defendants characterized such discovery as merely seeking that required by Rule 26: "This is no different than what would be required under Rule 26…" Yet Rule 26(a)(1)(A)(ii) requires production of "of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and **may use to support its claims or defenses**, unless the use would be solely for impeachment." (emphasis added). The Comments to the 2000 Amendments to Rule 26 clearly state, "A party is no longer obligated to disclose witnesses or documents, whether favorable or unfavorable, **that it does not intend to use**." Third-Party Defendants' "contention" requests for production are not so limited.

And though the parties' roles are reversed, *Council on Am.-Islamic Relations Action Network, Inc. v. Schlussel* provides an apt description of the present discovery dispute:

> Throughout their briefs, Defendants rest on the implied assertion that *"standard 'contention requests'"* are per se acceptable under the Federal Rules of Civil Procedure.

> Yet Defendants provide no authority for such a presumption. Indeed, while this may be common practice, many courts that have been presented with the issue of the appropriateness of such requests have rejected similar arguments.

2012 WL 4513605, *2 (E.D. Mich. Oct. 2, 2012) (emphasis in original); *see also, Bonilla v. Trebol Motors Corp.*, 1997 WL 178844 (D.P.R. Mar. 27, 1997) *judgment rev'd on other grounds, vacated in part sub nom. Bonilla v. Volvo Car Corp.*, 150 F.3d 88 (1st Cir. 1998) ("Defendants have decided to invent a new form of discovery—contention requests to produce documents. They have asked plaintiffs to produce all evidence on each allegation of the complaint and RICO case statement. Such a form does not exist under the Federal Rules."). Indeed, the Federal Rules of Civil Procedure acknowledge "contention" interrogatories. Fed.R.Civ.P. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention…"). However, neither Rule 34 nor the Advisory Committee Notes to Rule 34 make any reference to so-called "contention" requests for production.

Still further, requests for production under Rule 34(b)(1)(A) must define with "reasonable particularity" the documents sought. "Contention requests for production" are problematic because the requesting party is not specifying "what documents or things [they] expect to receive." *Council on Am.-Islamic Relations Action Network*, 2012 WL 4513605, *3 n.2 ("[R]equests for production must describe with "reasonable particularity each item or category of items to be inspected." Fed.R.Civ.P. 34. Simply quoting paragraphs of Plaintiffs' Complaint and Answer to Defendants' Affirmative Defenses fails to meet this requirement.") *Id.* Furthermore, "contention requests" must be analyzed individually for burden and relevance. *Id.* (*citing Caban v. Sedgwich Co. Sheriff's Dept.,* No. 98–1196, 2000 WL 1480481, at *7 (D.Kan. May 18, 2000).

Here, Defendants have produced and will produce all documents that Defendants intend to use to support their claims or defenses pursuant to Rule 26. As for the instant motion, Third-Party Defendants confuse the Court's approval of contention **interrogatories** with so-called

14

"contention **requests for production**." In the August 7, 2013 conference, the Court did advise that contention **interrogatories** should generally be answered and advised as to how such an answer might be given. The Third-Party Defendants did not ask, nor did the Court give guidance, as to how so-called "contention requests for production" should be addressed. Still further, Third-Party Defendants Ihloff and Weber attempt to address the propriety of no fewer than 84 requests for production without any elaboration in their brief. While each of the requests is a defective "contention" interrogatory, Defendants have asserted numerous other substantive objections such as the overbroad and unduly burdensome nature of the requests. Rather than address those additional objections, Third-Party Plaintiffs simply incorporate by reference no fewer than 56 pages of exhibits and leave the matter for the Court to sort out.[3]

Thus, Third-Party Defendants have waived any argument in favor of compelling a response. *See United States v. Elst,* 579 F.3d 740, 747 (7th Cir. 2009) ("Perfunctory and undeveloped arguments as well as arguments unsupported by pertinent authority are waived."); *see also Bob Willow Motors, Inc. v. Gen. Motors Corp.,* 872 F.2d 788, 795 (7th Cir.1989) (argument unsupported by any authority and raised in "mere single line in the 'summary of argument' section" of opening brief is waived). The motion should be denied.

## VI. CONCLUSION

The Third-Party Defendants have served an overwhelming number of interrogatories and requests for production. In connection with this motion to compel, Plaintiffs have served their own motion to compel. Clearly, Third-Party Defendants are not targeting their discovery to the issues in this litigation but are seeking rather to bury Defendants, and this Court, under a

---

[3] And unlike Plaintiffs' motion to compel, the Third-Party Defendants do not move the Court to compel production of documents from Defendants' counsel's files. As the Third-Party Defendants have waived any such argument with respect to this motion, Defendants have not addressed that issue herein and any belated request should be denied.

mountain of paper. The Third-Party Defendants' motion to compel should be denied.

Dated: October 14, 2013

        s/Douglas B. Bates
        Douglas B. Bates (Supreme Court No. 16355-10)
        Neal Bailen (Supreme Court No. 26246-53)
        Bruce B. Paul (Supreme Court No. 25731-10)
        STITES & HARBISON, PLLC
        323 East Court Avenue
        Jeffersonville, IN 47130
        Telephone: (812) 282-7566
        dbates@stites.com
        nbailen@stites.com
        bpaul@stites.com

        Jason M. Sneed *(admitted pro hac vice)*
        Charles M. Landrum III *(admitted pro hac vice)*
        SNEED PLLC
        610 Jetton St., Suite 120-107
        Davidson, NC 28036
        Telephone: (704) 779-3611
        JSneed@SneedLegal.com
        CLandrum@SneedLegal.com

        *Attorneys for Defendants/Counterclaimants / Third-Party Plaintiffs American Tactical Imports, Inc. and German Sport Guns GmbH*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 14, 2013, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

| | |
|---|---|
| Darlene R. Seymour<br>dseymour@ce-ip.com | Jonathan G. Polak<br>Tracy N. Betz<br>Anne Cowgur<br>M. Zach Gordon<br>Peter Prettyman<br>TAFT STETTINIUS & HOLLISTER LLP<br>jpolak@taftlaw.com<br>tbetz@taftlaw.com<br>acowgur@taftlaw.com<br>zgordon@taftlaw.com<br>pprettyman@taftlaw.com |

_____
*An Attorney for Defendants / Counterclaimants / Third-Party Plaintiffs German Sport Guns GmbH and American Tactical Imports, Inc.*