UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HECKLER & KOCH, INC., and<br>HECKLER & KOCH GMBH,<br><br>Plaintiffs,<br><br>vs.<br><br>GERMAN SPORT GUNS GMBH,<br>AMERICAN TACTICAL IMPORTS, INC.,<br><br>Defendants.<br>------------------------------------------------------<br>AMERICAN TACTICAL IMPORTS, INC.,<br>GERMAN SPORT GUNS GMBH,<br><br>Counter Claimants,<br><br>vs.<br><br>HECKLER & KOCH, INC.,<br>HECKLER & KOCH GMBH,<br>G. WAYNE WEBER, and<br>NIELS IHLOFF<br><br>Counter Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  No. 1:11-cv-01108-SEB-TAB<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTIONS FOR SANCTIONS**

**I. Introduction**

      This case has been pending for nearly four years and has a relatively long history.  In

fact, the case is premised upon Defendants' alleged breach of a settlement agreement, which

previously—if only briefly—ended the litigation between the parties.  The undersigned has

addressed countless discovery and other disputes between the parties as this case has proceeded

along the litigation path.  Some of these disputes have been significant, as is the dispute presently before the Court.

The present dispute involves two motions for sanctions in which Defendants allege, among other claims, that Plaintiffs and their counsel misrepresented a critical fact in this litigation involving the date of an assignment.  The Magistrate Judge agrees that a significant misrepresentation has occurred.  Accordingly, for the reasons set forth below the Magistrate Judge recommends Defendants' motion for sanctions under Rule 11 [Filing No. 384] be granted and Defendants' motion for sanctions under Rules 26 and 37 [Filing No. 386] be granted in part and denied in part.

## II. Background

An October 8, 2009, settlement agreement between Plaintiffs and Defendants serves as the origin of Defendants' instant motions for sanctions.  Plaintiff HKI signed a settlement agreement with Defendants stipulating to the dismissal of a trademark infringement lawsuit on the MP5 mark.[1]  The agreement indicated that HKI claimed to own the MP5 mark and that Defendants agreed to halt manufacturing of the GSG-5 design, a gun that HKI asserted infringed on its MP5 trademark.  The agreement also recited that Defendants neither admitted that they infringed on HKI's rights nor conceded that HKI owned the trademark, trade dress, and other intellectual property rights it claimed to own.  [Filing No. 425, at ECF p. 4.]  Moreover, the agreement indicated that Defendants would pay HKI $300,000 to dismiss the lawsuit.  [Filing No. 425, at ECF p. 3-4.]  This agreement, however, was short-lived.  By 2011, HKI filed another

---

[1]  The MP5 mark is a category of firearms sharing certain core design features similar to the MP5 weapon that was originally designed in the 1960s by HKG as a nine millimeter submachine gun. [Filing No. 425, at ECF p. 2.]  The MP5 mark is a registered trademark in the United States and in Germany.

suit against Defendants arguing that Defendants breached certain terms of the settlement agreement and were again infringing on the MP5 trademark.

In 2012, HKI sought leave to amend its 2011 complaint to include HKG as a Plaintiff, explaining that HKI had assigned its MP5 rights to HKG, and consequently, Federal Rules of Civil Procedure 19 and 20 required HKG to be added as a party. [Filing No. 35, at ECF p. 3.] In briefing the motion, HKI asserted that it assigned the MP5 mark to HKG on March 19, 2009, months before the settlement agreement. Defendants responded by filing fraud and deception counterclaims against HKI. Defendants' fraud-based counterclaims asserted that at the time of the settlement agreement HKI misrepresented to Defendants the company that owned the MP5 trademark and intentionally withheld and concealed information concerning the MP5 trademark assignment to HKG. [Filing No. 86, at ECF p. 19.] Defendants argued that they would not have signed the settlement agreement and paid $300,000 to end litigation had they known during the settlement negotiations that HKG (and not HKI) owned the trademark.

The parties seemingly agreed on very little over the course of quite contentious discovery in this case, which ended on June 17, 2014. However, the parties appeared to agree on two key dates concerning the MP5 assignment for the purposes of litigation. First, HKI assigned its MP5 mark to HKG on March 19, 2009. Second, Plaintiffs publicly recorded the assignment with the U.S. Patent and Trademark Office on June 20, 2010.

Nevertheless, Plaintiffs' July 17, 2014, motion for summary judgment asserted for the first time a new assignment date. Relying on a declaration and information from Plaintiffs' outside trademark counsel Isolde Kurz Cooper, Plaintiffs' summary judgment motion asserted that HKI assigned HKG the MP5 trademark on June 15, 2010 (several months after the settlement agreement). [Filing No. 330, at ECF p. 27-29.] According to information provided

from Kurz Cooper on May 26, 2014, HKG did not accept the assignment from HKI until June 15, 2010. Once HKG accepted the assignment, it became effective. [Filing No. 330-3.] Kurz Cooper's July 16, 2014, declaration further clarified that HKG was unable to accept the assignment so as to make it effective before June 15, 2010. This was because Soft Air Inc., an unrelated company, had an intent-to-use application for the mark "MP5A5" that was unresolved. Until Soft Air's application was resolved, the registration application for HKG's MP5 trademark could not proceed, and the assignment was ineffective. [Filing No. 330-3, at ECF p. 5.] Based on this newly discovered information, Plaintiffs' motion for summary judgment argued that they did not have the intent to deceive Defendants about the assignment date in the settlement agreement. [Filing No. 330, at ECF p. 27-29.] Plaintiffs asserted they were entitled to summary judgment on Defendants' fraud-based counterclaims as a matter of law.

In response to Plaintiffs' motion for summary judgment, Defendants filed motions for sanctions under Rules 11, 26, and 37. Defendants' motions assert that Plaintiffs' abrupt change in the alleged assignment date is sanctionable conduct as it occurred after the close of a thirty-month discovery period, and Plaintiffs made several representations during the course of litigation that March 19, 2009, was the date of assignment. The assignment date is the lynchpin of Defendants' fraud-based counterclaims. With March 19, 2009, as the assignment date, HKI had already entered into the assignment with HKG at the time of the settlement agreement and failed to notify Defendants of that fact, thereby establishing the pleading requirements for Defendants' fraud and deception. [*See* Filing No. 215, at ECF p. 16-17; Filing No. 298, at ECF p.29-30.] Conversely, if June 15, 2010, was the assignment date, HKI still owned the trademark at the time of the settlement negotiations, and Defendants' fraud-based counterclaims would falter. Ultimately, the Court granted Plaintiffs' motion for summary judgment on Defendants'

fraud-based counterclaims.  However, the Court did not rely on Plaintiffs' newly alleged facts in doing so.[2]

### III. Discussion

       *A.     Standard for awarding sanctions*

Defendants seek sanctions under Rule 11 asserting that Plaintiffs improperly certified filings without conducting a reasonable inquiry into the relevant facts and existing law.  Under Rule 11, an attorney must conduct a reasonable investigation into both the facts asserted and the applicable law before filing a complaint, motion, or other paper with the Court.  An attorney's signature on such a filing certifies that to the best of the attorney's knowledge, information, and belief formed after an inquiry reasonable under the circumstances that the filing serves a proper purpose and that the claims and defenses contained in the motion are warranted under existing case law.  The attorney further certifies that the allegations or other factual contentions contained in the motion are supported by the evidence or will likely be supported by evidence after a reasonable opportunity for further discovery.  Fed. R. Civ. P. 11.

The Seventh Circuit recognizes two grounds for Rule 11 sanctions.  The first is contained in the frivolous clause, which requires a reasonable inquiry into the facts and law relevant to any pleading, written motion, or other paper.  The second is under the improper purpose clause,

---

[2]  To recover under a fraud theory, Defendants had to show that they had reasonably relied on Plaintiffs' misrepresentations with respect to the ownership rights of the MP5 mark in the settlement agreement, and that this reliance proximately cause their damages.  [Filing No. 425, at ECF p. 19.]  However, the Court noted language in the settlement agreement that was drafted jointly by the parties that disavowed any reliance on HKI's MP5 trademark rights.  Moreover, the Court found no affirmative evidence that Defendants relied on Plaintiffs' false statement of ownership during the settlement to their detriment.  [Filing No. 425, at ECF p. 26-29.]  Thus, the Court's order concluded that Defendants' fraud-based counterclaims failed to meet their evidentiary burden as to the elements of reliance and proximate cause.  The Court denied reconsideration on these issues.  [Filing No. 475.]

which ensures that a motion, pleading, or reply will not be used for purposes of delay, harassment, or increasing costs of litigation. *Albiero v. Town of Goodland, Ind.,* No. 4:11-cv-15-JVB, 2012 WL 13699, at *3 (N.D. Ind. Jan. 3, 2012) (citing *Fred A. Smith Co. v. Edidin*, 845 F.2d 750, 752 (7th Cir. 1988)); *Ratliff v. Conagra, Inc.*, No. IP 01-0129-C H/K, 2001 WL 1397298, at *4 (S.D. Ind. Oct. 31, 2001).

Even "a litigant who is of pure heart and believes in good faith that her claims are valid" but "never objectively investigates the facts or the law before filing a complaint may very well be tempting fate under Rule 11." *Wilford v. County of Rush*, No. IP02-0985-C-T/K, 2003 WL 77003, at * 3 (S.D. Ind. Jan. 7, 2003); *see also Mars Steel Corp. v. Continental Bank N.A.,* 880 F.2d 928, 931 (7th Cir. 1989) (quoting *Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir. 1986)) ("An empty head but a pure heart is no defense. The Rule requires counsel to read and consider before litigating."). The Court must conduct an objective inquiry into whether "the party or his counsel should have known that his position is groundless." *Cuna Mut. Ins. Soc. V. Office of Professional Employees Intern. Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006). If a party or counsel is in violation, Rule 11 "expressly permits sanctions against the attorneys, law firms, or parties that have violated the rule. On top of all that, the [C]ourt retains inherent power to impose sanctions when the situation is grave enough to call for them and the misconduct has somehow slipped between the cracks of the statutes and rules covering the usual situations." *Claiborne v. Wisdom,* 414 F.3d 715, 724 (7th Cir. 2005) (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991)). "The decision to grant or deny a motion for Rule 11 sanctions is within the sound judgment of the district court and will be disturbed only where the court abuses its discretion." *Cooney v. Casady*, 735 F.3d 514, 523 (7th Cir. 2013).

Defendants also seek sanctions under Rules 26 and 37. Rule 26 permits "appropriate sanctions, including attorney's fees, against counsel who, without substantial justification, wrongly certify that pretrial disclosures are complete and correct." *Sullen v. Midwest ISO*, No. 1:04-cv-0914-JDT-TAB, 2005 WL 4880628, at *2 (S.D. Ind. Nov. 9, 2005). Like Rule 11 sanctions, Rule 26 imposes sanctions on counsel who fail to make a reasonable inquiry into the factual basis of a discovery response, request, or objections. Fed. R. Civ. P. Rule 26(g) advisory committee's note. Under Rule 37, the Court may sanction a party for evasive or incomplete disclosures in response to document requests or interrogatories, or in answering deposition questions. In imposing sanctions under Rule 37, the Court should consider whether substantial justification exists or the failure to disclose is harmless. Both Rules 26 and 37 condition sanctions upon a finding of willfulness, bad faith, or fault. *Am. Nat'l Bank & Trust Co. v. Equitable Life Assur. Soc'y of the U.S.*, 406 F.3d 867, 877 (7th Cir. 2005).

B.   *Plaintiffs' conduct in light of Rules 26 and 37*

1.   Supplementing discovery

Plaintiffs assert that Rule 26 and Rule 37 sanctions are not warranted because they complied with discovery requests and produced relevant non-privileged documents. Included in Plaintiffs' non-privileged document production was a March 23, 2009, response to U.S. Patent and Trademark Office action, which requested the PTO keep the "pending application in abeyance pending the formal assignment" because "both parties are in the process of arranging for the assignment of the registration to the [a]pplicant." [Filing No. 411-2, at ECF p. 19.] Plaintiffs also argue that they were not required to supplement their response to interrogatory no. 9 or other discovery when they uncovered the June 15, 2010, effective assignment date. Defendants' interrogatory no. 9 requested Plaintiffs:

> identify all persons involved in the drafting, negotiation, execution and recordation of any transfer from [HKI], to any other person or entity, including [HKG], pertaining to any trademark . . . pertaining to MP5 firearms, during the last five years, and for each such person describe the nature of the person's activities and the date(s) of each such person's involvement.

[Filing No. 411-10, at ECF p. 7.] Plaintiffs originally responded that the assignment speaks for itself and later supplemented their answer to include Niels Ihloff, James Kehoe, Isolde Kurz Cooper, Ekkehard Stolz, and G. Wayne Weber. [Filing No. 411-10, at ECF p. 7-8.] Because their answers were complete and accurate, Plaintiffs argue that they did not need to further supplement. Moreover, Plaintiffs contend that discovery supplementation was not required because evidence produced during discovery supported Kurz Cooper's declaration.

Plaintiffs point to the March 23, 2009, response to PTO action, Kurz Cooper's status as counsel working on the assignment, and Ihloff's deposition as evidence produced during discovery that supports the June 15, 2010, effective assignment date. This argument fails. While the March 23, 2009, response to PTO action states that Plaintiffs were in the process of assigning the MP5 trademark, Plaintiffs represented in their motion to amend their complaint that the assignment occurred before the settlement agreement. [Filing No. 39, at ECF p. 7.] Moreover, Plaintiffs produced no evidence or written memorialization during discovery that suggested that the assignment date occurred after the March 23, 2009, filing. [*See* Filing No. 425, at ECF p. 16-17.] Thus, Defendants had no reason to further research the meaning behind the March 23, 2009, PTO filing. Plaintiffs cannot rely on their discovery production to support their new assignment date. They were required to supplement their discovery.

The same is true of Plaintiffs' designation of Kurz Cooper as the outside trademark counsel who drafted the assignment. Plaintiffs produced no discovery by Kurz Cooper or related to Kurz Cooper's role as outside counsel that suggested that March 19, 2009, was not the

assignment date—a fact that remained true even after Plaintiffs received communication from Kurz Cooper on May 26, 2014, alleging June 15, 2010, as the effective assignment date. Indeed, the assignment on its face suggested that March 19, 2009, was when HKI assigned the MP5 trademark to HKG. The assignment acknowledged receipt of good and valuable consideration and expressly assigned to HKG all right, title, and interest in and to the MP5 mark, together with the good will of the business symbolized by the MP5 mark and the respective registration. The assignment was signed and dated by HKI's president Gerard W. Weber and notarized.[3] [Filing No. 411-2, at ECF p. 10.] The assignment contained no condition to otherwise suggest that the effective date of the assignment would be delayed.

Plaintiffs also rely on Ihloff's testimony as evidence produced during discovery that showed the assignment was not effective on March 19, 2009. Ihloff's testimony, however, is not the panacea Plaintiffs portend. Ihloff noted that assignments, proposed assignments, or eventually then-concluded assignments were handled by external trademark counsel and that "because of some other registration-related issues, essentially, the clearing or us wanting to wait for another registration to clear, that to my mind was a continuing process." [Filing No. 411-3, at ECF p. 3.] He testified that he could only speculate as to when Continental Enterprises first learned of the assignment because Plaintiffs were waiting for another registration to clear. Plaintiffs appear to extrapolate from Ihloff's testimony that the assignment was not effective when signed on March 19, 2009.

However, Ihloff's testimony confirmed March 19 as the assignment date. Ihloff testified that prior to March 19, 2009, HKI owned the MP5 trademark, but that it was then assigned to

---

[3] Throughout the litigation, the parties have referred to HKI's president as G. Wayne Weber. However, Weber signed the assignment as Gerard W. Weber. [Filing No. 411-2, at ECF p. 10.]

HKG. [Filing No. 370-2, at ECF p. 4.] When asked the date on which the MP5 trademark was assigned from HKI to HKG, Ihloff testified that the document speaks for itself. What is clear from the evidence is that Plaintiffs provided a consistent message during discovery that March 19, 2009, was the assignment date. Despite receiving contrary evidence on this significant issue from Kurz Cooper on May 26, 2014 (while fact discovery was ongoing), Plaintiffs failed to supplement and correct their answer to interrogatory no. 9 that supported March 19, 2009, as the assignment date.[4] Given these facts, sanctions are appropriate.

Plaintiffs also argue that Defendants' litigation strategies are to blame for the discovery of the June 15, 2010, assignment date so late in the case. Plaintiffs assert that it was Defendants' decision to wait to depose Kurz Cooper as part of their fact discovery[5] and to frame their discovery questions in a way that did not uncover relevant information on the assignment. The Plaintiffs' argument is unavailing. Plaintiffs' certified discovery asserts that the seemingly straightforward assignment "speaks for itself." [Filing No. 349-2, at ECF p. 4.] Plaintiffs undeniably conceded, whether implicitly or explicitly, that the effective date was the same as the execution date of the assignment during the course of discovery. [*See, e.g.,* Filing No. 35; Filing No. 39; Filing No. 265; Filing No. 399.] The Court determined this much to be true in its order on cross motions for summary judgment. [*See* Filing No. 425, at ECF p. 16.] Defendants are not

_____

[4] Plaintiffs are correct that interrogatory no. 9 did not seek information about the legal effect of the assignment, or the delayed recording of the assignment, which would have prompted an answer relating to the June 15, 2010, assignment date. Even so, Plaintiffs' answer that the assignment speaks for itself effectively established March 19, 2009, as the assignment date. Because Plaintiffs had conflicting evidence, Plaintiffs had an obligation to supplement or correct their previous answer. *See* Fed. R. Civ. P. 37(c).

[5] As of the time of briefing, Defendants had yet to schedule Kurz Cooper's deposition.

at fault for failing to request additional information on the date of assignment when there was no reason to do so under the circumstances.

2.    Incomplete Privilege Log

Even more troubling is Plaintiffs' evidentiary omission during discovery.  Plaintiffs admit that they failed to include evidence in their privilege log supporting their June 15, 2010, effective assignment date.  According to Plaintiffs, the pertinent document should have been included as part of James Kehoe's privilege log,[6] which was produced in 2012.  Kehoe's privilege log included email chains from March 20-23, 2009, and June 2, 2010.  However, it did not include communications from June 3, 2010, through November 11, 2010.  [Filing No. 156-3, at ECF p. 2-4.]  Plaintiffs assert that in a June 15, 2010, privileged communication HKG accepted the March 19, 2009, assignment.  That communication, according to Plaintiffs, made June 15, 2010, the effective assignment date.  However, the June 15 privileged communication was not included in Kehoe's privilege log when it was first produced in 2012; it was not produced before the close of fact discovery in 2014; and it was not included as evidence to support Plaintiffs' motion for summary judgment in 2014.  It was not until Plaintiffs responded to Defendants' pending motions for sanctions that Plaintiffs disclosed this communication.

Plaintiffs insist that this communication was inadvertently omitted from the privilege log originally produced over two years ago.  They claim the document was misplaced, likely not printed due to a printer error, or otherwise inadvertently discarded.  [Filing No. 411, at ECF p.

---

[6]  Kehoe is HKI's licensed trademark counsel who worked with Kurz Cooper and was responsible for filing all the documents related to the assignment.  [Filing No. 411, at ECF p. 14.] Kurz Cooper was responsible for drafting the assignment and related filings from 2008 onward. [Filing No. 349-2, at ECF p. 4.]  Kehoe's 2012 privilege log includes Kurz Cooper's related communications.

46-47.]  Plaintiffs' purported justification for failing to disclose material evidence is unconvincing.  For over two years, Plaintiffs possessed a privileged communication that would change a crucial fact in the case, and they waited until after discovery to bring it to Defendants' attention.  Plaintiffs' failure to disclose such critical information for over two years is more than a mere mistake.[7]  Plaintiffs are at fault for their evidentiary deficiency.

In an effort to mitigate, Plaintiffs request the Court review the privileged communication *in camera* to assist in evaluating Defendants' motions for sanctions.  However, the Court has rejected their efforts.  As the Court previously indicated in its order denying Plaintiffs' request for *in camera* review of this document, an *ex parte* communication is not the proper way to determine whether a party should be subject to sanctions.  [Filing No. 435.]  Moreover, there are no extraordinary circumstances that would warrant the Court's deviation from the basic premise that the merits of a case cannot be determined by *in camera* evidence.  *See Global Relief Foundation, Inc. v. O'Neill*, 205 F.Supp.2d 885, 887 (N.D. Ill. 2002) (explaining that a court generally may not dispose of the merits of a case on the basis of *ex parte*, *in camera* submissions; however, in extraordinary circumstances, it may be necessary for a court to review and rely on certain evidence *in camera* and *ex parte*).

Simply put, Plaintiffs' omitted privileged communication is much too little and way too late.  Plaintiffs' incomplete privilege log is objectively unreasonable under Rules 26 and 37.  *See Brown v. Columbia Sussex Corp.* 664 F.3d 182, 191 (7th Cir. 2011) (finding Rule 37 sanctions appropriate for a party at fault for its discovery violations when the party's behavior was more

---

[7]  Plaintiffs argue that their failure to provide this information during discovery is harmless because Defendants will depose Kurz Cooper.  The undersigned disagrees.  The assignment date is the lynchpin to Defendants' counterclaims, and Defendants have conducted all of their discovery assuming that March 19, 2009, was the relevant assignment date.

than a mere mistake, it was objectively unreasonable). Consequently, Plaintiffs' evidentiary omission warrants sanctions.

3.    June 5, 2014, hearing

Equally troubling is Plaintiffs' lead counsel Jonathan Polak's misrepresentations to the Court at the June 5, 2014, discovery hearing. On June 5, 2014, the undersigned held oral argument concerning several discovery disputes between the parties submitted to the Court via email. Among the issues was Defendants' request that Plaintiffs produce IRS tax filings related to the MP5 trademark. Defendants requested the IRS tax filings in an effort to find evidence on how HKI valued the MP5 trademark it assigned to HKG. [Filing No. 411-7, at ECF p. 5.] Plaintiffs' response on May 21, 2014, argued:

> [F]or the 2009 assignment in this case, any necessary tax documents would have been filed in 2010. Fully a year removed from the assignment . . . All of this begs the question of how much additional evidence Defendants need to establish a fact that is already undisputed at this point—that HKI had already assigned the MP5 word mark registration as of the date of the Settlement Agreement.

[Filing No. 349-8, at ECF p. 3.]

At the hearing, Plaintiffs' counsel conceded that the March 19, 2009, assignment date was not in dispute. [Filing No. 366, at ECF p. 47.] Polak represented to the Court, "[I]t's already been established that HK, Inc., had already assigned away that trademark registration that's at issue prior to the settlement conference and prior to the mediation, prior to the settlement. We're not opposing that." [Filing No. 366, at ECF p. 47.] When Polak made this representation, he had previously received Kurz Cooper's statement that the assignment did not become effective until June 15, 2010.

Plaintiffs admit that this was a mischaracterization to the Court and in their defense, argue that Plaintiffs' counsel did not appreciate the importance of Kurz Cooper's statement at the

time of the hearing because he was busy preparing for depositions. [Filing No. 411, at ECF p. 22 n.11.] Inattentiveness is no excuse for failing to adhere to Rules 26 and 37. *See McAtee v. Buca Restaurants, Inc.,* No. 1:10-cv-1090-SEB-DKL, 2011 WL 6016648, at *3 (S.D. Ind. Dec. 2, 2011) (citing *Langley v. Union Elec. Co.,* 107 F.3d 510, 514 (7th Cir. 1997)) (finding poor judgment, indolence, and lack of candor are sanctionable conduct). Rule 26 guarantees to both parties equal knowledge about material facts in the case. *See Hoffman v. Caterpillar, Inc.,* 368 F.3d 709, 715, n.3 (7th Cir. 2004). By failing to provide Defendants with information crucial to their counterclaims, Plaintiffs have failed to provide the guarantee that Rule 26 requires. Plaintiffs' justifications are in vain as their conduct has failed to meet the discovery standards set forth in Rule 26. They failed to supply key information on the assignment date in supplementing their discovery, in completing their privilege logs, and in their representations to the Court. Thus, the undersigned finds sanctions to be appropriate under Rules 26 and 37.

C.     *Plaintiffs' conduct in light of Rule 11*

Defendants also seek sanctions under Rule 11 for Plaintiffs' motion for summary judgment argument that asserts for the first time the June 15, 2010, assignment date. In light of Plaintiffs' June 15, 2010, assignment date, Defendants argue that Plaintiffs' previous Rule 25(c) and right to sue claims (based on the March 19, 2009, assignment date) are frivolous and subject to sanctions. According to Plaintiffs, Rule 11 sanctions are not appropriate because existing facts and law support their newly asserted date. Plaintiffs assert that after receiving Kurz Cooper's declaration, they researched her assertions and found that case law supports her new assignment date. Indeed, in its order on the cross motions for summary judgment the Court cites *McCloskey & Co., Inc. v. Wright*, 363 F.Supp. 223, 228 (E.D. Va. 1973), which would support a June 2010 effective date of assignment. Applying Virginia law, *McCloskey* held that "an

assignment does not take effect until the assignee has tendered formal acceptance." *McCloskey* found that the date of acceptance marks the beginning of the contractual relationship between the assignee and assignor. *Id.* at 228. Moreover, the parties conceded that Virginia law governs the assignment. [*See* Filing No. 425, at ECF p. 16.]

While *McCloskey* supports Plaintiffs' substantive argument for the new assignment date, this alone does not shield Plaintiffs' from Rule 11 sanctions. Rule 11 sanctions are appropriate when pleadings, written motions, or other papers are not supported by existing law and facts. Fed. R. Civ. P. 11(b)–(c). *McCloskey* does not change the fact that Plaintiffs consistently indicated in their filings to the Court and in their communications with opposing counsel that the assignment occurred on March 19, 2009. Similarly, *McCloskey* does not negate the fact that Defendants have relied on Plaintiffs' representations that March 19, 2009, was the assignment date.

In support of their Rule 11 sanctions, Defendants rely on *Lake Wright Hospitality, LLC v. Holiday Hospitality Franchising, Inc.*, No. 2:07-cv-530, 2009 WL 2606254 (E.D. Vir. Aug. 20, 2009). *Lake* sanctioned plaintiffs under Rule 11 for multiple statements that were misleading and not factually supported. However, Plaintiffs assert *Lake* is distinguishable from the case at hand. *Lake* sanctioned plaintiffs for thirty-four statements that either misrepresented the facts, or were not factually supported. In this case, Plaintiffs contend that they asserted one statement that contradicted their previous statements, which was supported by existing law and facts that were untimely disclosed. According to Plaintiffs, the June 15, 2010, effective date of assignment was only included as a portion of a sub-argument on why Defendants' fraud-based counterclaims should be denied. [*See* Filing No. 330.] Moreover, Plaintiffs assert that imposing Rule 11 sanctions would be inappropriate in this case because they would punish counsel for creativity in

15

defending a case—a fact that should be considered when determining Rule 11 sanctions. *Hartmarx Corp. v. Abboud*, 326 F.3d 862, 867 (7th Cir. 2003) ("[A] district court must also bear in mind that such sanctions are to be imposed sparingly, as they can have significant impact beyond the merits of the individual case and can affect the reputation and creativity of counsel.").

To be sure, Plaintiffs' motion for summary judgment was not entirely frivolous. Only a portion of Plaintiffs' sub-argument concerning Defendants' fraud-based counterclaims is subject to Rule 11 sanctions. However, "a litigant cannot expect to avoid all sanctions under Rule 11 merely because the pleading or motion under scrutiny was not entirely frivolous." *Retired Chicago Police Ass'n v. Firemen's Annuity and Benefit Fund of Chicago*, 145 F.3d 929, 935 (7th Cir. 1998). This is especially true when counsel fails to conduct the kind of inquiry required by Rule 11 in light of the governing facts and law. *See Divane v. Krull Elec. Co., Inc.,* 200 F.3d 1020, 1025 (7th Cir. 1999); *Retired Chicago Police Ass'n,* 145 F.3d at 933.

Here, Plaintiffs' assertion that the assignment post-dated the settlement agreement is not well grounded in fact because the June 15 effective assignment date contradicts Plaintiffs' previous statements to the Court and the assignment on its face.[8] The Court has already concluded that March 19, 2009, was the effective date as well as the date of execution. [Filing No. 425, at ECF p. 16.] Multiple filings by Plaintiffs support the March 19 assignment date. [*See e.g.,* Filing No. 39; Filing No. 265; Filing No. 349-2, at ECF p. 4; Filing No. 399.] Even the assignment itself indicates March 19, 2009, as the day when HKI formally assigned the MP5 mark to HKG. Similarly, the only evidence that supports Plaintiffs' new assignment date (Kurz

---

[8] Even Plaintiffs' more recent motion for certification of interlocutory appeal argues March 19, 2009, is the assignment date. [*See* Filing No. 399.]

Cooper's declaration and the privileged June 15 communication) was not produced during discovery. The evidence overwhelmingly supports the March 19, 2009, assignment date.

Moreover, the date of assignment should have been a fact easily accessible to Plaintiffs. Plaintiffs' outside trademark counsel knew the relevant facts concerning the new assignment date, and nothing in the record suggests that Plaintiffs' trademark counsel was unavailable to provide information concerning the assignment early on in litigation. Plaintiffs reasonably could have solicited key information from their trademark counsel in preparing their motion to amend their complaint (which is where Plaintiffs asserted the March 19, 2009, assignment date for the first time).

Alternatively, Plaintiffs could have conducted a reasonable inquiry into the privileged communications they received from Plaintiffs' trademark counsel in 2012 before producing the related privilege log to Defendants. Plaintiffs assert that their trademark counsel's privileged communications included a communication accepting the assignment offer on June 15, 2010. The facts show that Plaintiffs received this information in 2012, but they omitted it from their privilege log. [Filing No. 411, at ECF p. 46-47.] Had Plaintiffs performed a reasonable inquiry into the relevant facts when they received this privileged information in 2012, they would have discovered the June 15, 2010, privileged communication and provided that information to Defendants. However, Plaintiffs and their counsel took none of these affirmative steps. Instead, Plaintiffs waited until after the close of discovery as part of their motion for summary judgment to assert a fact that they should have known early on in litigation. Such conduct violates Rule 11 and provides a sufficient basis for the Court to impose sanctions.

The burden to ensure that Plaintiffs conducted a reasonable inquiry into all factual contentions that have evidentiary support falls on Plaintffs' counsel. As lead counsel for the

Plaintiffs, Polak had that responsibility.  Polak has played an active role in this highly

contentious litigation since 2011.  [Filing No. 29.]  He has argued and defended many motions

for sanctions, motions to compel, and other related discovery motions over the course of the last

nearly four years.  Despite Polak's leadership role in this case, he failed to conduct a reasonable

inquiry into the HKG assignment date, a critical fact in this litigation since 2012.  More

important, he signed written motions and other papers that represented to the Court that he had

performed a reasonable inquiry.  Such conduct violates Rule 11's basic principles.  Polak's

failure to follow the basic tenets of Rule 11(b) warrants sanctions.

### D        *Appropriate Sanctions*

To redress and deter future sanctionable conduct, Defendants seek a list of sanctions

under Rules 26 and 37 against Plaintiffs and Plaintiffs' counsel.  Defendants request that the

Court: (1) issue an order excluding any evidence of Plaintiffs' alleged belief in a June 15, 2010,

acceptance by HKG; (2) direct that March 19, 2009, be established as the effective date of the

assignment for all purposes in this action; (3) reconsider its denial of Defendants' motion to

compel the tax documents, and grant it; (4) strike Plaintiffs' summary-judgment briefs where

Plaintiffs advance the June 15 fact; and (5) permit Defendants to submit an affidavit for

expenses, including attorney's fees, caused by HKG's discovery violation and improper conduct

on summary judgment.  Defendants also seek additional sanctions, including default judgment on

Defendants' fraud-based counterclaims and fines against Plaintiff and Plaintiffs' counsel if the

Court finds willfulness.

The Seventh Circuit permits dismissal and default judgment as suitable sanctions under

Rule 37 upon a finding of willfulness, bad faith, or fault as long as the district court "first

considers and explains why lesser sanctions would be inappropriate."  *Med. Assurance Co. v.*

*Weinberger*, No. 4:06-CV-117-JD, 2012 WL 4050305, at *5 (N.D. Ind. Sept. 12, 2012) (citing

*Sun v. Bd. of Trs. of Univ. of Ill.*, 473 F.3d 799, 811 (7th Cir. 2007)).  Bad faith characterizes

conduct that is either intentional or in reckless disregard of a party's obligation.  *Panwar v.*

*Access Therapies, Inc.,* No. 1:12-cv-0619-TWP-TAB, 2014 WL 820023 (S.D. Ind. Mar. 3, 2014)

(quoting *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992)).  Fault, on the other

hand, amounts to more than a mere mistake, it "suggests objectively unreasonable behavior."

*Brown v. Columbia Sussex Corp.*, 664 F.3d 182, 191 (7th Cir. 2011) (quoting *Long v. Steepro*,

213 F.3d 983, 985 (7th Cir. 2000)).

　　　The Seventh Circuit has established a four-factor test for evaluating whether Rule 37

sanctions are warranted: (1) prejudice or surprise to the party against whom evidence is offered;

(2) ability of the party to cure the prejudice; (3) likelihood of disruption to the trial; and (4) the

proffering party's bad faith or willfulness in not disclosing evidence at an earlier date.  *David v.*

*Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).  Not all four factors must be met, and where

a party untimely or insufficiently discloses evidence, preclusion of that evidence is automatic and

mandatory, unless the party can show the violation was justified or harmless.  *Only the First, Ltd.*

*v. Seiko Epson Corp.*, 822 F.Supp.2d 767 (N.D. Ill. 2011) (quoting *Finley v. Marathon Oil Co.*,

75 F.3d 1225, 1230 (7th Cir. 1996)).  Plaintiffs failed to timely disclose available evidence of a

June 15, 2010, acceptance of the assignment.  Plaintiffs had evidence of the June 15 assignment

date while fact discovery was still underway in May 2014.[9]  Still, they waited until the close of

---

[9]  Plaintiffs had information of a June 15, 2010, effective assignment date as early as 2012 when
they produced Kehoe's privilege log that was supposed to contain the June 15, 2010, acceptance.
However, as Plaintiffs set forth in their response to the motion for sanctions, this crucial piece of
information was "inadvertently omitted" from the 2012 privilege log only to conveniently
reemerge in time for Plaintiffs to respond to Defendants' motion for Rule 11 sanctions.  [Filing
No. 411, at ECF p. 46-47.]

discovery to disclose this evidence. Consequently, the June 15, 2010, assignment date should be excluded from evidence.

Moreover, Plaintiffs' untimely disclosure is unjustified and harmful. Plaintiffs' counsel admits that he was busy at the time he received the evidence and did not appreciate the importance of the June 15, 2010, date until drafting the motion for sanctions. Most lawyers are busy; that is the nature of litigation. However, when a busy schedule results in inattentiveness and poor judgment, counsel may not use his schedule to substantially justify his failure to report. Nor can he use his schedule to suggest that the error was harmless. *McAtee v. Buca Restaurants, Inc.*, No. 1:10-cv-1090-SEB-DKL, 2011 WL 6016648, at *3 (S.D. Ind. Dec. 2, 2011) (quoting *Langley v. Union Elec. Co.*, 107 F.3d 510, 514 (7th Cir. 1997)).

That said, the Court finds it appropriate to sanction Plaintiffs and not Plaintiffs' counsel for the discovery failures under Rules 26 and 37. Defendants only request a monetary award from Plaintiffs' counsel under Rules 26 and 37 if the undersigned finds the sanctionable conduct to be willful. While Plaintiffs' and Plaintiffs' counsel's conduct was objectively unreasonable and in reckless disregard of their obligations, the Court finds that admonishing Polak for his shortcomings is a sufficient deterrent for future behavior. Admonishments can leave a lasting impact greater than any monetary fine. Moreover, Polak's inattentiveness to a critical fact is more appropriately addressed under Rule 11 as he failed to reasonably inquire into the facts before certifying pleadings, written motions, or other papers. Similarly, it was Plaintiffs and their outside counsel who possessed the key information concerning the validity of the March 19, 2009, assignment date.

Plaintiffs' conduct directly contravenes the purpose of Rule 37, which is to "avoid an unfair ambush in which a party advances new theories or evidence to which its opponent has

insufficient time to formulate a response." *Id.*; *Buchanan v. McCann*, No. 08 C 7063, 2012 WL 1987917, at *2 (N.D. Ill. June 4, 2012)*; *Rowe Intern. Corp. v. Ecast, Inc.*, 586 F.Supp.2d 924, 934 (N.D. Ill. 2008) (citing *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1998)). Indeed, Plaintiffs' failure to disclose material evidence prejudices Defendants who did not have an opportunity to conduct any further discovery relating to the June 15, 2010, assignment date in a case where the Court has ordered that the Case Management Plan be strictly enforced. [Filing No. 281.] Thus, under Rule 37 Plaintiffs' untimely disclosure of the June 15, 2010, effective assignment date should be automatically excluded from admissible evidence. *See* Fed. R. Civ. P. 37; *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996); *Zimmerman v. CSX Transp., Inc.*, No. 3:08-cv-144-RLY-WGH, 2009 WL 1299616 (S.D. Ind. May 8, 2009).

Even so, Plaintiffs' conduct does not warrant default judgment. Default judgment is an extreme sanction that should be used only as a last resort. The Seventh Circuit "has a well-established policy of favoring a trial on the merits over a default judgment." *Sun v. Bd. Of Trs. Of Univ. of Ill.*, 473 F.3d 799, 811 (7th Cir. 2007). Plaintiffs' evasive disclosures and Polak's representations to the Court relating to the assignment date were by no means objectively reasonable. They withheld information essential to Defendants' counterclaims until after discovery closed and in support of a dispositive motion. While their behavior should be admonished, less drastic sanctions would properly cure their shortcomings. Plaintiffs' failure to timely disclose the new date should automatically exclude any evidence of the June 15, 2010, assignment. Moreover, the undersigned recommends that March 19, 2009, be established as the date of assignment, which is already overwhelmingly supported by evidence in the record. Such actions would cure Plaintiffs' failures, as Defendants would be able to move forward with

litigating the merits of this case under their original assumption that March 19, 2009, was the effective assignment date.

Plaintiffs also violated their discovery obligations under Rule 26(g)(3) when they certified that their discovery was complete and accurate. Plaintiffs had knowledge of the June 15, 2010, assignment date during discovery, which they did not reveal to Defendants. Not only did Plaintiffs fail to supplement their discovery but they failed to reveal this essential fact to Defendants' fraud-based counterclaims until after discovery closed. Under such circumstances, the Court must impose appropriate sanctions on the signer, the party on whose behalf the signer was acting, or both. *Rojas v. Town of Cicero, Ill.*, 775 F.3d 906, 909 (7th Cir. 2015). The undersigned recommends imposing sanctions on Plaintiffs and not Plaintiffs' counsel as this material information was known and understood only by their outside trademark counsel during discovery.

In imposing such sanctions, the Magistrate Judge denies Defendants' request to strike Plaintiffs' summary judgment brief that advances the June 15, 2010, date. Plaintiffs' argument that June 15, 2010, was the effective assignment date is one of many arguments Plaintiffs assert in support of their summary judgment motion. The Court rejected the June 15, 2010, assignment date in its order on summary judgment holding that the fact was unsupported and improper. [*See* Filing No. 425, at ECF p. 15-18.] More important, the Court dismissed Defendants' fraud-based counterclaims at summary judgment for reasons unrelated to the assignment date.[10] Because the Court's summary judgment ruling did not rely on Plaintiffs' June 15 assignment date, striking

---

[10] The Court dismissed Defendants' fraud-based counterclaims because Defendants failed to show that they relied on Plaintiffs' misrepresentations to their detriment.

Plaintiffs' summary judgment brief would not be a sanction proportionate to the circumstances.

*Collins v. Illinois*, 554 F.3d 693, 696–98 (7th Cir. 2009).

Both parties request that the Court revisit its ruling concerning Defendants' motion to compel tax documents related to the assignment. The Court originally denied Defendants' motion to compel tax documents under requests for production nos. 95 and 96 because the documents were likely not relevant. [Filing No. 314, at ECF p. 3.] The Court found relevance of tax documents of the assignment to be slight given that the tax documents relate to the case that settled in 2009. However, the Court noted that if Defendants could show relevance, Plaintiffs would need to produce tax documents related to the assignment. [Filing No. 314, at ECF p. 3.] In light of this order, Defendants' request for these tax filings is more persuasive. As such, the undersigned recommends that the parties meet and confer in an effort to resolve this outstanding discovery issue. If the parties are unable to reach a resolution, they may contact the Magistrate Judge.

Further, the Magistrate Judge finds Defendants are entitled to reasonable attorney's fees and expenses for filing the motion for sanctions under Rules 26 and 37. The parties should have twenty-eight days after the Court issues any order awarding fees to agree on a reasonable amount of attorney fees and costs. If they are unable to do so, the undersigned recommends that Defendants file a fee petition with the Court by the twenty-eighth day.

## IV. Conclusion

For the foregoing reasons, the Magistrate Judge recommends that Defendants' motion for sanctions under Rule 11(c) [Filing No. 384] be granted but limited to an admonishment of Plaintiffs' lead counsel, Jonathan Polak. The Magistrate Judge also recommends Defendants' motion for sanctions [Filing No. 386] under Rules 26 and 37 be granted in part and denied in

part.  As a result of Plaintiffs' sanctionable conduct under Rules 26 and 37, the Magistrate Judge

recommends: (1) Plaintiffs' June 15, 2010, acceptance of the assignment be excluded from

evidence; (2) March 19, 2009, be established as the effective date of the assignment for all

purposes of this action; (3) Defendants' request to strike related portions of Plaintiffs' summary

judgment briefs be denied; (4) the parties meet and confer in an effort to resolve Defendants'

request for discovery concerning tax filings under requests for production nos. 95 and 96; and (5)

Defendants be awarded attorney's fees and expenses for filing this motion.  The parties should

have twenty-eight days after the Court issues any order awarding fees to agree on a reasonable

amount of attorney fees and costs.  If they are unable to do so, the undersigned recommends that

Defendants file a fee petition with the Court by the twenty-eighth day.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with

the Clerk in accordance with 28 U.S.C. § 636(b)(1).  Failure to file timely objections within

fourteen days after service shall constitute waiver of subsequent review absent a showing of

good cause for such failure.

Date:  5/22/2015

_____

Tim A. Baker
U.S. Magistrate Judge
Southern District of Indiana

Distribution:

Darlene R. Seymour
dseymour@ce-ip.com

Jason M. Sneed
SNEED PLLC
jsneed@sneedlegal.com

Charles .M. Landrum, III
SNEED PLLC
clandrum@sneedlegal.com

Bruce Benjamin Paul
STITES & HARBISON, LLP
bpaul@stites.com

Douglas B. Bates
STITES & HARBISON, LLP
dbates@stites.com

Neal F. Bailen
STITES & HARBISON, LLP
nbailen@stites.com

Anne L. Cowgur
TAFT STETTINIUS & HOLLISTER LLP
acowgur@taftlaw.com

Jonathan G. Polak
TAFT STETTINIUS & HOLLISTER LLP
jpolak@taftlaw.com

Melissa A. Gardner
TAFT STETTINIUS & HOLLISTER LLP
mgardner@taftlaw.com

Michael Zachary Gordon
TAFT STETTINIUS & HOLLISTER LLP
zgordon@taftlaw.com

Tracy Nicole Betz
TAFT STETTINIUS & HOLLISTER LLP
tbetz@taftlaw.com